"Dragør Maersk"

Alleged Wrongful Delivery of

Container #BENU 232656-0 stc

2,000 Computer HDD shipped

by Sea from New York to Kuwait

in March/April 1999

Preliminary Report 99560

June 5, 2000

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 1.0 | Introductory Summary | 1 |
| 1.1 | List of Parties Involved | 2 |
| 2.0 | Background | 2 |
| 2.1 | Neewra Inc | 3 |
| 2.2 | Micro-Spy Inc | 3 |
| 2.3 | Rednihom Inc | 3 |
| 2.4 | American Export Lines/International Shipping | 4 |
| 2.5 | Al-Tamasok Al-Arabi Est | 4 |
| 2.6 | Engines Plus Corp | 4 |
| 2.7 | Arween Sahni Singh | 5 |
| 2.8 | Michael Rokeach (aka Michael Reich) | 5 |
| 3.0 | The First Shipment | 5 |
| 4.0 | The Second Shipment | 6 |
| 4.1 | Purchase of HDD by Neewra Inc | 7 |
| 4.2 | Preparation for Shipment | 7 |
| 4.3 | Preparation and Issue of Documents | 8 |
| 4.4 | Shipment of Container #BENU 232656-0 | 10 |
| 4.5 | Payment Arrangements and Container Release | 10 |
| 4.6 | Instructions to Banco Popular | 12 |
| 4.7 | The Delivery of the Container | 13 |
| 4.8 | Post Delivery Developments | 14 |
| 5.0 | The Rednihom Shipment | 15 |
| 6.0 | Our Investigations | 16 |
| 6.1 | Arween Sahni Singh and Neewra Inc | 16 |
| 6.2 | Micro-Spy Inc | 18 |
| 6.3 | Michael "Reich" aka Michael Rokeach | 19 |
| 6.4 | Inquiries with Seagate Technologies | 21 |
| 6.5 | Engines Plus Corp | 22 |
| 6.6 | American Export Lines | 23 |
| 6.7 | Investigations in Kuwait | 24 |
| 6.7.1 | Maersk Line | 24 |
| 6.7.2 | Customs Clearance Procedures | 26 |
| 6.7.3 | Al-Tamasok's Offices | 27 |
| 6.8 | V.G. Transports | 27 |
| 7.0 | Quantum of Loss | 28 |
| 8.0 | Cause of Loss | 28 |
| 9.0 | Summary and Conclusions | 28 |

**Exhibits:**

| | |
|---|---|
| Table depicting Relationship of Parties | A |
| Documents relating to the First Shipment | B |
| Documents supplied by AEL | C |
| Documents supplied by Banco Popular | D |
| Certificate of Insurance | E |
| Documents supplied by Ralph Gant/Neewra Inc | F |
| Additional Documents supplied by Ralph Gant/Neewra Inc | G |
| Documents supplied by Freehill Hogan | H |
| Copies of 1/3, 2/3 and 3/3 of Bill of Lading | I |

Documents relating to Micro-Spy Inc............................................ J
Correspondence between this firm and Neewra Inc................... K
~~Documents provided by Gulf Bank~~.......................................... L
Documents relating to the delivery of the container................... M
Documents presented by Al-Tamasok to Maersk...................... N
Business card copies.................................................................. O
Incorporation Documents............................................................ P
Documents relating to the Rednihom Shipment........................ Q
Correspondence with Maersk Kuwait......................................... R
D&B Business Reports relating to AEL....................................... S
Seagate HDD sales information................................................. T
Corp. Research records relating to Rednihom Inc..................... U
D&B Report relating to Neewra Inc............................................. V
D&B Reports relating to Engines Plus Corp.............................. W
Research documents relating to Michael Rokeach.................... X
Reports issued by Timothy Wolfe and Steve Weiner................. Y
Photographs................................................................................ Z



## John Alder & Co., Inc.

MARINE CONSULTANTS, SURVEYORS & LOSS INVESTIGATORS

New York Area Office:
7225 Bergenline Avenue
North Bergen, NJ 07047 • USA

Tel: 1-201-868-5050
Fax: 1-201-868-5200

Writer's E-mail:
*jurgenschulze@attglobal.net*

June 5, 2000

Marine Office of America Corporation
3 Embarcadero Center
Suite 400
San Francisco
California  CA 94111

Attention: Chip Junghans

Our ref: 99560
MOAC ref:  M30011798

## "DRAGØR MAERSK"
Alleged wrongful delivery of Container # BENU 232656-0
STC 2000 Computer Hard Drives
Shipped by Sea from
New York to Kuwait under
Maersk Line B/L NYC 688479 dated March 5, 1999
MOAC Certificate of Insurance No. OC 108144

Dear Sir,

In accordance with your instructions, we have completed our preliminary investigation of the claim submitted by Neewra Inc. in respect of the alleged wrongful delivery of a shipment by sea of 2,000 Seagate SCSI hard drives from New York to Kuwait in March 1999, and our report follows below.

### 1.0   Introductory Summary

The claim by the Insured, Neewra, Inc., is for US$ 1,860,000.00, and relates to the alleged loss of a consignment of 2,000 Seagate SCSI hard drives, shipped by sea from Newark, NJ, to Kuwait, and delivered to the consignee named in the Bill of Lading, Al-Tamasok Al-Arabi Est., by the ocean carrier Maersk following the presentation of a fabricated "original" Bill of Lading by persons acting on behalf of Al-Tamasok.

MOAC
June 5, 2000
Report 99560
Page 2

In our view, there is no tangible evidence that the alleged supplier of the hard drives, Michael Rokeach, ever owned or possessed such quantity of merchandise, or that such hard drives were actually loaded into the shipping container.

### 1.1 List of Parties Involved

| | |
|---|---|
| Aelaei, Ali | AEL Employee, Newark, NJ, also employee of International Shipping Co. (USA) |
| Amir, Yusuf M. | Manager Commercial Services, The Gulf Bank, Kuwait |
| Al Ajmi, Rajeh | Customs Investigation Officer, Kuwait Customs Authority (Rednihom Shipment) |
| Al-Taan, Rashed Saad | Southern Ports Supervisor, Kuwait Customs Authority (Rednihom Shipment) |
| Babala, Sharon | Incorporator (Blumberg Excelsior Corporate Services, Inc.) of Neewra and Rednihom |
| Baroon, Adel | Principal of Al-Tamasok |
| Butt, Waheed | Employee of Al-Tamasok |
| Cohen, Peter | Owner of Micro-Spy, Inc. |
| Deepak, B. | Consultant, retained by Help Line Collection Co |
| Defillo, Danilo | Employee, Banco Popular |
| Eich, Clive | Marine Manager, Saybolt Kuwait – Marine (Rednihom Shipment) |
| Fernandes, John C | Kuwaiti Canadian Consulting Group W.L.L. |
| Gant, Ralph | Attorney for Neewra Incorporated |
| Gomes, Rudolf W. | General Manager, Kuwait Mercantile Transport Co W.L.L., Kuwait |
| Gupta, Kumar | Consultant, retained by Help Line Collection Co |
| Hansen, Soren S. | General Manager, Maersk Kuwait |
| Hector, ___ | AEL Employee, Newark, NJ |
| Help Line Collection Co. | Kuwait |
| Kuruvilla, Mathew | Sales Manager, Maersk Kuwait (Rednihom Shipment). |
| Lamb, William | International Loss Adjusters Marine Surveyors, Kuwait – retained by Help Line for Rednihom |
| Monteiro, Malcolm | Maersk Operations Manager, Kuwait (Rednihom Shipment) |
| Nawaf, Nadiya | Maersk Equipment Manager, Kuwait (Rednihom Shipment) |
| Pinto, Elvis | Ass. Sales Manager, Maersk Kuwait |
| Rasheed, Abdul | Truck Driver, Kuwait |
| Rokeach, Michael | aka Reich, Michael, alleged co-owner of Micro-Spy Inc. |
| Sahni, Arween | Principal of Neewra Incorporated |
| Sesmer, Lawrence | Ass. VP, Banco Popular New York |
| Singh, Mohinder | Principal of Rednihom, Inc. |
| Vaz, Archibald | Survey Dept. Manager, Kuwait Maritime & Mercantile Co K.S.C |
| Winters, Harvey | VP, Jeffron Messenger Service |
| Zakaria, Ahmed | Attorney for Maersk, Al Sarraf & Al Ruwayeh |

A graph depicting the connections between the various parties appears at Exhibit A.

### 2.0 Background

In this section, we shall summarize the corporate background of the main parties involved, as well as of some of the persons connected with them.

MOAC
June 5, 2000
Report 99560
Page 3

### 2.1 Neewra Inc.

Neewra Inc. was incorporated under No. # F981118000128 on or about November 12, 1998 by Sharon Babala of Blumberg Excelsior Corporate Services Inc. The Certificate of Incorporation (at Exhibit P) was filed with the Department of State, State of New York, on November 18, 1998, by Arween Sahni, whose address was listed in the Certificate as 40-18 Hampton Street, Office # 1J, Elmhurst, NY 11373.

According to a Business Information Report from Dun & Bradstreet dated May 26, 2000 (Exhibit V), Arween Sahni is the President (and Chief Executive) of Neewra (which is "Arween" spelt backwards) Inc. Further, the report indicates that the company has one employee (including the officer of the company, Mr. Sahni), that it occupies premises at 8050 Baxter Avenue, Flushing, NY 11373 (Tel: 718-803-2725), and the company's business is described as retail of auto supplies, specializing in tires.

The notepaper currently used by Neewra Inc. identifies the business address as 80-50 Baxter Avenue, Office No. 189, Elmhurst, NY 11373, Tel: 718-803-2725, Fax: 718-803-2801.

### 2.2 Micro-Spy Inc.

Micro-Spy Inc. was incorporated under No. # F981216000545 on or about December 16, 1998 by Gerald Weinberg, of 90 State Street, Albany, NY. The Certificate of Incorporation (Exhibit P) was filed with the Department of State, State of New York, on December 16, 1998, and lists as the filer Michael Schiffer Esq., of 1673 East 16th Street, Brooklyn, NY, 13229 (the address is a mail drop).

According to two separate Dun & Bradstreet reports dated January 5, 2000 and May 26, 2000 respectively (both at Exhibit J), Micro-Spy Inc. occupies premises located at 2221 Avenue U, Brooklyn, NY 11229, provides computer programming services and specializes in software system analysis or design, and all of the company's stock is owned by Peter Cohen, the President. Further, the company is said to employ 2 persons (including the company's President). Micro-Spy Inc. maintains retail premises at 2221 Avenue U, Brooklyn, NY 11229.

### 2.3 Rednihom Inc.

Rednihom Inc. was incorporated under No. # F990323000797 in the State of New York on or about March 23, 1999 through Sharon Babala of Blumberg Excelsior Corporate Services Inc. in Albany, NY. The Certificate of Incorporation (Exhibit P) was filed on March 23, 1999 by Mohinder Singh, of 80-50 Baxter Avenue, Ofc. 189, Elmhurst, NY 11373, which address also appears on Rednihom's notepaper (except for referring to the office as "Office 189" instead of

MOAC
June 5, 2000
Report 99560
Page 4

"Ofc. 189"). The address and communication details are the same as for Neewra Inc. (N.B. : "Rednihom" spelt backward reads "Mohinder").

Searches conducted with Dun & Bradstreet on February 2, 2000 as well as May 26, 2000 (see Exhibit U) have not revealed a current listing. A Mohinder Singh is resident in the vicinity of the office location, namely at 4039 Forley Street, Elmhurst, NY 11373, but it is not known whether this person is the same Mohinder Singh who filed the company's incorporation certificate.

### 2.4 American Export Lines / International Shipping

American Export Lines ("AEL") as well as International Shipping (or "International Shipping Corp." or "International Shipping Co [USA]") are apparently trading names of Blue Sky Blue Sea, Inc., believed to be incorporated in Los Angeles, CA. AEL provides freight forwarding services, inter alia from offices located in Newark, NJ, as well as Jamaica, NY. The manager of the Newark office is Ali Aelaei.

### 2.5 Al-Tamasok Al-Arabi Est.

Al-Tamasok Al-Arabi Establishment ("Al-Tamasok") was incorporated in Kuwait in October 1988 by way of license granted to Adil Mahmud Abbas Badun (valid until December 2000) to conduct "general business and trade". In June 1998, the address of the company was changed to Office 8, 3rd Floor, Ninth Commercial, Division 0009, Building 13, Kuwait City, and the commercial trading name of the company was "Al-Harbi General Business and Trade Holding Company" (see Exhibit F).

Ahmed Zakaria of Al Sarraf & Al Ruwayeh, attorneys in Kuwait, informed us that the name and/or description of a Kuwaiti company are not indicative of the actual business conducted. The inclusion of "general business", "trading", and/or "construction" in the name determines the number of work visas the company can apply for if intending to employ non-Kuwaiti staff; the wider the descriptive name is, the more work visas can be requested, even if the non-Kuwaiti staff are eventually engaged in entirely different capacities.

### 2.6 Engines Plus Corp.

Engines Plus Corp., (previously) located at 196 Van Winkle Avenue, Garfield, NJ 07026, was incorporated in 1989, and is a wholesaler of auto parts and supplies. The company's president is Lowei M Najjar, whose current address is unknown. Mr. Najjar is, however, required to be registered with the police in his residential area (Bloomingdale, NJ).

MOAC
June 5, 2000
Report 99560
Page 5

### 2.7 Arween Sahni Singh

Arween Sahni Singh (aka "Arween Sahni") is the principal shareholder and President of Neewra Inc. His residential address is not known.

### 2.8 Michael Rokeach (aka Michael Reich)

Michael Rokeach (also known as Michael Reich), DOB: June 15, 1973, SS-No. 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, is a Caucasian male, and claims to be the part owner of Micro-Spy Inc. His current address is believed to be 2479 Bragg Street, Brooklyn, NY 11235. Mr. Rokeach holds himself out as a wholesaler of general merchandise, including computer equipment, and to maintain (at an unidentified address) a warehouse in Garfield, NJ.

### 3.0 The First Shipment

We understand from Mr. Ali Aelaei of AEL that Arween Sahni approached him at some time in mid February 1999, and requested AEL to provide forwarding services for a shipment of auto spare parts and accessories from New York to Kuwait.

On February 19, 1999, Arween Sahni visited Ali Aelaei at AEL's offices located in Newark, NJ, to discuss details of the shipment, and executed certain documents, including a power of attorney for the preparation of the export declaration (at Exhibit B). Ali Aelaei informed us that Arween Sahni insisted on the shipment being made with Maersk Lines (without explaining the reasons).

According to the Commercial Invoice No. 1/99 dated February 10, 1999 (at Exhibit B) and the Packing and Weight List (showing a gross weight of 8,600 lbs.), Neewra Inc. had sold 20 boxes containing various quantities of "National brake block brake pads" for US$ 10,180.00 "CIF Kuwait" to Al-Tamasok in Kuwait.

Following payment by Neewra Inc. of US$ 500.00 (by check No. 1003 dated February 16, 1999) and US$ 2,521.00 (by check No. 1004 dated February 19, 1999 – both drawn on Account No. 731066642 with Banco Popular at 83-22 Baxter Avenue, Elmhurst, NY 11373) in respect of freight and handling charges, AEL instructed Victor Goncalvez, owner-operator of a trucking company called V.G. Transports, to take an empty 20' container to the collection and loading address for the consignment, which had been provided to him by Arween Sahni, namely: 196 Van Winkle Avenue, Garfield, NJ 07026, and of which Mr. Aelaei had kept a hand-written note for his file (at Exhibit B). At the material time, the only party occupying the premises located at this address was Engines Plus Corp.

MOAC
June 5, 2000
Report 99560
Page 6

On or about February 22, 1999, Victor Goncalves of V.G. Transports proceeded with container No. CLHU 206944-0 to the address in Garfield, and, after the container had been loaded and sealed with a seal provided by Engines Plus Corp. (Seal No. # 93060), Gonsalvez delivered the container to the Maersk-Sealand Terminal No. 88 in Port Elizabeth, NJ, at which time a Dock Receipt was issued (at Exhibit B).

In the meantime, AEL prepared on behalf of Neewra Inc. the Shipper's Export Declaration as well as the Certificate of Origin, arranging at the same time for the documents to be notarized and stamped by the Maritime Chamber of Commerce Inc. in New York. Also, AEL issued a Continental Insurance Marine Certificate of Insurance No. OC12869, Policy No. 080019, on February 19, 1999, in respect of the shipment, described as "automotive spare parts and accessories" in the sum of US$ 10,180.00, showing Neewra Inc. as Insured and Loss Payee (at Exhibit B).

According to the Maersk Line Combined Transport Bill of Lading No. #NYC688143 dated February 26, 1999 (at Exhibit B), container #CLHU 206944-0 was loaded on board the motor-vessel "SEALAND CHAMPION" on the date of issue, for shipment to Kuwait.

Ali Aelaei of AEL and Soren Hansen, General Manager of Maersk in Kuwait informed us that the container arrived in Kuwait on or about March 28, 1999, and was subsequently delivered to Al-Tamasok in Kuwait at an unknown address. Further, we understand from Soren Hansen that the container was delivered against presentation of 1/3 of the original (and genuine) Bill of Lading.

No information has been provided by either Neewra Inc. or AEL whether, and if so how, Al-Tamasok paid for the brake pads sold.

## 4.0 The Second Shipment

Arween Sahni has advised us that at some time in January 1999, discussions took place between himself and Al-Tamasok regarding the purchase of computer hard drives ("HDD"). Arween Sahni explained that his communications with Al-Tamasok were based on telephone calls made with pre-paid calling cards. Although Arween Sahni confirmed through his attorney that he had visited Kuwait in February 1999 (see letter from Ralph Gant dated April 26, 2000 at Exhibit K, which contradicts Arween Sahni's earlier statement to us that he last visited Kuwait in July or August 1998), he apparently never met Adil Mahmud Abbas Badun (the principal of Al-Tamasok) or Waheed Butt, Al-Tamasok's manager.

On or about February 3, 1999, Waheed Butt of Al-Tamasok issued a letter to "Mr. Sahni" (at Exhibit F), placing an order for "2000 pieces at $ 930.00 CIF Kuwait", requesting that the goods be shipped on sight draft, providing account details of

MOAC
June 5, 2000
Report 99560
Page 7

its bank (The Gulf Bank of Kuwait SAK), and identifying the subject of the order in the reference ("18.2 gb hard drives"). The letter did not specify the type of HDD ordered, e.g. EIDE interface, SCSI, SCSI Wide or SCSI Wide Ultra (for the different types, see details at Exhibit T).

We understand that Neewra Inc. sent no order confirmation, and no written communications were exchanged clarifying details of the order.

### 4.1  Purchase of HDD by Neewra Inc.

According to a "Credit Invoice" No. 271 dated February 25, 1999 (at Exhibit F), Neewra Inc. purchased from Micro-Spy Inc. 2,000 Seagate 18.2 GB HDD (Model: ST118273N) at US$ 800.00 per unit (total: US$ 1,600,000.00) payable in 180 days. The document identified "Michael Reich" as the salesperson for Micro-Spy Inc.

The HDD model "ST118273" relates to a HDD manufactured by Seagate Technology, of 18.2 GB capacity, with a SCSI interface, marketed under the name "Barracuda", which is supplied in two versions: as an Ultra SCSI (Model No. #ST118273N) and as a WideUltra SCSI (Model No. #ST118273W).

The "Credit Invoice" identified "80-50 Baxter Avenue, Office 189, Elmhurst NY 11373 Tel: 718-803-2725" as Neewra Inc.'s address, even though at that time (as well as on February 27, 1999 – see Neewra's letter to AEL dated February 27, 1999 at Exhibit B) Neewra Inc. operated from its Hampton Street address.

Neewra Inc. has not provided information on any credit references required by Michael Reich to obtain 180 days payment terms. Neither has Neewra provided details of any previous dealings with either Micro-Spy Inc. and/or Michael Rokeach that could possibly explain the granting of 180-day credit terms for US$ 1,600,000.00.

### 4.2  Preparation for Shipment

At some time in early March 1999, Arween Sahni contacted Ali Aelaei of AEL by telephone and advised him that a second shipment was ready for Kuwait, requesting AEL to provide a container, send it to the loading location to pick up the merchandise, and subsequently arrange for the shipment of the container to the same customer in Kuwait (Al-Tamasok) to whom the first container had been shipped. Ali Aelaei informed us that Arween Sahni again specifically requested that the container be shipped by Maersk Line.

Accordingly, Ali Aelaei contacted V.G. Transports on or about March 2, 1999 and booked the pick up of an empty container as well as the delivery to and from the loading location, which Arween Sahni had identified as "Engines Plus" at "196

MOAC
June 5, 2000
Report 99560
Page 8

Van Winkle Street (sic), Garfield, NJ". The appropriate Shipping Order was issued by AEL to V.G. Transports on March 4, 1999 (at Exhibit C).

On March 3, 1999, Victor Goncalves of V.G. Transports collected an empty 20' container (No. # BENU 232656-0) from Berth 51 of the Maersk Terminal at Port Elizabeth, NJ, and delivered the container on the following day, March 4, 1999, to Engines Plus at 196 Van Winkle Avenue in Garfield, NJ, for "live loading". We were informed by Ali Aelaei that the term "live-loading" means that the truck driver will stay with the container during the loading operations, which should last less than 2 hours, rather than drop off the container and return as and when loading has been completed.

According to the invoice issued by V.G. Transports No. VG745 dated March 3, 1999 (at Exhibit C), container No. #BENU 232656-0 was live loaded on March 4, 1999 by Engines Plus, who (according to information supplied by Ali Aelaei) also supplied the container seal (No. 93059 – which number precedes that used for the container on the First Shipment). The container was returned to the Sealand Terminal on the same day.

These documents conflict with the account given to us by Michael Rokeach who stated that the container had been taken to, or near to, his warehouse in Garfield, NJ (although he was not prepared to provide address details to us), and loaded by himself as well as one of his helpers/employees, whose identity he was equally not prepared to disclose.

### 4.3 Preparation and Issue of Documents

As in the case of the First Shipment, but on March 5, 1999, Neewra Inc. issued a Power of Attorney to International Shipping Co (USA) Inc. ("ISC", the sister company of AEL and operating through the same persons and from the same address in Newark, NJ) to prepare the Export Declaration (at Exhibit C). Neewra Inc. also supplied AEL/ISC with its Commercial Invoice No. 2/99 dated March 5, 1999 (at Exhibit C), for US$ 1,860,000 "CIF Kuwait", and its Packing and Weight List (marked "Invoice 2/99" and dated March 5, 1999 – also at Exhibit C). In both documents, the consignment was described as consisting of 2,000 HDD (Seagate SCSI ST118273N, 18.2 GB, Barracuda), and the Packing and Weight List identified the total gross weight as 7,200 lbs. (based on 2.2 lbs. per HDD) and the total number of crates as 20 (each crate containing 100 HDD).

On March 3, 1999, AEL issued its invoice No. NJ200828 for US$ 8,582.00 (at Exhibit F) for freight, handling and document charges, giving credit for a payment already made by Neewra Inc. on March 2, 1999 in the sum of US$ 8,000.00 (check No.# 1006 – at Exhibit C).

MOAC
June 5, 2000
Report 99560
Page 9

The following day (March 4, 1999), Ali Aelaei issued a Certificate of Insurance (Policy No. 080019) CTF No. OC108144 on the Continental Insurance Company form WM4102SF to Neewra Inc. (at Exhibit E), showing US$ 1,860,000.00 as the sum insured, naming Neewra Inc. both as Insured and Loss Payee, and describing the cargo insured as "20 wooden crates of electrical spare parts".

On March 5, 1999, ISC issued (pursuant to the Power of Attorney granted to it) the Shipper's Export Declaration as well as the Certificate of Origin (both at Exhibit C), describing the consignment in both instances as "20 wooden crates of electrical spare parts". Both documents also referred to the container number (#BENU 232656-0) as well as container seal (#93059), showing Neewra Inc. as the shipper, and Al-Tamasok as the consignee (and Notify Party).

Under cover of a letter dated March 8, 1999 (at Exhibit C), Neewra Inc. forwarded to Ali Aelaei the Commercial Invoice as well as the Packing and Weight List, requesting AEL/ISC to arrange the legalization of the documents.

To this effect, AEL/ISC instructed Jefron Consular Services (as in the case of the First Shipment) as messengers, who subsequently obtained (for the Certificate of Origin, the Commercial Invoice as well as the Packing and Weight List) stamps from the Maritime Chamber of Commerce, Inc. in New York, the National US-Arab Chamber of Commerce in New York, the notarization of the documents through Ronald J. Wiener (Notary Public in Nassau County), as well as the legalization through the Kuwaiti Consulate in New York (all documents are at Exhibit F): -

| Dates: | Maritime Chamber of Commerce | National US-Arab Chamber of Commerce | Notary Public | Kuwaiti Consulate |
|---|---|---|---|---|
| Cert. Of Origin | Undated | 03/12/99 | undated | 03/15/99 |
| Comm. Invoice | Undated | 04/06/99 | undated | 03/08/99 |
| Packing List | Undated | 04/12/99 | undated | 04/14/99 |

However, the Commercial Invoice as well as the Packing and Weight List, as ultimately stamped, notarized and legalized, were not the same as originally submitted to AEL/ISC since the original of the Packing and Weight List had either been lost or misplaced by Jefron at some stage (vide Jefron's letter to Neewra Inc. dated April 15, 1999 – at Exhibit F). The Commercial Invoice was re-issued on March 31, 1999, and the Packing and Weight List on April 12, 1999 (compare the copies at Exhibit F with the original versions at Exhibit C); the documents were identical in contents to those originally issued save insofar as they carried different dates and the Invoice Number was changed from "2/99" to "2/99/D" (or "2/99/D/D" as in the case of the Packing and Weight List). Neewra Inc. has provided no information as to the significance of the added letter "D" or why the

MOAC
June 5, 2000
Report 99560
Page 10

Commercial Invoice was also re-issued even though only the Packing and Weight List had been lost or misplaced.

### 4.4 Shipment of Container BENU232656-0

On or about March 6, 1999, container No.# BENU232656-0 was loaded on board the motor vessel "DRAGØR MAERSK" for shipment from Newark, NJ, to Kuwait (Voyage 9903). According to the "clean" Bill of Lading No. NYC688479 dated March 5, 1999 (at Exhibit C), Neewra Inc. was the shipper, and Al-Tamasok the consignee of a consignment of "20' container said to contain 20 crates electrical spare parts".

Ali Aelaei of AEL advised us that it is a common practice to deviate from an accurate description of merchandise to be shipped if the merchandise is of high value. A more generic or even slightly misleading description is less likely to attract the attention of potential thieves.

The Bill of Lading was issued by Maersk Inc. (as agents for the Carrier) by Maersk's New Jersey office on the standard Maersk form. We have been informed by Soren Hansen, General Manager of Maersk's office in Kuwait, that the standard "blank" form used by Maersk at the time consists of letter-sized paper with security printing of the word "MAERSKLINE" in heavily reduced light blue font repeated over the entire page, as well as the words "Maersk Line – Combined Transport Bill of Lading" in black print at the top of the page. Everything else, including the text boxes, box headers, as well as codes (usually appearing in the bottom left corner of the page) are added at the time of completing and issuing the Bill of Lading. The Bill of Lading signature is electronically added at the time of issue, and based on the scanned original signature of an authorized signatory. Therefore, it will always appear in black print.

The motor vessel "DRAGØR MAERSK" arrived in Jebel Ali (Dubai) on March 29, 1999, where the container was discharged, and on April 9, 1999 transshipped on "MAERSK BRISBANE" to Kuwait, arriving in the Shuaiba Port Container Terminal of Kuwait on April 10, 1999 (see the Maersk Container Tracking Movement Report at Exhibit M).

Following discharge on the date of arrival, the container was placed in position A27-06/B of the fenced-in container terminal, awaiting delivery.

### 4.5 Payment Arrangements and Container Release to Al-Tamasok

At the end of March 1999, several weeks after the container had been loaded onto the ocean vessel and less than two weeks prior to the arrival in Kuwait, Neewra Inc. had not made any arrangements for the lodgment of documents to

receive payment for the shipment. This was apparently due to the fact that the certification and legalization of the documents had not yet been completed.

Towards the end of March 1999, Sabrawal Shander Kumar, the proprietor of Sabrawal K Chandra Trading Co. in Kuwait appeared at the office of Maersk in Kuwait, and, representing to act on behalf of Al-Tamasok, asked whether the container could be delivered without production of the original Bill of Lading. When Maersk refused, Sabrawal Kumar offered a personal guarantee, which was also rejected.

As appears from Neewra's letter to Ali Aelaei of AEL dated March 31, 1999 (at Exhibit C), a telephone conversation took place between Arween Sahni and Ali Aelaei on March 30, 1999, in the course of which Ali Aelaei relayed to Arween Sahni an inquiry received from Maersk Line, namely whether Neewra Inc. was prepared to release the container to the consignee (Al-Tamasok) "by telex or fax", meaning without production of the original Bill of Lading. The inquiry had obviously been prompted by the approach by Sabrawal Kumar in late March 1999.

Arween Sahni advised AEL that the presentation of the original Bill of Lading was required by him, and Al-Tamasok was informed accordingly (in that AEL advised Maersk New York, who in turn notified Maersk Kuwait – see E-Mail dated March 31, 1999 at Exhibit G).

On April 25, 1999, Waheed Butt of Al-Tamasok gave notice to Arween Sahni by faxed letter (at Exhibit F) that the container had already arrived in Kuwait (it arrived and was discharged on April 10, 1999), but that no documents had yet been lodged by Neewra Inc. with the Gulf Bank of Kuwait. Even though the (reissued) Packing and Weight List had been legalized by the Kuwaiti Consulate in New York on April 14, 1999, Neewra Inc. had not taken any steps to initiate the "cash against documents" collection process. Since Al-Tamasok's buyer was allegedly waiting for the consignment, Waheed Butt suggested that the container be released against a guarantee from the Gulf Bank, to be replaced by payment as and when the documents arrived. By faxed letter dated April 27, 1999 (at Exhibit F), Arween Sahni confirmed his agreement to Ali Aelaei of EAL that the container could be released either against presentation of the original Bill of Lading (none of the three parts of which had, at that time, been dispatched by Sahni) or against a bank guarantee. Later, on May 2, 1999, Neewra Inc. informed AEL (at Exhibit C) that delivery of the container was also permitted "against banker's check". Arween Sahni of Neewra Inc. reconfirmed this to AEL by letter dated May 4, 1999 (at Exhibit C)

MOAC
June 5, 2000
Report 99560
Page 12

### 4.6 Instructions to Banco Popular

On May 10, 1999 (i.e. about four weeks after the certification and legalization of all documents had been completed, and on the day the container was delivered to Al-Tamasok – see Sec. 4.7 below), Neewra Inc. submitted written instructions to Lawrence Sesmer, Assistant Vice president of the International Department of Banco Popular (Neewra Inc.'s house bank) to forward documents to The Gulf Bank in Kuwait for collection of the purchase price of US$ 1,860,000.00 from Al-Tamasok (at Exhibit D), attaching the Certificate of Origin, 2 originals of the Maersk Bill of Lading, the Commercial Invoice as well as the Packing and Weight List.

The instructions were received by Banco Popular on the following day (May 11, 1999), and immediately forwarded to Kuwait together with a sight draft, instructing The Gulf Bank to "deliver documents against payment" (at Exhibit D).

The Gulf Bank acknowledged receipt of the instructions and documents by letter dated May 16, 1999 (at Exhibit D), and stamped the documents supplied to it.

On June 1, 1999, Neewra Inc. inquired why the payment from Al-Tamasok had not been received as yet (at Exhibit D), and in response to the request forwarded by Banco Popular, The Gulf Bank advised Banco Popular on June 2, 1999 (at Exhibit D) that the documents remained unpaid. In return, Neewra Inc. instructed Banco Popular on the same day (at Exhibit D) to "wait another week", and to request the return of the documents if there was "still no response from the party in Kuwait".

Accordingly, Banco Popular directed a request for the return of the documents to The Gulf Bank by telex dated June 9, 1999 (at Exhibit D), with which The Gulf Bank complied on June 10, 1999 (at Exhibit D). Banco Popular acknowledged receipt of the returned documents by telex dated June 25, 1999 (at Exhibit D), requesting at the same time clarification of the charges levied by The Gulf Bank for the unsuccessful collection attempt (namely US$ 2,467.00).

The returned documents were subsequently forwarded to Neewra Inc., which, apart from acknowledging receipt by letter dated June 29, 1999 (at Exhibit D), informed Banco Popular that instructions had been received to send the documents for collection to another bank in Kuwait, Al Ahli Bank. Apparently, this had been suggested by Waheed Butt of Al-Tamasok (see letter from Ralph Gant dated April 4, 2000 at Exhibit K), but the documents were not ultimately sent off since Neewra Inc. was not prepared to meet any further bank charges. No explanation has been offered by Neewra Inc. why it was contemplated to forward the documents for collection to another bank if Al-Tamasok had already failed to take them up from The Gulf Bank.

MOAC
June 5, 2000
Report 99560
Page 13

We were informed by Yusuf Amir, Manager of the Commercial Services Department of The Gulf Bank in Kuwait, that it was slightly unusual for documents, submitted for a collection, to be recalled after less than 4 weeks. He explained that, due to an absence of suitable and inexpensive warehouse facilities in Kuwait, it was quite normal for containers to remain at the container terminal for up to three months, and as a local buyer would usually only wish to pay for the imported merchandise at the time of taking delivery, it was equally customary for documents to be held for a similar period of time. Therefore, Yusuf Amir expressed some surprise that Banco Popular, on instructions of its customer Neewra Inc., had recalled the documents after less than one month; nevertheless, The Gulf Bank was bound to comply with these instructions, and had returned the documents as requested.

### 4.7 The Delivery of the Container

At some time after April 27, 1999, Sabrawal Shander Kumar returned to the offices of Maersk in Kuwait, at which time Soren Hansen, Maersk Kuwait's General Manager, told him that Maersk was agreeable to releasing the container to Al Tamasok, having been so authorized by the shipper Neewra Inc., always provided that a suitable guarantee for the CIF value of the consignment plus 200 % was provided. Soren Hansen explained to us that he did not like Kumar or his style, and therefore decided to make the somewhat unusual request for an additional 200 % security.

On or about May 5, 1999, a Peter Vincent Fernandes appeared at Maersk's Kuwait office, presenting a commercial invoice for the consignment, which document described the consignment as auto parts to the CIF value of about US$ 10,000.00. At the same time, Peter Vincent Fernandes presented a cashier's check, issued by National Bank of Kuwait and dated May 5, 1999, for KD 10,000 (about US$ 33,000 – at Exhibit N). The check had been drawn on order of "Sabral Shander Kumar". Soren Hansen accepted both invoice and check, stapled the documents together, and placed them in his safe, whilst giving his approval to the delivery of the container. Subsequently, Soren Hansen went on vacation for about two weeks.

On his return, he checked the contents of the safe and noted that the check and invoice were missing. When he inquired within the office why they were no longer in his safe, he was informed by Elvis Pinto, an employee of Maersk's Kuwait office, that during his absence, Peter Vincent Fernandes had come back to the Maersk office, stating that Al Tamasok had now received the original B/L, and handed an original B/L to Maersk in exchange for the return of the check (to which the invoice was still attached). At the time, Maersk merely retained a copy of the cashier's check, not of the invoice. Peter Vincent Fernandes had presented a letter of authority from Al-Tamasok (undated – at Exhibit N). A copy of the "original" Bill of Lading submitted by Peter Vincent Fernandes at that time

MOAC
June 5, 2000
Report 99560
Page 14

appears at Exhibit N (the original of this document is still held by the Police Authorities in Kuwait).

Soren Hansen asked for the Bill of Lading submitted by Peter Vincent Fernandes to be shown to him, and when he looked at the document for the first time, it seemed to be in order. However, upon a second and more detailed inspection, he recognized it as a forgery, initially only because the signature was one in blue ink (rather than black print). Subsequently, he discovered substantial differences, including various text misalignments and spelling/typing errors, as well as an incorrect Booking Reference number.

### 4.8 Post-Delivery Developments

According to the Maersk Interchange Report as well as the Container Tracking Record (both at Exhibit M), the container left the port's container terminal on May 10, 1999, and was returned (empty) five days later on May 15, 1999. No Inspection report was prepared upon the return of the container as it did not require any repairs or special cleaning. Although the truck driver, his particulars (Abdul Rasheed, Civil ID No. BN11731) as well as of the truck (Registration: 23059) were recorded on the Interchange Report, the actual delivery location could not be ascertained.

We understand that Maersk Kuwait did not immediately inform Neewra Inc. of its discovery that the container had been delivered to Al-Tamasok on May 10, 1999, or that the original Bill of Lading handed in by Peter Vincent Fernades to Elvis Pinto of Maersk's Kuwait office at some time between May 5, 1999 and May 19, 1999 might not be genuine.

On June 26, 1999, Arween Sahni contacted Waheed Butt of Al-Tamasok by faxed letter (at Exhibit F), stating that the original documents had been returned by The Gulf Bank unpaid, and demanded payment. By way of response on June 28, 1999 (at Exhibit F), Waheed Butt advised that his "boss" Dr. Adel Baroon was out of the country, that he had no authority "in the bank", and suggesting to await the return of Dr. Baroon.

No information has been provided by Neewra Inc. as to the events during the following three weeks (between June 26, 1999 and July 19, 1999), at which date Arween Sahni requested details of the bank guarantee posted in favor of Maersk Line to continue the collection efforts (at Exhibit F). A fax of similar content was sent by Neewra Inc. to Maersk in New York, on the following day (at Exhibit H), to which Maersk responded on July 21, 1999 with a request for details of the Bill of Lading (at Exhibit H). On July 22, 1999, Neewra Inc. provided a copy of the Bill of Lading to Maersk (at Exhibit H), issuing a reminder on July 27, 1999 (at Exhibit H).

Accordingly, Maersk New York contacted its Kuwait office on July 28, 1999 and August 2, 1999 (at Exhibit F), with copy to Neewra Inc.

It appears from Neewra Inc.'s faxed letter to Maersk New York dated August 4, 1999 (at Exhibit H) that Maersk responded in some detail to Neewra Inc. on August 3, 1999, but Neewra Inc. has not made a copy of this communication available. In the same letter, Neewra Inc. expressed doubt whether the original Bill of Lading presented in Kuwait was the "real" one since "the original Bill of Lading is here in New York with us".

Subsequently, Neewra Inc. instructed the attorney Ralph A. Gant, who, by undated letter to Maersk Line (at Exhibit H) confirmed being in possession of the full set of the original Bill of Lading for the shipment, which were supplied to him by Arween Sahni.

## 5.0 The Rednihom Shipment

On or about July 25, 1999, Rednihom Inc. sold 4,000 18:2 GB Seagate SCSI HDD to Arab Gulf Trading in Kuwait. According to the commercial invoice issued by Rednihom dated July 25, 1999 (at Exhibit Q), the HDD were sold for US$ 2,800,000.00 "FOB". The Packing List # 917A, also dated July 25, 1999 (at Exhibit Q) identified the consignment as consisting of 20 boxes of 200 HDD each, weighing 14,000 lbs. gross, and having been loaded into container No. # EACU418435-6 (Seal No. # 26210).

The address of Rednihom Inc. shown on the commercial invoice as well as the packing list was "50-80 Baxter Avenue, Office 189, Elmhurst, NY 11373", being the same as that of Neewra Inc. Also, the telephone and fax numbers on these documents were the same as appear on Neewra Inc.'s letterhead.

On or about July 20, 1999, the container was loaded at Newark (Port Elizabeth), NJ onto the motor-vessel "LOUIS MAERSK" for shipment to Kuwait. The Bill of Lading No. # NYC697086 dated July 20, 1999 (at Exhibit Q) showed Rednihom (with the above address) as the shipper, Arab Gulf Trading as the consignee, and the cargo was described as "PC Parts" (sic).

The container was transshipped at Salalah, Oman, onto the ocean vessel "FRANCISCA SCHULTE" on August 16, 1999 (having arrived in Oman on August 12, 1999), and finally discharged at the Shuaiba Container Terminal in Kuwait on August 20, 1999.

We were informed by Soren Hansen of Maersk's Kuwait office that several attempts, made over a period of three months, to contact the consignee to arrange delivery of the container were unsuccessful. Mr. Hansen explained that, after three months, the Kuwaiti port authorities normally initiate steps for the sale

MOAC
June 5, 2000
Report 99560
Page 16

of undelivered cargoes, and in anticipation of a forced sale as well as alerted by similarities of the parties involved in the shipment subject to claim, Maersk arranged an inspection of the container by Saybolt Kuwait on November 29, 1999. When the container was opened by Saybolt in the presence of port and customs officials, it was found that the contents of the container consisted of empty cardboard boxes with different logos, as well as crates containing scrap automotive parts, as well as a small quantity of new gasket kits, brake shoes and brake pads. None of the cartons or crates contained computer parts or HDDs. Neither the contents of Saybolt's Survey Report dated November 30, 1999 (at Exhibit Q), nor the fact that the container had been opened were disclosed to Rednihom Inc.

In about December 1999 and early January 2000, two individuals, identifying themselves as Kumar Gupta and D. Bepak and claiming to be consultants retained by Help Line Collection Co. W.L.L. of Kuwait, approached the Maersk office in Kuwait, seeking to negotiate the release of the container. Maersk refused to deal with either until such time as they produced a requisite authority from either Rednihom Inc. or the holder of the original Bills of Lading. We understand that Helpline is a company specializing in immigration matters, and owned by a local Indian resident, Johinder Singh Sahni, who also owns another company of the name SADAR Trading & Construction Co., which engages mainly in the import and local sale of auto parts.

On January 10, 2000, Rednihom Inc. issued a letter of authority to Help Line Collection Co. (at Exhibit Q), and advised Maersk that it intended to redirect the container to "its final destination, Dubai". By letter dated January 15, 2000 (at Exhibit Q), Help Line Collection informed Maersk that, prior to transshipment, the container was to be surveyed, and also provided a copy of its letter of instruction (of the same date) to William Lamb of International Loss Adjusters in Kuwait (also at Exhibit Q).

In the meantime, we understand that Rednihom submitted the full set of original Bills of Lading to Maersk in New York, but it is not known whether the container has yet been shipped to Dubai or if William Lamb conducted any survey.

## 6.0   Our Investigations

In this section, we are providing a summary of the investigations conducted by us as well as by Timothy Wolfe and Steve Weiner, both of Investigative Options, Inc. and retained by you directly. Their respective reports appear at Exhibit Y.

### 6.1   Arween Sahni Singh and Neewra Inc.

There is little information available about the background of Arween Sahni Singh. We understand that Arween Sahni was issued with the Social Security No. 465-

MOAC
June 5, 2000
Report 99560
Page 17

65-2149 in Texas in 1988, at which time his address was said to be 1001 South C.X., Arlington, TX 76010. He was born in Kuwait on June 14, 1964, and is an Indian citizen. His latest passport was issued by the Indian Embassy in New York on August 19, 1999 (Exhibit K), but does not contain a US entry visa or a visa evidencing residence or work rights, unless a record thereof can be found on page 2 and 3 of the passport, which Arween Sahni omitted from the copy supplied to us. Mr. Sahni is also the holder of a New York State Identification Card (issued on June 24, 1996 – at Exhibit B), showing 40-18 Hampton Street, Apt. 1 J, Elmhurst, NY 11373 as his address, as well as of a New York State Learner Permit (issued on March 30, 1999 – at Exhibit K), which shows as his address: 80-50 Baxter Avenue, Apt. 189, Elmhurst, NY 11373. Apparently, the number "189" does not refer to an apartment, but an office, and the residential address of Arween Sahni is unknown.

According to information provided by Subhash Sardana, a co-tenant of Neewra Inc. in the same building, Sahni is involved in the wholesale purchase and retail sale of clothing articles, possibly through a retail shop outlet located in the vicinity of 74th Street in Brooklyn, NY, although no confirmation hereof has been obtained.

At the time of incorporation in November 1998, Neewra Inc. appears to have occupied premises at 40-18 Hampton Street, Office 1 J, Elmhurst, NY 11373. "1J" is apparently the denomination of an apartment (rather than an office) in the complex known as "Hampton House Apartments".

Even though the letterhead used by Neewra Inc. indicated from some time in March 1999 onwards that the office had been relocated to 8050 Baxter Avenue, Elmhurst, NY 11373, the attorney representing the landlord of Whitehall Apartments Co, apparent owner of the apartment building, advised that Neewra Inc. did not sign a lease until November 29, 1999. Prior to that date, Neewra Inc. is understood to have had a sub-lease from Sally Leu, who operates a mail box service from the basement of the 8050 Baxter Avenue location.

During a site visit in March 2000, it was observed that two rooms in the basement of the Baxter Avenue apartment building carried signs saying "Neerwa Inc." and "Rednihom Inc." respectively, marked "Office 189" and "Office 188" respectively. However, the landlord's attorneys were unaware of a lease having been granted to Rednihom Inc.

The telephone number of Neewra Inc. (the same as provided by Rednihom Inc.), namely 718-803-2725 has no subscriber listing; however, we understand that the fax number (again, of both companies), namely 718-803-2801, is registered to Al and Jandro Bravo at 34-33 98th Street, Queens, New York.