Exhibit I

# NEEWRA INCORPORATED

80-50 BAXTER AVENUE
OFFICE NO. 189
ELMHURST, NEW YORK 11373
USA
TEL. 718 803 2725
FAX. 718 803 2801

7/27/1999

TO : KEN RAICHLE - MAERSK LINE

PLEASE INFORM IF YOU RECEIVED THE COPY OF THE BILL OF LADING WHICH WAS FAXED TO YOU ON 7/22/1999.
IF YOU ARE IN RECEIPT OF THE B/L , AND YOU HAVE REQUESTED THE INFORMATION FROM MAERSK LINE KUWAIT , THEN PLEASE SEND ME A COPY OF THE FAX YOU SEND TO MAERSK LINE KUWAIT

THANK YOU
AWAITING YOUR REPLY
ARWEEN SAHNI

Exhibit I

# NEEWRA INCORPORATED

80-50 BAXTER AVENUE
OFFICE NO. 189
ELMHURST, NEW YORK 11373
USA
TEL. 718 803 2725
FAX. 718 803 2801

2ND REQUEST
NAM 25379

8/2/1999

TO : KEN RAICHLE - MAERSK LINE

RECEIVED YOUR FAX ON 7/28/1999. ( REFN : NAM16424 1999.07.28 11:39 EDT )
PLEASE INFORM OF THE REPLY RECEIVED FROM MAERSK LINE KUWAIT.

AWAITING YOUR REPLY
THANK YOU
ARWEEN SAHNI

Exhibit I

# NEEWRA INCORPORATED

80-50 BAXTER AVENUE
OFFICE NO. 189
ELMHURST, NEW YORK 11373
USA
TEL. 718 803 2725
FAX. 718 803 2801

8/4/1999

TO : KEN RAICHLE – MAERSK LINE

THANK YOU FOR YOUR FAX OF 8/3/1999. THE ORIGINAL BILL OF LADING IS HERE IN NEW YORK WITH US. IF YOU WANT , WE COULD FAX A COPY TO YOU. THE BILL OF LADING YOU RECEIVED FROM KUWAIT CANNOT POSSIBLY BE THE REAL ONE . PLEASE LOOK INTO IT AND INVESTIGATE .

THANK YOU
ARWEEN SAHNI

Exhibit I

Ralph A. Gant
Counselor at Law
39 East 79th Street
New York, New York 10021
Tel: 212-879-7853 Fax: 212-535-1663
Email: RGantLaw@aol.com

VIA FAX

Mr. Massoud Messkoub
Maersk Line

Re: DRAGOER MAERSK
One Container to Kuwait

Dear Mr. Messkoub:

In accordance with our phone conversation of yesterday, I am now in receipt of the full set of bladings - three originals.

I enclose copies and hereby confirm that I am holding the originals.

Please start your investigation promptly - so that we can determine what actually happened.

Your co-operation is appreciated.

Sincerely,

Please confirm receipt.

"I"

EXHIBIT I

Document Index

Copies of 1/3, 2/3 and 3/3 Original Bill of Lading, of which 1/3 and 2/3 are (receipt) stamped by The Gulf Bank of Kuwait

# MAERSK LINE

## COMBINED TRANSPORT BILL OF LADING

B/L No. NYC688479

Shipper/Exporter (complete name and address)
NEEWRA INCORPORATED
4018 HAMPTON STREET
ELMHURST, NEW YORK 11373

Booking No.
000503764

Export references
NJ200828

Consignee (complete name and address)
AL TAMASOK AL ARABI EST
P.O. BOX 384 HAWALLI
KUWAIT 32004

Forwarding agent - references FMC 3969
INTL SHIPPING CORP
169 FRELINGHUYSEN AVE
NEWARK NJ 07114

Shipper memoranda not part of Bill of Lading

Point and Country of Origin
NEW JERSEY, U.S.A.

Notify Party (complete name and address)
SAME AS CONSIGNEE
TEL; 2451152

Domestic routing/export instructions

The Gulf Bank K.S.C. HEAD OFFICE KUWAIT L.C. No.

| *Precarriage by | *Place of Receipt |
|---|---|
| | |

| Vessel | Voy No. | Port of Loading |
|---|---|---|
| DRAGOER MAERSK | 9903 | NEWARK |

Onward inland routing

| Port of Discharge | *Place of Delivery |
|---|---|
| KUWAIT | |

CARRIER'S RECEIPT — PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE

| Container No./Seal No. Marks and Numbers | No. of Containers or pkgs. | Kind of packages; description of goods | Gross Weight | Measurement |
|---|---|---|---|---|
| BENU2326560 93059 | 1 | CY / CY<br>SHIPPERS LOAD, STOW AND COUNT<br>FREIGHT PREPAID<br>20'CTNR SAID TO CONTAIN<br>20 CRATES<br>ELECTRICAL SPARE PARTS<br>COMM CODE: 8900 9900000130 | LBS 7200.000 | |

ORIGINAL

THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS
DIVERSION CONTRARY TO U.S. LAW PROHIBITED

| Unit | Prepaid | Collect |
|---|---|---|
| | | |

LADEN ON BOARD DRAGOER MAERSK 9903 AT NEWARK ON MAR 05 1999

Declared Value Charges (see clause 6) for Declared Value of US $

Total Prepaid

Number of Original B(s)/L: 1/3

Total Collect

Place of Issue: NEW YORK

Date: MAR 05 99

*Applicable only when document used as a Combined Transport Bill of Lading

Shipped in apparent good order and condition, unless otherwise stated herein, for transportation on board the ocean vessel mentioned herein or any substituted vessel or on board the feeder vessel or other means of transportation (rail or truck) if place of receipt is named in this Bill of Lading the goods or packages or containers said to contain goods, hereinafter called "the Goods", specified herein for carriage from the port of loading named herein or place of receipt if mentioned herein, on a voyage as described and agreed by this Bill of Lading and discharge at the port of discharge named herein or deliver at the place of delivery if mentioned herein, such carriage, discharge or delivery being always subject to the exceptions, limitations, conditions and liberties hereinafter agreed in like order and condition at the port of discharge or place of delivery if named as the case may be, for delivery unto the Consignee mentioned herein or to his or their assigns where the Carrier's responsibilities shall in all cases and in all circumstances whatsoever finally cease. It is further agreed that Containers may be stowed on deck without notice pursuant to Clause 16 on the reverse side of this Bill of Lading. IN WITNESS whereof the number of original Bills of Lading stated on this side have been signed, one of which being accomplished the other(s) to be void.

For Dampskibsselskabet af 1912, Aktieselskab and Aktieselskabet Dampskibsselskabet Svendborg as carrier
MAERSK INC AS AGENTS FOR THE CARRIER
[signature]
As Agent(s) only

MAERSK LINE U.S. CUSTOMS CONTAINER BOND NO. 1085-20591
7248/1875M/9-98/DR

# COMBINED TRANSPORT BILL OF LADING

Agents signing this Bill of Lading on behalf of the Company or Line by whom this Bill of Lading is issued have only the limited authority as agents [illegible] of Lading.

In accepting this Bill of Lading any local customs or privileges to the contrary notwithstanding the Shipper, Consignee, and Owner of the Goods and the Holder of this Bill of Lading agree to be bound by all stipulations, exceptions, and conditions stated herein whether written, printed, stamped, or incorporated on the front or reverse side hereof, as fully as if they were all signed by such Shipper, Consignee, Owner or Holder.

Notwithstanding the heading "Combined Transport Bill of Lading" the provisions set out and referred to in this document shall also apply if the transport as described on the reverse side of this Bill of Lading is performed by one mode of transport only.

1. DEFINITIONS

"Merchant" [illegible]

"Carrier" [illegible]

"Combined Transport" [illegible]

"Goods" [illegible]

"Container" [illegible]

"Holder" [illegible]

"Package" [illegible]

[illegible]

2. CARRIER'S TARIFF

The terms of the Carrier's applicable Tariff are incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

3. SUB-CONTRACTING

1. The Carrier shall be entitled to sub-contract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

2. The Merchant undertakes that no claim or allegation shall be made against any servant, agent or sub-contractor of the Carrier [illegible]

3. The expression "sub-contractor" in this clause [illegible]

4. DELIVERY OF CARGO BEYOND PORT OF DISCHARGE OR PLACE OF DELIVERY

In the event the Consignee/Receiver [illegible] port or place beyond the place of delivery originally designated in this Bill of Lading and the Carrier in its absolute discretion agrees to such further carriage, such further carriage will be undertaken on the basis that the Bill of Lading terms and conditions are to apply to such carriage as if the ultimate destination agreed with Consignee/Receiver had been entered as the destination of the transport on the reverse side of this Bill of Lading.

5. CARRIER'S RESPONSIBILITY

The Carrier undertakes responsibility from the place of receipt if named herein or from the port of loading to the port of discharge or the place of delivery if named herein as follows:

1. If it can be proved that the loss or damage occurred while the Goods were in custody of an inland carrier the liability of the Carrier and the limitation thereof shall be determined in accordance with the inland carrier's contract of carriage or tariff, or in the absence of such contract or tariff, [illegible] with the internal law of the state where the loss or damage occurred [illegible] Clause [illegible]

2. Carriage to and from the USA

Where loss or damage has occurred between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge, or during any prior or subsequent period of carriage by water, the liability of the Carrier shall be determined in accordance with the U.S. Carriage of Goods by Sea Act 1936 ("COGSA"). [illegible]

3. Carriage to and from Countries other than the USA

a. [illegible]

b. [illegible]

4. [illegible]

6. THE AMOUNT OF COMPENSATION

[illegible]

1. [illegible] United States of America [illegible]

2. Where the Hague Rules apply [illegible]

3. [illegible]

a. [illegible]

b. [illegible] the value of each Goods at the place and time they were delivered [illegible]

c. Compensation shall not, however, exceed USD 2.00 per kilo of gross weight of the Goods lost or damaged.

7. GENERAL

1. The Carrier does not undertake that the Goods shall arrive at the port of discharge or the place of delivery at any particular time or to meet any particular market or use and save as is provided in clause 6 the Carrier shall in no circumstances be liable for any direct, indirect or consequential loss or damage caused by delay. [illegible]

2. [illegible]

3. [illegible]

8. NOTICE OF LOSS, TIME BAR

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the port of discharge or the place of delivery [illegible] three days of the delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

9. DEFENCES AND LIMITS FOR THE CARRIER

The defences and limits of liability provided for in this Bill of Lading shall apply in any action against the Carrier for loss of or damage to the Goods whether the action be founded in contract or in tort.

10. SHIPPER-PACKED CONTAINERS

1. If a Container has not been filled by the Carrier, this Bill of Lading shall be a receipt only for the Container(s) and the Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense incurred by the Carrier if such injury, loss, damage, liability or expense has been caused by:

a) the manner in which the Container has been filled, packed or stuffed or [illegible]

b) the unsuitability of the contents for carriage in Containers, or

c) the unsuitability or defective condition of the Container(s) [illegible] apparent upon reasonable inspection [illegible]

2. The Shipper shall inspect Containers before stuffing them and the use of the Containers shall be prima facie evidence of their being sound and suitable for use.

11. INSPECTION OF GOODS

The Carrier shall be entitled, but under no obligation, to open any Package or Container at any time and to inspect the contents. If it thereupon appears that the contents or any part thereof cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to such Package or Container or its contents or any part thereof, the Carrier may abandon the transportation thereof and/or take any measures and/or incur any reasonable additional expense to carry or to continue the carriage or to store the same ashore or afloat under cover or in the open, at any place, which storage shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any reasonable additional expense so incurred. [illegible]

12. DESCRIPTION OF THE GOODS

1. This Bill of Lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition except as otherwise noted of the total number of Containers or other packages or units enumerated overleaf.

2. No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

13. SHIPPER'S RESPONSIBILITY

1. The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars and any other particulars furnished by or on behalf of the Shipper are correct.

2. The Shipper shall indemnify the Carrier against all loss, damage or expenses arising or resulting from inaccuracies in or inadequacy of such particulars.

14. FREIGHT AND CHARGES

1. [illegible]

2. Full freight to the port of discharge named [illegible]

3. [illegible]

4. [illegible]

15. LIEN

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract and for general average contributions [illegible]

16. OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK

1. The Goods may be stowed by the Carrier [illegible]

2. [illegible]

3. [illegible]

17. METHODS AND ROUTES OF TRANSPORTATION

1. The Carrier may at any time and without notice to the Merchant:

[illegible]

18. MATTERS AFFECTING PERFORMANCE

If at any time the performance of the contract as evidenced by this Bill of Lading is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of whatsoever kind [illegible] the Merchant shall pay any additional costs of carriage to and delivery and storage at such place or port.

19. PERISHABLE CARGO

1. Goods of a perishable nature shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for transportation any Goods which require refrigeration without giving written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the Goods by the Carrier. In case of refrigerated Container(s) packed by or on behalf of the Merchant, the Merchant undertakes that the Goods have been properly stowed in the Container and that the thermostatic controls have been adequately set by him before receipt of the Goods by the Carrier. The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo presented at a higher temperature than that required for the transportation. If the above requirements are not complied with, the Carrier shall not be liable for any loss of or damage to the Goods howsoever arising.

2. The term "apparent good order and condition" when used in this Bill of Lading with reference to goods which require refrigeration does not mean that the goods, when received were verified by the Carrier as being at the designated carrying temperature.

20. DANGEROUS GOODS

1. The Merchant undertakes not to tender for transportation any Goods which are of a dangerous, inflammable, radioactive or damaging nature without previously giving written notice of their nature to the Carrier and marking the Goods and the Container or other covering on the outside as required by any laws or regulations which may be applicable during the carriage.

2. If the requirements of sub-clause 1 are not complied with the Merchant shall indemnify the Carrier against all loss, damage or expense arising out of any Goods being tendered for transportation or handled or carried by the Carrier.

3. Goods which are or at any time become dangerous, inflammable, radioactive or damaging may, at any time or place, be unloaded, destroyed or rendered harmless without compensation, and if the Merchant has not given notice of their nature to the Carrier under 1 above, the Carrier shall be under no liability to make any general average contribution in respect of such goods.

21. REGULATIONS RELATING TO GOODS

The Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods, and indemnify the Carrier in respect thereof.

22. NOTIFICATION AND DELIVERY

1. Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

2. The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff.

3. If the Merchant fails to take delivery of the Goods or part of them in accordance with this Bill of Lading, the Carrier may without notice unstow the Goods or that part thereof and/or store the Goods or that part thereof ashore, afloat, in the open or under cover. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods or that part thereof shall cease.

4. The Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in the Carrier's applicable Tariff, which is incorporated in this Bill of Lading.

5. The Carrier may at his absolute discretion receive the Goods as Full Container Load and/or Less than Full Container Load and/or as break bulk cargo and/or deliver [illegible] the Goods as more than one of the above. In such event the Carrier shall not be liable for any shortage, loss, damage or discrepancies of the Goods which are found upon unpacking of the Container.

6. If the Goods are unclaimed during a reasonable time, or whenever in the Carrier's opinion the Goods will become deteriorated, decayed or worthless, the Carrier may, at his discretion and subject to his lien and without any responsibility attaching to him, sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant.

23. BOTH-TO-BLAME COLLISION CLAUSE

If the carrying ship comes into collision with another ship as a result of negligence of the other ship and any act, neglect or default in the navigation or the management of the carrying ship, the Merchant undertakes to pay the Carrier, or, where the Carrier is not the owner and in possession of the carrying ship, to pay to the Carrier as trustee for the owner and/or demise charterer of the carrying ship, a sum sufficient to indemnify the Carrier and/or the owner and/or demise charterer of the carrying ship against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of or damage to, or any claim whatsoever of the Merchant, paid or payable by the other or non-carrying ship or her owners to the Merchant and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or her owner or demise charterer or the Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects, are at fault in respect to a collision, contact, stranding or other accident.

24. GENERAL AVERAGE

1. General average to be adjusted at any port or place at the Carrier's option, and to be settled according to the York-Antwerp Rules 1974 as amended 1990, this covering all Goods, whether carried on or under deck.

2. Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon, shall, if required, be submitted to the Carrier prior to delivery of the Goods.

25. NEW JASON CLAUSE

1. In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which the Carrier is not responsible, by statute, contract or otherwise, the Goods and the Merchant shall jointly and severally contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods.

2. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship belonged to strangers.

26. VARIATION OF THE CONTRACT ETC.

No servant or agent of the Carrier shall have power to waive or vary any terms of this Bill of Lading unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier.

27. LAW AND JURISDICTION

Whenever the Carriage of Goods by Sea Act 1936 (COGSA) of the United States of America applies, whether by virtue of Clause 5.2 above or otherwise, this contract is to be governed by United States law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder including any dispute relating to freight or other sums payable to the Carrier for carriage to or from the USA. In all other cases, this Bill of Lading is subject to English law and jurisdiction.

MAERSK LINE

COMBINED TRANSPORT BILL OF LADING

B/L No. NYC688479

Shipper/Exporter (complete name and address)
NEEWRA INCORPORATED
4018 HAMPTON STREET
ELMHURST, NEW YORK 11373

Booking No. 000503764

Export references NJ200828

Consignee (complete name and address)
~~AL TAMASOK AL ARABI EST~~
P.O. BOX 384 HAWALLI
KUWAIT 32004

Forwarding agent - references FMC 3969
INTL SHIPPING CORP
169 FRELINGHUYSEN AVE
NEWARK NJ 07114

Shipper Memoranda not part of Bill of Lading

Point and Country of Origin
NEW JERSEY, U.S.A.

Notify Party (complete name and address)
SAME AS CONSIGNEE
TEL; 2451152

Domestic routing/export instructions

The Gulf Bank K.S.C. HEAD OFFICE I.C. ... KUWAIT

*Precarriage by

*Place of Receipt

Vessel DRAGOER MAERSK Voy No. 9903

Port of Loading NEWARK

Onward inland routing

Port of Discharge KUWAIT

*Place of Delivery

CARRIER'S RECEIPT — PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE

| Container No./Seal No. Marks and Numbers | No. of Containers or pkgs. | Kind of packages; description of goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | | CY / CY<br>SHIPPERS LOAD, STOW AND COUNT<br>FREIGHT PREPAID | | |
| BENU2326560<br>93059 | 1 | 20'CTNR SAID TO CONTAIN<br>20 CRATES<br>ELECTRICAL SPARE PARTS<br>COMM CODE: 8900 9900000130 | LBS<br>7200.000 | |

ORIGINAL

THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS DIVERSION CONTRARY TO U.S. LAW PROHIBITED

| Unit | Prepaid | Collect |
|---|---|---|
| | | |

LADEN ON BOARD DRAGOER MAERSK 9903 AT NEWARK ON MAR 05 1999

Declared Value Charges (see clause 6) for Declared Value of US $

Total Prepaid

Number of Original Bs/L 3/3

Total Collect

Place of Issue NEW YORK

Date MAR 05 99

Shipped in apparent good order and condition, unless otherwise stated herein, for transportation on board the ocean vessel mentioned herein or any substituted vessel or on board the feeder vessel or other means of transportation (rail or truck) if place of receipt is named in this Bill of Lading the goods or packages or containers said to contain goods, hereinafter called "the Goods", specified herein for carriage from the port of loading named herein or place of receipt if mentioned herein, on a voyage as described and agreed by the Bill of Lading and discharge at the port of discharge named herein or deliver at the place of delivery if mentioned herein, such carriage, discharge or delivery being always subject to the exceptions, limitations, conditions and liberties hereinafter agreed in like order and condition at the port of discharge or place of delivery if named as the case may be, for delivery unto the Consignee mentioned herein or to his or their assigns where the Carrier's responsibilities shall in all cases and in all circumstances whatsoever finally cease. It is further agreed that Containers may be stowed on deck without notice pursuant to Clause 16 on the reverse side of this Bill of Lading. IN WITNESS whereof the number of original Bills of Lading stated on this side have been signed, one of which being accomplished the other(s) to be void.

For Dampskibsselskabet af 1912, Aktieselskab and Aktieselskabet Dampskibsselskabet Svendborg as carrier
MAERSK INC AS AGENTS FOR THE CARRIER

[signature]

As Agent(s) only

Applicable only when document used as Combined Transport Bill of Lading

MAERSK LINE U.S. CUSTOMS CONTAINER BOND NO. 1086-20691
7248/1875M/9-98/DR

# COMBINED TRANSPORT BILL OF LADING

Agents signing this Bill of Lading on behalf of the Company or Line by whom this Bill of Lading is issued [illegible] Bill of Lading.

In accepting this Bill of Lading any local custom or privilege to the contrary notwithstanding the Shipper, Consignee, and Owner of the Goods and the Holder of this Bill of Lading agree to be bound by all stipulations, exceptions and conditions stated herein whether written, printed, stamped, or incorporated on the front or reverse side hereof, as fully as if they were all signed by such Shipper, Consignee, Owner or Holder.

Notwithstanding the heading "Combined Transport Bill of Lading", the provisions set out and referred to in this document shall also apply if the transport as described on the reverse side of this Bill of Lading is performed by one mode of transport only.

1. DEFINITIONS

"Maersk Line" is the trade name of the Carrier

"Carrier" means the Owner or Charterer of the vessel [illegible] this Bill of Lading has been issued.

"Owner or Charterer" [illegible] Dampskibsselskabet [illegible] 50, Esplanaden, DK-1098, Copenhagen K, Denmark

"Goods" [illegible] Container not supplied by or on behalf of the Carrier.

"Container" includes any container [illegible] trailer, transportable tank [illegible] any other device used for the transportation of Goods.

"Merchant" includes the Consignor, Shipper, Holder, Consignee, the receiver of the Goods, any person including any Corporation, Company or other legal entity owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of any such persons.

"Holder" means any person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on or by reason of the consignment of the Goods or the endorsement of this Bill of Lading or otherwise.

"Package" The word package shall include each container whether container is stuffed and sealed by the Merchant or on his behalf although the Shipper may have furnished in the Particulars hereon the contents of such sealed container.

"The Internal Law of a State" shall be deemed to include all principles of private international law applied by such State.

2. CARRIER'S TARIFF

The terms of the Carrier's applicable Tariff are incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

3. SUB-CONTRACTING

1. The Carrier shall be entitled to sub-contract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

2. The Merchant undertakes that no claim or allegation shall be made against any servant, agent or [illegible] or sub-contractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned or chartered by any of them any liability whatsoever in connection with the Goods, and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing every such servant, agent, [illegible] and sub-contractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for their benefit, and all limitations of and exonerations from liability provided to the Carrier by law and by the terms hereof shall be available to them and in entering into this contract the Carrier, to the extent of those provisions, does so not only on his own behalf, but also as agent and trustee for such servants, agents, [illegible] and sub-contractors.

3. The expression "sub-contractor" in this clause shall include direct and indirect sub-contractors and their respective servants and agents.

4. DELIVERY OF CARGO BEYOND PORT OF DISCHARGE OR PLACE OF DELIVERY

In the event that Consignee/Receiver or any cargo requests the Carrier to deliver cargo at a port or place beyond the place of delivery originally designated in the Bill of Lading and the Carrier in its absolute discretion agrees to such further carriage, such further carriage will be undertaken on the basis that the Bill of Lading terms and conditions are to apply to such carriage as if the ultimate destination agreed with Consignee/Receiver had been included in the description of the [illegible] on the reverse side of this Bill of Lading.

5. CARRIER'S RESPONSIBILITY

[illegible]

6. THE AMOUNT OF COMPENSATION

[illegible]

3. Higher compensation may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier exceeds the limits laid down in this clause and has been stated in this Bill of Lading. In that case the amount of the declared value shall be substituted for that limit. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

7. GENERAL

1. The Carrier does not undertake that the Goods shall arrive at the port of discharge or the place of delivery at any particular time or to meet any particular market or use and save as is provided in clause 5 the Carrier shall in no circumstances be liable for any direct, indirect or consequential loss or damage caused by delay. If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by delay, such liability shall in no event exceed the freight paid for the transport covered by this Bill of Lading.

2. Save as is otherwise provided herein, the Carrier shall in no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause.

3. The terms of this Bill of Lading shall govern the responsibility of the Carrier in connection with or arising out of the supply of a Container to the Merchant, whether before or after the Goods are received by the Carrier for transport, or after delivery to the Merchant.

8. NOTICE OF LOSS, TIME BAR

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the port of discharge or the place of delivery, as the case may be, before or at the time of removal of the Goods into the custody of the Merchant, such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this Bill of Lading. If the loss or damage is not apparent, then notice must be given within three days of the delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

9. DEFENCES AND LIMITS FOR THE CARRIER

The defences and limits of liability provided for in this Bill of Lading shall apply in any action against the Carrier for loss or damage to the Goods whether the action be founded in contract or in tort.

10. SHIPPER-PACKED CONTAINERS

1. If a Container has not been filled by the Carrier, this Bill of Lading shall be a receipt only for the Container and the Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense incurred by the Carrier if such [illegible] has been caused by:

a) the manner in which the Container has been filled, packed or loaded, or

b) the unsuitability of the contents for carriage in Containers, or

c) the unsuitability or defective condition of the Container which would have been apparent upon reasonable inspection by the Merchant at or prior to the time the Container was filled, packed, stuffed or loaded.

2. The Shipper shall inspect Containers before stuffing them and the use of the Containers shall be prima facie evidence of their being sound and suitable for use.

11. INSPECTION OF GOODS

The Carrier shall be entitled, but under no obligation, to open any Package or Container at any time and to inspect the contents. If it thereupon appears that the contents or any part thereof cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to such Package or Container or its contents or any part thereof, the Carrier may abandon the transportation thereof and/or take any measures and/or incur any reasonable additional expense to carry or to continue the carriage or to store the same ashore or afloat under cover or in the open, at any place, which storage shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any reasonable additional expense so incurred. The Carrier in exercising the liberties contained in this clause shall not be under any obligation to take any particular measures and the Carrier shall not be liable for any loss, damage or delay howsoever arising from any action or lack of action under this clause.

12. DESCRIPTION OF THE GOODS

1. This Bill of Lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition except as otherwise noted of the total number of Containers or other packages or units enumerated overleaf.

2. No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

13. SHIPPER'S RESPONSIBILITY

[illegible]

14. FREIGHT AND CHARGES

[illegible]

15. LIEN

[illegible]

16. OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK

[illegible]

17. METHODS AND ROUTES OF TRANSPORTATION

[illegible]

[illegible] out of the route or in a contrary direction to or beyond the port of discharge [illegible] or whence for bunkering or loading or discharging cargo or embarking or disembarking any person(s), whether in connection with the present, prior or subsequent voyage or any other purpose whatsoever, and before giving delivery of the Goods at the port of discharge or the place of delivery herein provided and with the Goods aforesaid [illegible] and then return and discharge the Goods at such port, tow or be towed, make trial trips, adjust compasses, or repair or drydock, with or without cargo onboard,

d) load and unload the Goods at any port or place (whether or not any such port is named overleaf as the Port of Loading or Port of Discharge) and store the Goods at any such port or place.

e) comply with any orders or recommendations given by any government or authority or any person or body or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on the conveyance employed by the Carrier the right to give orders or directions.

2. Anything done or not done in accordance with sub-clause 1 or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation.

18. MATTERS AFFECTING PERFORMANCE

If at any time the performance of the contract evidenced by this Bill of Lading is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of whatsoever kind which cannot be avoided by the exercise of reasonable endeavours, the Carrier (whether or not the transport is commenced) may without notice to the Merchant treat the performance of the contract as terminated and place the Goods or any part of them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full freight and charges on Goods received for transportation, and the Merchant shall pay any additional costs of carriage to and delivery and storage at such place or port.

19. PERISHABLE CARGO

1. Goods of a perishable nature shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for transportation any Goods which require refrigeration without giving written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the Goods by the Carrier. In case of refrigerated Containers packed by or on behalf of the Merchant, the Merchant undertakes that the Goods have been properly stowed in the Container and that the thermostatic controls have been adequately set by him before receipt of the Goods by the Carrier. The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo presented at a higher temperature than that required for the transportation. If the above requirements are not complied with, the Carrier shall not be liable for any loss of or damage to the Goods howsoever arising.

2. The term "apparent good order and condition" when used in this Bill of Lading with reference to goods which require refrigeration does not mean that the goods, when received were verified by the Carrier as being at the designated carrying temperature.

20. DANGEROUS GOODS

1. The Merchant undertakes not to tender for transportation any Goods which are of a dangerous, inflammable, radio-active or damaging nature without previously giving written notice of their nature to the Carrier and marking the Goods and the Container or other covering on the outside as required by any laws or regulations which may be applicable during the carriage.

2. If the requirements of sub-clause 1 are not complied with the Merchant shall indemnify the Carrier against all loss, damage or expense arising out of the Goods being tendered for transportation or handled or carried by the Carrier.

3. Goods which are or at any time become dangerous, inflammable, radio-active or damaging may, at any time or place, be unloaded, destroyed or rendered harmless without compensation, and if the Merchant has not given notice of their nature to the Carrier under sub-clause 1 above, the Carrier shall be under no liability to make any general average contribution in respect of such goods.

21. REGULATIONS RELATING TO GOODS

The Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods, and indemnify the Carrier in respect thereof.

22. NOTIFICATION AND DELIVERY

[illegible]

23. BOTH-TO-BLAME COLLISION CLAUSE

[illegible]

24. GENERAL AVERAGE

1. General average to be adjusted at any port or place at the Carrier's option, and to be settled according to the York-Antwerp Rules 1974 [illegible] covering all Goods whether carried on or under deck.

2. Such security [illegible] deemed by the Carrier [illegible] to cover the estimated contribution of the Goods and any salvage and special charges thereon, shall, if required, be submitted to the Carrier prior to delivery of the Goods.

25. NEW JASON CLAUSE

1. In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the Goods and the Merchant shall jointly and severally contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods.

2. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship belonged to strangers.

26. VARIATION OF THE CONTRACT ETC.

No servant or agent of the Carrier shall have power to waive or vary any terms of this Bill of Lading unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier.

27. LAW AND JURISDICTION

"Whenever the Carriage of Goods by Sea Act 1936 (COGSA) of the United States of America applies, whether by virtue of Clause 5.2 above or otherwise, this contract is to be governed by United States law and the United States Federal Court for the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder, including any disputes relating to freight or other sums payable to the Carrier for carriage to or from the U.S.A. In all other cases, this Bill of Lading is subject to English law and jurisdiction."

# MAERSK LINE

**COMBINED TRANSPORT BILL OF LADING**

B/L No. NYC688479

Shipper/Exporter (complete name and address)
NEEWRA INCORPORATED
4018 HAMPTON STREET
ELMHURST, NEW YORK 11373

Booking No. 000503764

Export references NJ200828

Consignee (complete name and address)
AL TAMASOK AL ARABI EST
P.O. BOX 384 HAWALLI
KUWAIT 32004

Forwarding agent - references FMC-3969
INTL SHIPPING CORP
169 FRELINGHUYSEN AVE
NEWARK NJ 07114

Point and Country of Origin
NEW JERSEY, U.S.A.

shipper memoranda not part of Bill of Lading

Notify Party (complete name and address)
SAME AS CONSIGNEE
TEL; 2451152

Domestic routing/export instructions

*Precarriage by

*Place of Receipt

Vessel DRAGOER MAERSK — Voy No. 9903

Port of Loading NEWARK

Onward inland routing

Port of Discharge KUWAIT

*Place of Delivery

CARRIER'S RECEIPT — PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE

| Container No./Seal No. Marks and Numbers | No. of Containers or pkgs. | Kind of packages; description of goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | | CY / CY<br>SHIPPERS LOAD, STOW AND COUNT<br>FREIGHT PREPAID | | |
| BENU2326560<br>93059 | 1 | 20'CTNR SAID TO CONTAIN<br>20 CRATES<br>ELECTRICAL SPARE PARTS<br>COMM CODE: 8900 9900000130 | LBS<br>7200.000 | |

ORIGINAL

THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS DIVERSION CONTRARY TO U.S. LAW PROHIBITED

Unit | Prepaid | Collect

LADEN ON BOARD DRAGOER MAERSK 9903 AT NEWARK ON MAR 05 1999

Declared Value Charges (see clause 6) for Declared Value of US $

Total Prepaid

Total Collect

Number of Original B(s)/L: 3

Place of Issue: NEW YORK

Date: MAR 05 99

Applicable only when document used as a Combined Transport Bill of Lading

Shipped in apparent good order and condition, unless otherwise stated herein, for transportation on board the ocean vessel mentioned herein or any substituted vessel or on board the feeder vessel or other means of transportation (rail or truck) if place of receipt is named in this Bill of Lading the goods or packages or containers said to contain goods, hereinafter called "the Goods", specified herein for carriage from the port of loading named herein or place of receipt if mentioned herein, on a voyage as described and agreed by this Bill of Lading and discharge at the port of discharge named herein or deliver at the place of delivery if mentioned herein, such carriage, discharge or delivery being always subject to the exceptions, limitations, conditions and liberties hereinafter agreed in like order and condition at the port of discharge or place of delivery if named as the case may be, for delivery unto the Consignee mentioned herein or to his or their assigns where the Carrier's responsibilities shall in all cases and in all circumstances whatsoever finally cease. It is further agreed that Containers may be stowed on deck without notice pursuant to Clause 16 on the reverse side of this Bill of Lading. IN WITNESS whereof the number of original Bills of Lading stated on this side have been signed, one of which being accomplished the other(s) to be void.

For Dampskibsselskabet af 1912, Aktieselskab and Aktieselskabet Dampskibsselskabet Svendborg as carrier
MAERSK INC AS AGENTS FOR THE CARRIER

[signature]

As Agent(s) only

MAERSK LINE U.S. CUSTOMS CONTAINER BOND NO. 1085-20591
7248/1875M/9-98/DR

# COMBINED TRANSPORT BILL OF LADING

Agents signing this Bill of Lading on behalf of the Company [illegible] Line by whom the Bill of Lading is issued have only the limited authority at common law of vessel's master [illegible] of Lading.

In accepting this Bill of Lading any local customs or privileges to the contrary notwithstanding the Shipper, Consignee, and Owner of the Goods and the Holder of this Bill of Lading agree to be bound by all stipulations, exceptions, and conditions stated herein whether written, printed, stamped, or incorporated on the front or reverse side hereof, as fully as if they were all signed by such Shipper, Consignee, Owner or Holder.

Notwithstanding the heading "Combined Transport Bill of Lading" the provisions set out and referred to in this document shall also apply, if the transport as described on the face of this Bill of Lading is performed by one mode of transport only.

1. DEFINITIONS

"[illegible] Line" is the trade name of the Carrier.

"Carrier" means the Owners or Charterers of the vessel [illegible] on whose behalf this Bill of Lading has been issued.

"Owner or Charterer" is [illegible] of 1912, [illegible] Copenhagen K, Denmark.

"Goods" means the cargo accepted from the Shipper and includes any Container not supplied by or on behalf of the Carrier.

"Container" includes any container (including an open top Container) flat rack, platform, trailer, transportable tank, pallet or any other device used for the transportation of Goods.

"Merchant" includes the Consignee, Shipper, Holder, Consignee, the receiver of the Goods, any person including any Corporation, Company or other legal entity owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of any such person.

"Holder" means any person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on or by reason of the consignment of the Goods or the endorsement of this Bill of Lading or otherwise.

"Package" The word package shall include each container whether container is stuffed and sealed by the Merchant or on his behalf although the Shipper may have furnished to the Carrier a list [illegible] of such sealed container.

"The Internal Law of a State" shall be deemed to include all principles of private international law [illegible] by such State.

2. CARRIER'S TARIFF

The terms of the Carrier's applicable Tariff are incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

3. SUB-CONTRACTING

1. The Carrier shall be entitled to sub-contract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

2. The Merchant undertakes that no claim or allegation shall be made against any servant, agent or other sub-contractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned or chartered by any of them any liability whatsoever in connection with the Goods, and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent, [illegible] and sub-contractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for their benefit, and all limitations of and exonerations from liability provided to the Carrier by law and by the terms hereof shall be available to them, and, in entering into this contract the Carrier, to the extent of those provisions, does so not only on its own behalf, but also as agent and trustee for such servants, agents, [illegible] and subcontractors.

3. The expression "subcontractor" in this clause shall include direct and indirect subcontractors and their respective servants and agents.

4. DELIVERY OF CARGO BEYOND PORT OF DISCHARGE OR PLACE OF DELIVERY

In the event that [illegible] require the Carrier to deliver cargo at a port or place beyond the place of delivery originally designated in this Bill of Lading and the Carrier in its absolute discretion agrees to such further carriage, such further carriage will be undertaken on the basis that the Bill of Lading terms and conditions are to apply to such carriage as if the ultimate destination agreed with [illegible] had been entered in the description of the transport on the reverse side of this Bill of Lading.

5. CARRIER'S RESPONSIBILITY

The Carrier undertakes responsibility from the place of receipt if named herein or from the port of loading to the port of discharge or the place of delivery if named herein as follows:

1. If it can be proved that the loss or damage occurred while the Goods were in custody of [illegible] the liability of the Carrier and the limitation thereof shall be determined in accordance with the [illegible] carrier's contract of carriage or tariffs, or in the absence of such contract or tariff, in accordance with the internal law of the state where the loss or damage occurred [illegible] but where such contract or tariff does not exist the limit shall be as set out in Clause 7.

2. Carriage to and from the USA

Where loss or damage has occurred between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge, or during any prior or subsequent period of carriage by water, the liability of the Carrier shall be [illegible] with the "US Carriage of Goods by Sea Act 1936" (COGSA), at all times [illegible] the carrier has responsibility for the goods, the carrier shall be entitled to the full [illegible] to all such rights of or exemptions from liability authorized by any [illegible] of the Revised Statutes of the United States of America and [illegible] and of any provisions of the laws of the United States or any other [illegible]. Nothing in this Bill of Lading, express or implied, shall be [illegible] against the carrier or lessen the benefits of any such rights, exemptions, limitations or exceptions.

3. Carriage to and from Countries other than the USA

a) Subject to sub-paragraph b of this Clause where the loss or damage has occurred between the time of receipt of the goods by the carrier at the port of loading and the time of delivery by the Carrier at the port of discharge, or during any prior or subsequent period of carriage by water, the liability of the carrier shall be determined in accordance with either the Hague Visby Rules where these are compulsorily applicable at the place of receipt or the port of loading where the [illegible] all other cases in accordance with the International Convention for the Unification of Certain Rules relating to Bills of Lading dated 25th August 1924 (the Hague Rules) [illegible] shall not apply and the limit of liability [illegible] shall be as set out in Clause 6 below.

b) [illegible] at the port of discharge, the Carrier shall have no liability whatsoever for any [illegible]

[illegible]

6. THE AMOUNT OF COMPENSATION

[illegible]

7. GENERAL

1. The Carrier does not undertake that the Goods shall arrive at the port of discharge or the place of delivery at any particular time or to meet any particular market or use and [illegible]

2. Save as is otherwise provided herein, the Carrier shall in no circumstances be liable for direct or indirect or consequential loss or damage arising from delay [illegible]

3. The terms of this Bill of Lading shall govern [illegible]

8. NOTICE OF LOSS, TIME BAR

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the port of discharge or the place of delivery [illegible] such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this Bill of Lading. If the loss or damage is not apparent, such notice must be given within three days of the delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

9. DEFENCES AND LIMITS FOR THE CARRIER

The defences and limits of liability provided for in this Bill of Lading shall apply in any action against the Carrier for loss of or damage to the Goods whether the action be founded in contract or in tort.

10. SHIPPER-PACKED CONTAINERS

1. If a Container has not been stuffed by the Carrier, this Bill of Lading shall be a receipt only for the Container(s) and the Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense incurred by the Carrier if such injury, loss, damage, liability or expense has been caused by

a) the manner in which the Container has been filled, packed, stuffed or loaded, or

b) the unsuitability of the contents for carriage in Containers or

c) the unsuitability or defective condition of the Container which would have been apparent upon reasonable inspection by the Merchant at or prior to the time the Container was filled, packed, stuffed or loaded.

2. The Shipper shall inspect Containers before stuffing them and the use of the Containers shall be prima facie evidence of their being sound and suitable for use.

11. INSPECTION OF GOODS

The Carrier shall be entitled, but under no obligation, to open any Package or Container at any time and to inspect the contents. If it thereupon appears that the contents or any part thereof cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to such Package or Container or its contents or any part thereof, the Carrier may abandon the transportation thereof and/or take any measures and/or incur any reasonable additional expense to carry or to continue the carriage or to store the same ashore or afloat under cover or in the open, at any place, which storage shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any reasonable additional expense so incurred. The Carrier in exercising the liberties contained in this clause shall not be under any obligation to take any particular measures and the Carrier shall not be liable for any loss, damage or delay howsoever arising from any action or lack of action under this clause.

12. DESCRIPTION OF THE GOODS

1. This Bill of Lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition except as otherwise noted of the total number of Containers or other packages or units enumerated overleaf.

2. No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

13. SHIPPER'S RESPONSIBILITY

1. The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars and any other particulars furnished by or on behalf of the Shipper are correct.

2. The Shipper shall indemnify the Carrier against all loss, damage or expenses arising or resulting from inaccuracies or inadequacy of such particulars.

14. FREIGHT AND CHARGES

1. Full freight shall be payable at Carrier's option on gross weight, measurement or value as set forth in Carrier's tariff, based on shipper's particulars for the goods. Carrier shall have the right, but not the duty to open packages or containers and, if shipper's particulars are found to be erroneous, the shipper, consignee and the goods shall be liable for the correct freight charge and any expenses incurred in examining, weighing, measuring or valuing the goods.

2. Full freight to the port of discharge named on the face of this document and all advanced charges against the goods shall be considered completely earned on receipt of the goods or any part thereof by Carrier, even though the Vessel or other means of transport, or the goods, are damaged or lost, or the voyage is frustrated or abandoned.

3. All sums payable to Carrier are due on demand and shall be paid in full in United States currency or, at Carrier's option, in its equivalent in the currency of the port of loading or the port of discharge, or as specified in tariffs or [illegible] agreements.

4. The Shipper, consignee, receiver, holder and owner of the goods, and their principals shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, General Average and other charges due hereunder, without discount, together with any Court costs, expenses and reasonable attorney fees incurred in collecting any sums due Carrier. Payment of ocean freight and charges to a freight forwarder, broker or anyone other than [illegible] Line or its authorized agent, shall not be deemed payment to the Carrier and shall be made at payer's sole risk. [illegible]

15. LIEN

1. The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract and/or any other contract and for general average contributions to whomsoever due and for the cost of recovering the same, and for that purpose shall have the right to sell the Goods by public auction or private treaty without notice to the Merchant.

16. OPTIONAL STOWAGE, DECK CARGO AND LIVE STOCK

1. The Goods may be stowed by the Carrier in Containers or similar articles of transport used to consolidate Goods.

2. Goods whether containerized or not, may be carried on deck or under deck without notice to the Merchant unless on the face hereof it is specifically stipulated that the Containers or Goods will be carried under deck. If carried on deck the Carrier shall not be required to note, mark or stamp on the Bill of Lading any statement of such on-deck carriage. Such goods (other than live animals) whether carried on deck or under deck, shall participate in general average and shall be deemed to be within the definition of goods for the purposes of the "US Carriage of Goods by Sea Act 1936" (COGSA) or for the purposes of the Hague Rules or the Hague Visby Rules, whichever is applicable.

3. Goods other than Goods carried in Containers other than those [illegible] stated herein to be carried on deck and live animals, whether or not carried on deck, are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature arising during carriage by sea whether caused by unseaworthiness or negligence or any other cause whatsoever.

17. METHODS AND ROUTES OF TRANSPORTATION

1. The Carrier may at any time and without notice to the Merchant:

a) use any means of transport or storage whatsoever

b) transfer the Goods from one conveyance to another including transshipping or carrying the same on another vessel than the vessel named overleaf or on any other means of transport whatsoever and even though transshipment or forwarding of the Goods may not have been contemplated or provided for herein

c) sail without pilots, proceed via any route, proceed to, return to and stay at any port or place whatsoever (including the port of loading herein provided) once or more often in [illegible]

[illegible]

18. MATTERS AFFECTING PERFORMANCE

[illegible] responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full freight and charges on Goods received for transportation, and the Merchant shall pay any additional costs of carriage to and delivery and storage at such place or port.

19. PERISHABLE CARGO

1. Goods of a perishable nature shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for transportation any Goods which require refrigeration without giving written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the Goods by the Carrier. In case of refrigerated Containers packed by or on behalf of the Merchant, the Merchant undertakes that the Goods have been properly stowed in the Container and that the thermostatic controls have been adequately set by him before receipt of the Goods by the Carrier. The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo presented at a higher temperature than that required for the transportation. If the above requirements are not complied with the Carrier shall not be liable for any loss of or damage to the Goods howsoever arising.

2. The term "apparent good order and condition" when used in this Bill of Lading with reference to goods which require refrigeration does not mean that the goods, when received were verified by the Carrier as being at the designated carrying temperature.

20. DANGEROUS GOODS

1. The Merchant undertakes not to tender for transportation any Goods which are of a dangerous, inflammable, radioactive or damaging nature without previously giving written notice of their nature to the Carrier and marking the Goods and the Container or other covering on the outside as required by any laws or regulations which may be applicable during the carriage.

2. If the requirements of subclause 1 are not complied with the Merchant shall indemnify the Carrier against all loss, damage or expense arising out of the Goods being tendered for transportation or handled or carried by the Carrier.

3. Goods which are or at any time become dangerous, inflammable, radioactive or damaging may, at any time or place, be unloaded, destroyed or rendered harmless without compensation and if the Merchant has not given notice of their nature to the Carrier under 1 above, the Carrier shall be under no liability to make any general average contribution in respect of such goods.

21. REGULATIONS RELATING TO GOODS

The Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods, and indemnify the Carrier in respect thereof.

22. NOTIFICATION AND DELIVERY

1. Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

2. The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff.

3. If the Merchant fails to take delivery of the Goods or part of them in accordance with this Bill of Lading, the Carrier may without notice unstow the Goods or that part thereof and/or store the Goods or that part thereof ashore, afloat, in the open or under cover. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods or that part thereof shall cease.

4. The Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in the Carrier's applicable Tariff, which is incorporated in this Bill of Lading.

5. The Carrier may in his absolute discretion receive the Goods as Full Container Load and deliver them as less than Full Container Load and/or as break bulk cargo and/or deliver the Goods to more than one receiver. In such event the Carrier shall not be liable for any shortage, loss, damage or discrepancies of the Goods, which are found upon unstuffing of the Container.

6. If the Goods are not unstuffed during a reasonable time, or whenever in the Carrier's opinion the Goods will become deteriorated, decayed or worthless, the Carrier may, at his discretion and subject to his lien and without any responsibility attaching to him, sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant.

23. BOTH-TO-BLAME COLLISION CLAUSE

[illegible]

24. GENERAL AVERAGE

1. General average to be adjusted at any port or place at the Carrier's option, and to be settled according to the York-Antwerp Rules [illegible]

2. Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon, shall [illegible]

25. NEW JASON CLAUSE

1. In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Goods and the Merchant shall jointly and severally contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods.

2. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship belonged to strangers.

26. VARIATION OF THE CONTRACT ETC.

No servant or agent of the Carrier shall have power to waive or vary any terms of this Bill of Lading unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier.

27. LAW AND JURISDICTION

[illegible] the Carriage of Goods by Sea Act 1936 (COGSA) of the United States of America applies, whether by virtue of Clause 5.2 above or otherwise, this contract is to be governed by United States law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder, including any dispute relating to freight or other sums payable to the Carrier for carriage to or from the USA. In all other cases, this Bill of Lading is subject to [illegible] law and jurisdiction.

9/94

ENT BY:MAERSK C&C ; 8- 3-99 ; 7:22AM ; Maersk C&C→ 917188032801;# 1/ 2

A.P. MOLLER INC.

MAERSK INC.

MAERSK

# Telefax

To: Arween Sahni
Company: Neewra Inc.

Date: August 3, 1999
From: Ken Raichle

Credit & Collections
Giralda Farms, Madison, NJ
Phone: (973) 514-5213
Telefax: (973) 514-5315

RE: Bill of Lading – NYC688479

Pages (incl. Coverpage): 2

---

Finally received an answer from Kuwait after a second request. They confirmed that they released the delivery order for the goods against receipt of a bank check and presentation of the Original Bill of Lading. They provided a copy of the OBL surrendered at Kuwait, which I have attached for you convenience. It seems they did not deliver against a bank guarantee, but against the OBL. Hope this will help you in your collection effort. If you would like to contact our Kuwait office directly the number follows: 965-243-5767.

Sincerely,
Ken Raichle
MAERSK INC.

17/08 '99 12:09 ☎2437128 MAERSK KUWAIT 002

مؤسسة التماسك العربي للتجارة العامة والمقاولات

**AL-TAMASOK AL-ARABI EST.**

P.O. Box 384 Hawalli, 32004 KUWAIT Tel: 2451152-2409956 FAX: (00965) 2451152
E-mail: educate@ncc.moc.kw

MAERKS LINE,
KUWAIT

DEAR SIRS,

SUBJECT: BILL OF LADING NO. NYC 688479.

PLEASE FIND ENCLOSED HEREWITH THE ORIGINAL BILL OF LADING NO. NYC 688479 AND THE ORIGINAL DEPOSIT RECEIPT ( ISSUED BY YOU).

KINDLY RETURNED THE DEPOSIT CHEQUE FOR THE AMOUNT OF KD.10,000/- TO THE BEARER OF THIS LETTER, MR. VINCENT FERNANDES.

THANKING YOU FOR YOUR KIND CO OPERATION.

YOURS TRULY,

AL TAMASOK AL ARABI EST.

17/08 '99 12:10 ☎2437128 MAERSK KUWAIT 003

بنك الكويت الوطني
National Bank of Kuwait

025 - Hamra Branch

DD No. 007204

DATE 05 May 1999

PAY TO THE ORDER OF MAERSK KUWAIT CO.W.L.L............

THE SUM OF KUWAITI DINAR TEN THOUSAND ONLY

PAYABLE AT NATIONAL BANK OF KUWAIT

GUARANTEED PAYMENT ORDER

PAY TO FIRST BENEFICIARY ONLY

For NATIONAL BANK OF KUWAIT S.A.K.

AUTHORISED SIGNATURE(S)

By Order of SABRWAL SHANDEEP KUMAR

4 END



# MAERSK LINE

COMBINED TRANSPORT BILL OF LADING

B/L No. NYC688479

Booking No. 000523872

Export references: NJ2000915

~~TO: NAMERC~~ ~~FAX: 973-514-5315~~

ATT: KJR

Shipper/Exporter (Complete name and address):
NEEWRA INCORPROATED
4018 HAMPTON STREET
ELMHURST, NEW YORK 11373

Forwarding agent - references:
INTL SHIPPING CORP
169 FRELINGHUYSEN AVE
NEWARK NJ 07114

Consignee (Complete name and address):
AL TAMASOK AL ARABI EST
P.O. BOX 396 HAWALLI
KUWAIT 32004

Point and country of origin: U.S.A.

shipper memoranda not part of Bill of Lading

Notify Party (complete name and address):
SAME AS CONSIGNEE
TEL 2456687

M - BRUSHAMI 9911

1 JUL 1999

MR-BOGL

Pre-carriage by:

Place of Receipt:

Domestic routing/export instructions:

Vessel: DRAGOER MAERSK | Voy No. 9903 | Port of Loading: NEWARK

Place of Delivery:

Port of Discharge: KUWAIT

Dmc Abdulla

## CARRIER'S RECEIPT / PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE

| Container No./Seal No. Marks and Numbers | No. of Containers or pkgs. | Kind of Packages; description of goods | Gross Weight | Measurement |
|---|---|---|---|---|
| BENU2328560 93059 | 1 | CY / CY<br>SHIPPERS LOAD, STOW AND COUNT<br>FREIGHT PREPAID<br>20' CTNR SAID TO CONTAIN<br>20 CRATES<br>ELECTRICAL SPARE PARTS<br>COMM CODE: 9900-990000 | LBS 18300.000 | |

2407956

TEL 2451152

ORIGINAL

THESE COMMODITIES, THECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.

Freight & Charges:

86 05/5/99

Rcd NBK ~~Cls~~ P.D. No. 007204 Dtd 5/5/99 for KD 1020/-

MR. Vikant

36801 2302265

LADEN ON BOARD DRAGOER MAERSK 9903 AT NEWARK ON MAR 05 1999

Declared value charges (see clause 6) for Declared value of US$

Total Prepaid:

Total Collect:

Number of Original B(s)/L: 1/3

Place of Issue: NEW YORK

Date: MAR 05 99

[illegible]

MAERSK INC AS AGENTS FOR THE CARRIER

As Agent(s) only

*Applicable only when document used as a Combined Transport Bill of Lading

MAERSK LINE U.S. CUSTOMS CONTAINER BOND NO. 10[illegible]

M1000 6979/2000M/4-96/DR

17/06 '99 12:08 ☎2407128 MAERSK KUWAIT 001

# MAERSK LINE

COMBINED TRANSPORT BILL OF LADING

B/L No. NYC688479

Booking No. 000523672

Export references: NJ2000915

TO: NAMERA FAX: 973-514-5375

ATT: KJR

Forwarding agent – references: INTL SHIPPING CO. 169 FRELINGHUYSEN AVE NEWARK NJ 07114

Place and country of origin: U.S.A.

Shipper memoranda not part of Bill of Lading

Shipper/Exporter (Complete name and address): NEEWRA INCORPROATED 4018 HAMPTON STREET ELMHURST, NEW YORK 11374

ATTN MAX FROM: KWIMLA / EAP

Consignee (Complete name and address): AL TAMASOK AL ARABI EST P.O. BOX 396 HAWALLI KUWAIT 32004

Notify Party (complete name and address): SAME AS CONSIGNEE TEL 2456687

m. Brushtic 9911

MR Eng

Pre-carriage by:

Place of Receipt:

Vessel: DRAGOER MAERSK Voy No.: 9903 Port of Loading: NEWARK

Port of Discharge: KUWAIT

Place of Delivery:

## PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE

CARRIER'S RECEIPT

| Container No./Seal No. Marks and Numbers | No. of Containers or pkgs | Kind of Packages; description of goods | Gross Weight | Measurement |
|---|---|---|---|---|
| DENU2326560 93059 | 1 | CY / CY SHIPPERS LOAD, STOW AND COUNT FREIGHT PREPAID 20' CTNR SAID TO CONTAIN 20 CRATES ELECTRICAL SPARE PARTS CONS CASE: 8900 39500 | 2460 7956 TEL 2451152 LBS 00.000 | |

ORIGINAL

THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.

Freight & Charges

Rcd NCL P.P. No. 00 ... D.T. 5/5/99 for Kolo...

3680 / 232.65

LADEN ON BOARD DRAGGER MAERSK 9903 AT NEWARK ON MAR 05 1999

[illegible]

Declared value charges: 

Number of Original B(s)/L: 1/3

Total Prepaid:

Total Collect:

Place of issue: NEW YORK Date: MAR 05 99

MAERSK INC AS AGENTS FOR THE CARRIER

As Agent(s) only

MAERSK LINE U.S. CUSTOMS CONTAINER BOND NO.

RVD 702

1

"Serving You Into The Next Millennium!"

MICRO - SPY

2221 Avenue U
Brooklyn, NY

(718) 616-1111

www.micro-spy.com

• SALES • SERVICE • TECH SUPPORT

www.micro-spy.com

Peter

2221 Avenue U • Brooklyn, NY 11229

Tel: (718) 616-1111
Fax: (718) 368-9736





MICRO-SPY COMPUTERS
2221 AVENUE U
BROOKLYN NY 11229
718-616-1111

# INVOICE

Date:

Shop Online
WWW.MICRO-SPY.COM

Bill To:

| Invoice # | Customer ID | Salesperson | Invoice Date | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| Product ID | Product Name | Configuration | Quantity | Serial Number | Unit Price | Warranty | Price |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Payment Type:

Credit Card #:

Expiration Date:

| | |
|---|---|
| Subtotal: | #Error |
| Tax: | #Error |
| Total: | #Error |
| Deposit: | |
| Total: | #Error |

******************ABSOLUTLEY NO REFUNDS EXCHANGE ONLY WITHIN 7 DAYS.*****************

I have inspected the equipment and certify that it is all in working order.

Customer Signature: ______________________ Salesman Signature: ______________________

ICRO-SPY Computers

http://store.yahoo.com/microspy/

Adapters
Cables & Switch Boxes
Cameras
CD-ROMS, DVD, CDRW
Computer Cases
Office Furniture & Equipment
Computers & Palm Pilots
CPU
Hard Drives & Storage Devices
KeyBoards
Media
Modems
Monitors
MotherBoards
Mouse
Networking
Printers
RAM
Scanners
Sound Cards
Speakers
USB Devices
Video Cards
Appliances & Electronics

Show Order
Info
Help
Search
Index

& ELECTRONICS

Pixera Spy Cam
Regular price: $149.99
Blowout price: $119.99

MSPY 800 W/ 17" MONITOR DSL Ready
Regular price: $1,299.99
Blowout price: $1,149.99

Televisions

VCR

Video Cameras

NEC 15" 3V
Regular price: $124.99
Blowout price: $49.99

IBM G70 17" Monitor
Regular price: $209.99
Blowout price: $114.99

3Com® EtherLink® 10/100 Mbps 3C905-TX
Regular price: $59.99
Blowout price: $29.99

ELEGANT COMPUTER DESK
Regular price: $149.99
Blowout price: $89.98

MULTI-TASK COMPUTER CHAIR 6090
Regular price: $49.99
Blowout price: $24.99

Book PC Bare Bone System
Regular price: $299.99
Blowout price: $174.99

HP LaserJet 8000DN Printer
Regular price: $2,000.00
Blowout price: $1,299.99

Translucent ATX Case MAC like
Regular price: $59.99
Blowout price: $34.99

CR-A77 DIGITAL AM/FM DUAL ALARM CLOCK RADIO
Regular price: $29.99
Blowout price: $16.99

Exhibit K

Microspy Computers started out in 1994 as wholesale only computer reseller. But since the great success of the internet we decided to try our hands in retail. We here at Microspy Computers believe that we can offer you the best prices on new, used or floor model computer units and periphrals than any other internet site.

WWW.MICRO-SPY.COM
2221 AVENUE U
BROOKLYN, NY 11229
718-616-1111 718-368-9736
sales@micro-spy.com

PRICES ARE FOR INTERNET ORDERS ONLY, STORE PRICES MAY VARY

PLEASE NOTE THAT WHILE OUR PRODUCTS DO CONTAIN A CURRENT QTY COUNT AVAILABLE, THAT DOES NOT REPRESENT A LIVE INVENTORY COUNT, THE NUMBERS ARE UPDATED EVERY 3 DAYS. WE HOPE IN THE NEAR FUTURE TO HAVE A LIVE INVENTORY. ALL ITEMS THAT ARE OUT OF STOCK COULD TAKE UP TO 2 WEEKS TO SHIP.

