503-99/EEL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiffs
Maersk, Inc. and A.P. Moller-Maersk A/S
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Eric E. Lenck
Lawrence J. Kahn

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
MAERSK, INC. and A.P. MOLLER-MAERSK A/S,

                              Plaintiffs,          05 CIV 4356 (CM)

    -against-

NEEWRA, INC., REDNIHOM, INC., AREF HASSAN ABUL      **KAHN REPLY**
INC., ARWEEN SINGH SAHNI a/k/a ARWEEN SAHNI SINGH    **AFFIRMATION**
a/k/a ARWEEN SAHNI a/k/a ARWEEN SINGH a/k/a ABUL       **IN SUPPORT OF**
SABAH a/k/a AREF HASSAN ABUL, MOHINDER SINGH         **MOTION TO**
SAHNI a/k/a MOHINDER SAHNI SINGH a/k/a MOHINDER     **<u>STRIKE JURY</u>**
SAHNI a/k/a MOHINDER SINGH a/k/a MOHINDER SINGH
SAHANI a/k/a MOHINDER SAHANI a/k/a MOHINDER
SAHANI SINGH a/k/a JOGINDER SINGH SAHNI, JOGINDER
SINGH SAHNI a/k/a JOGINGER SINGH SAHNI a/k/a
JOGINDER SAHNI SINGH a/k/a JOGINGER SAHNI SINGH
a/k/a JOGINDER SINGH a/k/a JOGINDER SAHNI a/k/a
JOGINGER SINGH a/k/a JOGINGER SAHNI, SABHARWAL
CHANDRA KUMAR a/k/a SABHARWAL K. CHANDRA,
MANDEEP SINGH SAHNI a/k/a MOHINDER SINGH a/k/a
MOHINDER SAHNI a/k/a MOHINDER SINGH SAHNI a/k/a
MOHINDER SAHANI a/k/a MOHINDER SINGH SAHANI,
HELP LINE COLLECTION CO. W.L.L., PARKER DAWOOD
TAJUDDIN TAJUDIS ISMAIL PARKER, SARDAR TRADERS
EST., SARDAR INTERNATIONAL TRADING CO., AL
TAMASOK AL ARABI EST., JOHN DOE 1-100 (fictitious) and
JOHN DOE INC. 1-100 (fictitious),

                              Defendants.
-------------------------------------------------------------------------x

        LAWRENCE J. KAHN, an attorney at law, affirms under penalty of perjury as

follows:

1. I am an attorney admitted to practice before this Court and am a partner of the law firm of Freehill Hogan & Mahar, LLP, 80 Pine Street, New York, New York, attorneys for Plaintiffs Maersk, Inc. and A.P. Moller-Maersk A/S (collectively, "Maersk"). I am not a party to the action and am over 18 years of age. I submit this Reply Affirmation in further support of Maersk's motion to strike the jury.

2. Annexed hereto is a true and accurate copy of the decision, *Ocean Ship Supply, Ltd. v. M/V LEAH*, 1982 A.M.C. 2740 (D.S.C. Apr. 14, 1982).

Dated: New York, New York
      April 29, 2009

                                        Lawrence J. Kahn

LexisNexis® Total Research System

Switch Client | Preferences | Sign Out | ? Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Sele

FOCUS™ Terms [        ]   Search Within [Original Results (1 - 1)] [Go] Advanced...

Service: **Get by LEXSEE®**
Citation: **1982 amc 2740**

*Copyright © 1982 American Maritime Cases, Inc.*

Copyright © 1982 American Maritime Cases, Inc.

OCEAN SHIP SUPPLY, LTD., Plaintiff-Libelant v. MV LEAH, HER ENGINES, ETC., Defendant-Respondent AND LEON FINANCE COMPANY, S.A., Claimant.

Civil No. 80-2188

UNITED STATES DISTRICT COURT, DISTRICT OF SOUTH CAROLINA (CHARLESTON DIVISION)

1982 AMC 2740

September 22, 1981; April 14, 1982

**HEADNOTES:**
MARITIME LIENS - 112. What Law Governs - 30. Foreign Lien Laws - 31. Enforcement of Liens.

Whether a Quebec supplyman has an *in rem* maritime lien enforceable in a U.S. court is governed by Canadian law. *Held:* A supplier of necessaries to a vessel in Canada does not have a maritime lien which can be enforced by arrest of the vessel whose ownership was changed after the necessaries were supplied.

DAMAGES - Wrongful Arrest - PRACTICE - 17. Suit Prematurely or Wrongfully Brought - 1942. Arrest of Property.

Vessel was wrongfully arrested at U.S. port by Canadian supplyman which not only should have known that it had no *in rem* lien under Canadian law but also unreasonably refused to accept security for its claim. *Held:* Supplyman is liable for (1) shipowner's operating expenses during eight day period when the arrest caused vessel to miss her scheduled drydocking date, (2) cost of cash release bond posted by shipowner, and (3) shipowner's attorney's fees.

DAMAGES - Foreseeability of Charter Arrangements.

Even though vessel's wrongful arrest resulted in cancellation of future voyage charter, arresting party is not liable for shipowner's lost profits since this item of damages was not reasonably foreseeable.

**COUNSEL:**
Grimball, Cabaniss, Vaughan & Robinson (William H Vaughan, Jr.) for Plaintiff.

Buist, Moore, Smythe & McGee (Gordon D. Schreck) for Defendant and Claimant.

**OPINIONBY:** HAWKINS

**OPINION:**
FALCON B. HAWKINS, D.J.:

This admiralty case came on for hearing before me on June 22, 1981, on motion of Leon Finance Company, S.A. (hereinafter referred to as "Leon"), claimant-owner of the Motor Vessel Leah, for summary judgment as to the amended complaint of the plaintiff, Ocean Ship Supply, Ltd. (hereinafter referred to as "Ocean Ship"). For the reasons stated hereinbelow, the Court is of the opinion that Leon's motion must be granted.

*Background of Litigation*

This is an admiralty action instituted by Ocean Ship against the Leah for the foreclosure of an alleged maritime lien for supplies and necessaries furnished to the vessel in January of 1980 in Quebec, Canada. The action was commenced on November 14, 1980 by the filing of a summons, warrant for arrest, and verified complaint. On that same date, the United States Marshal executed the *in rem* process by arresting the Leah and taking her into the custody of this Court. Leon thereafter made claim to the vessel, as owner, and moved for the vessel's release upon the posting of security in the form of a stipulation for value and cash bond in the amount of eighteen thousand seven hundred ninety-two and 48/100 dollars ($18,792.48). Upon such security being posted, this Court did issue its order, dated September 15, 1980, releasing the Leah from arrest and from the custody of the court.

Subsequently, on Noember 17, 1980, Ocean Ship filed its amended complaint and libel *in rem,* also verified, to which Leon, as claimant-owner, responded with its answer and counterclaim, alleging that Ocean Ship's arrest of the Leah was wrongful and without legal justification, and that Leon should therefore be compensated for any resulting damages.

Leon now moves, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, for a summary judgment in its favor as to Ocean Ship's amended complaint and the claim asserted therein. Leon's motion was supported by the affidavits of Bob Fearon, Jr., President of Fernave Corporation, a Florida shipbroker and the managing operator of the Leah; Benny Tenenbaum, President of Leon; and Gordon D. Schreck, Esq., counsel of record for Leon. Ocean Ship's opposition to the motion was supported by the affidavits of William N. France, Esq., a New York attorney for Ocean Ship; and the affidavit of E. Caravanos, Executive Vice-President of Atlantic Steamers Supply Company, Inc., said to be a Canadian affiliate of Ocean Ship. Additionally, counsel for both parties have submitted legal opinions on certain questions of Canadian law, prepared by respected Canadian admiralty counsel, and the court has carefully considered these opinions, pursuant to Rule 44.1 of the Federal Rules of Civil Procedure. The court has also had the benefit of briefs as well as able argument of counsel for both sides in arriving at its decision.

*Statement of Facts*

Certain of the facts pertinent to Leon's motion for summary judgment are undisputed. According to Ocean Ship's own verified amended complaint, it is a Canadian corporation engaged in the ship chandlering business and in the furtherance of this business, it did, on or about January 20, 1980, at the Port of Quebec, Canada, contract with the "owners and operators of the vessel (defendant-respondent M/V Leah, then known as the Caribbean Klif)", to provide certain food, ship's stores and incidentals to that vessel. The invoices attached to the amended complaint clearly reflect that these supplies were delivered to the vessel on or about January 20, 1980 at the Port of Quebec. The invoices further reflect that the goods were sold and billed to "M/V Caribbean Klif c/o Pilot Shipping Co., Inc., of Athens, Greece." According to the affidavit of William N. France, Esq., one of the attorneys for Ocean Ship, and the attachments thereto, at the time the supplies were furnished to the vessel, then known as the Caribbean Klif, she was owned by Lepsa Compania Naviera y Financiera S.A. of Panama (hereinafter referred to as "Lepsa"), whose managing agent is Piraeus,

Greece was Pilot Shipping Co.

According to the affidavits and exhibits submitted by Leon in support of its motion for summary judgment, the following additional facts now appear to be undisputed. On or about August 1, 1980, Lepsa, the former owner of the vessel *Leah,* entered into a memorandum agreement with Leon for the sale of the vessel for the sum of four hundred seventy-five thousand dollars ($475,000) with the closing and delivery of the vessel to be effected no later than August 8, 1980. This sale was consummated in Piraeus on or about August 6 by delivery of a bill of sale of that date to Leon. The vessel was delivered to Leon by Lepsa on August 7, 1980 and on August 9, 1980, the Greek Ministry of Mercantile Marine issued its certificate certifying that the *Caribbean Klif* had been deleted from the Greek Registry of Ships by reason of her sale to Leon.

An August 14, 1980, Leon was issued a provisional registration and radio license for the *Leah,* permitting the vessel to be operated under the Honduran flag, and on that date, her new name was inscribed on the vessel's hull and she immediately commenced operating in commercial ocean trade as the *Leah,* under ownership by Leon.

At the time of the *Leah's* sale to Leon by Lepsa, Lepsa warranted to Leon that the vessel was "free from all encumbrances and maritime liens" and Leon maintains that it had no knowledge at the time of its purchase of the vessel of the claim of Ocean Ship, nor of any other outstanding debts incurred by the vessel's former Owners. At oral argument on Leon's motion, counsel for Ocean Ship implied that the change in the vessel's ownership and name in August of 1980 might be a sham, designed to escape creditors, but Ocean Ship presented no factual support for this suggestion. Moreover, the affidavit of Benny Tenenbaum, President and Director of Leon, reflects that neither he nor any of the other principals and stockholders of Leon have even had any interest or position with Lepsa, the former owner. In addition, the minutes of the meeting of the Board of Directors of Lepsa, held on August 4, 1980, indicate that all of the officers and directors of Lepsa were Greeks who had no interest in Leon. The Court has therefore concluded that there is no genuine issue as to the uestion of ownership of the vessel at the time this action was instituted, it being clear that the legal and beneficial ownership of the vessel changed on or about August 6, 1980, by virtue of her *bona fide* purchase by Leon, without notice of the claim of Ocean Ship.

*Legal Analysis*

The crux of Leon's motion, and the basis for this court's granting of summary judgment in Leon's favor, is that at the time Ocean Ship instituted its action against the *Leah,* it had no maritime lien to support its action *n rem* against the *Leah.*

Rule C of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure provides that "an action *in rem* may be brought to enforce any maritime lien. . . ." Ocean Suip, recognizing that Leon, the present owner of the vessel, had not incurred and therefore was not personally liable for the supplpies furnished to the vessel in January of 1980, sought to enforce its claim by an *in rem* action against the vessel, alleging that it had a maritime lien by virtue of the supplpies furnished to the vessel. Had those supplies been furnished in Charleston or some other American port, there is no doubt that Ocean Ship would have had a maritime lien enforceable against the vessel in a United States Court pursuant to U.S. statutory and case law.

However, such is not the case here. Ocean Ship acknowledges in its own complaint that the contract for the furnishing of the supplies to the vessel was entered into in Canada and that the contract was performed in Canada by delivering the supplies to the vessel at the Port of Quebec. As such, it is the opinion of this court that the conflict of laws principle of *Lex loci contractus* is controlling, and accordingly the law of Canada is controlling with respect to the question of whether Ocean Ship had an enforceable maritime lien against the *Leah* at the time this action was commenced. See, e.g., *Cuba R. Co. v. Crosby,* 222 U.S. 473; *The City of Atlanta,* 1924 AMC 1305, 17 F.2d 308.

In determining whether Ocean Ship had an enforceable maritime lien against the *Leah* under

Canadian law, this court has carefully considered the opinions of learned Canadian admiralty counsel submitted on behalf of both parties, including copies of pertinent Canadian reported case decisions, statutes and treatises. Based upon the Court's review of these opinions and documents, it appears that under Canadian law, a supplier of necessaries to a vessel in Canada does not have a maritime lien enforceable by the arrest of a vessel which has changed beneficial ownership since the necessaries were supplied. See, e.g., Todd Shipyards v. Altema, 1973 AMC 176, 1974 S.C.R. 1248 (Supreme Court of Canada 1972).

*Conclusion and Judgment*

Based upon the material facts as set forth above, as to which the Court believes there is no material issue in dispute, and applying the applicable law, the court must reach the inescapable conclusion that at the time the present action was commenced against the Leah and the vessel arrested, the plaintiff did not have a maritime lien upon that vessel, inasmuch as the legal and beneficial ownership of the vessel had changed hands some three (3) months earlier. Having no maritime lien against the vessel, Ocean Ship had no enforceable *in rem* action against the vessel and therefore no right to have the vessel arrested. It is, therefore,

Ordered that claimant's motion for summary judgment as to plaintiff's amended complaint be and the same is hereby granted and it is further ordered that claimant's stipulation for value and cash bond heretofore posted as security to obtain the release of the Leah he and the same is hereby cancelled and the clerk of court directed to forthwith refund to counsel for claimant the cash bond previously posted with this Court; and, it is

Further ordered that claimant's counterclaim previously filed against the plaintiff be retained on the non-jury calendar of this court to await further adjudication in due course.

FALCON B. HAWKINS, D.J. (April 14, 1982):

This admiralty action was originally instituted by the plaintiff, Ocean Ship Supply, Ltd. (hereinafter referred to as "Ocean Ship") by the filing of a complaint and libel *in rem* against the Motor Vessel Leah, praying that said vessel be arrested, condemned and sold to satisfy Ocean Ship's claim of a maritime lien for certain supplies alleged to have been furnished to the vessel at the Port of Quebec, Canada, on or about January 20, 1980.

Upon the filing of Ocean Ship's verified complaint, the Clerk issued process, pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, directing the United States Marshal for this district to arrest the MV Leah and to detain her in his custody pending the further order of the court respecting same. Pursuant to that process, the U.S. Marshal arrested the Leah on November 14, 1980. Subsequently, on November 15, 1980, the claimant herein, Leon Finance Company, S.A. (hereinafter referred to as "Leon") through its agents, Fernave Corporation (hereinafter referred to as "Fernave"), appeared specially, making claim to the vessel as owner, and upon the posting of security in the form of a cash bond, obtained the order of this court directing that the Leah be released from arrest and from the custody of the court.

Subsequently, on November 17, 1980, Ocean Ship filed a verified amended complaint and libel *in rem*, which was virtually identical in all pertinent respects to the original complaint. To this amended complaint, Leon, as claimant-owner of the Leah, responded with an answer and counterclaim, denying that Ocean Ship had a valid and enforceable lien upon the Leah or that Leon, as the vessel's owner, had any responsibility to Ocean Ship for the claim in question, and further alleging that Ocean Ship's arrest of the Leah under the circumstances was wrongful and without legal justification, entitling Leon to damages caused from the vessel's arrest and delay.

Thereafter, Leon filed a motion for summary judgment upon the ground that the evidence established, as a matter of law, that at the time of Ocean Ship's arrest of the Leah it did not have a

valid maritime lien against the vessel under the applicable Canadian law and that without such lien, there was no cause of action *in rem* against the vessel to support an arrest. After carefully considering evidence and briefs presented in connection with that motion, this court, by its order dated September 22, 1981, 1982 AMC 2740, granted summary judgment to Leon, holding that Ocean Ship did not have a maritime lien upon the *Leah* at the time of the vessel's arrest at Charleston and, therefore, no enforceable *in rem* action against the vessel. This court retained jurisdiction over Leon's counterclaim for wrongful arrest and that claim came on for trial before the court, without a jury, on March 31, 1982.

The court, having now duly considered the testimony, the evidence in the record, and the arguments of counsel, herewith makes its findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

*Findings of Fact*

1. Leon Finance Company, S.A., is a Panamanian corporation and was, on November 14, 1980, and at all subsequent times, the bona fide owners of the Motor Vessel *Leah*.

2. The Motor Vessel *Leah* is a general cargo ship, of Honduran Registry, built in 1964 and having the following particulars: overall length -- 109 meters; beam -- 15.85 meters; depth -- 6.57 meters; gross tonnage -- 3,885 tons; net tonnage -- 2,187 tons; deadweight tonnage -- 5,770 tons. She was, at all pertinent times herein, engaged as a general cargo ship in the carriage of general merchandise by water for hire.

3. At all pertinent times herein, Fernave Corporation was and is a Florida corporation engaged in the business of ship brokerage, ship management and chartering, and was at all times mentioned the managing operator of the M/V *Leah*.

4. At all times hereinafter mentioned, Ocean Ship Supply, Ltd., was and is a corporation duly organized and existing under the laws of Canada, with an office and place of business in Montreal, Canada, and was and is engaged in the business of ship supplies and ship chandlering.

5. On November 13, 1980, and prior to the arrest of the *Leah* by Ocean Ship, counsel for Leon and Fernave advised Ocean Ship, by way of a telex to its U.S. affiliate, Atlantic Steamers Supply Co., that Leon and Fernave, as owner and operator of the vessel, had no knowledge of Ocean Ship's asserted lien and that the vessel was, in fact, owned and being operated by a former owner at the time the supplies in question were ordered and furnished to the vessel. n1 It is apparent from the face of Ocean Ship's original and amended complaint that, in fact, the supplies in question were ordered by the vessel's former owners and operators and not by the vessel's present owners. The conclusion is, therefore, inescapable, and I find as a fact that at the time Ocean Ship caused its complaint to be filed in this court on November 14, 1980, prompting the arrest of the *Leah*, Ocean Ship had actual knowledge that her owner and operator (Leon and Fernave) were not the same owner and operator who had ordered supplies for the vessel from Ocean Ship in January of 1980 in Canada. If further find, from the greater weight of the evidence, that Ocean Ship knew, or by the exercise of reasonable care should have known, that Leon and Fernave had no legal obligation to Ocean Ship on this claim.

---

n1 Though not necessary to a decision on the issues now under consideration, the court notes for clarification that the evidence adduced in connection with Leon's motion for summary judgment established that in January of 1980, when Ocean Ship claims to have furnished supplies to the *Leah*, then known as the *Caribbean Klif*, at Quebec, this vessel was owned by Lepsa Compania Naviera y Financiera S.A. of Panama ("Lepsa"), whose managing agent in Greece was Pilot Shipping Co. ("Pilot"). It was Pilot which ordered the supplies from Ocean Ship, as evidenced by the fact that the bills were addressed to the *Caribbean Klif* c/o Pilot Shipping Co., Inc., Athens Greece." In August of

1981 Lepsa sold the vessel to Leon and she was immediately renamed *Leah*, and from August 14, 1980, she has been operated by Fernave for Leon's account.

6. Upon learning of Ocean Ship's claim and threatened arrest of the *Leah* on November 13, 1980, and prior to Ocean Ship's filing of a complaint and the arrest of the *Leah,* Leon and Fernave, through counsel, requested by telex to Ocean Ship's U.S. affiliate that Ocean Ship refrain from arresting the *Leah* at Charleston and that Leon and Fernave be given an opportunity to contact the vessel's former owners in order to have the former owner respond directly to Ocean Ship's claim. After being advised by counsel for Ocean Ship that they were not prepared to withhold issuance of arrest process against the *Leah* in order to give Leon and Fernave an opportunity to communicate with the vessel's former owners, counsel for Leon and Fernave did, on Friday, November 14, 1980, prior to the vessel's arrest, offer to post security against Ocean Ship's claim in the form of a Leon check drawn on a Miami bank in the full amount of the claim, in consideration of Ocean Ship's agreement to refrain from having the *Leah* arrested. Fernave offered to have Leon's bank in Miami give verbal assurances to Ocean Ship that the account on which the check was drawn had sufficient funds to cover same, but this offer was rejected.

7. The *Leah* was originally scheduled to depart Charleston for Mobile at 1500 hours on Friday, November 14, 1980, and would have sailed on schedule but for her arrest by the U.S. Marshal that afternoon.

8. The owner and operator of the *Leah* had arranged with Bender Shipbuilding & Repair Co., Inc. (hereinafter referred to as Bender) of Mobile, Alabama, to have the vessel enter dry-dock there for repairs on November 20, 1980. I find that, had the *Leah* sailed when scheduled on November 14, 1980, she would have reached Bender's dry-dock in Mobile in time to make her dry-dock appointment on November 20; but that as a result of her arrest and delayed sailing, she did not arrive at Bender's until November 22, 1980.

9. As a result of the *Leah's* late arrival at Bender's yard in Mobile, Bender dry-docked another vessel, resulting in the *Leah's* dry-docking being delayed until November 28, 1980. Repairs were not completed until December 17, 1980.

10. Prior to the *Leah's* arrest at Charleston, Leon had agreed with Fertisa, an Ecuadorian national fertilizer concern, to charter the vessel for a voyage from Houston to Guayaquil, Equador.

11. On November 14, 1980, and prior to the vessel's arrest, Leon's counsel advised Ocean Ship's counsel that the *Leah* was scheduled to depart Charleston that afternoon for Mobile, Alabama, where she was scheduled to go into dry-dock for repairs, and that the vessel's arrest could endanger the ship's dry-dock appointment.

12. Ocean Ship refused to consider the request of Leon and Fernave to refrain from arresting the *Leah,* and also rejected Fernave's offer of security in the form of a check in the full claim amount. Instead, Ocean Ship proceeded to have arrest process issued and delivered to the U.S. Marshal, who promptly effected the arrest of the *Leah* on Friday afternoon, November 14, 1980.

*Conclusions of Law*

1. This court has jurisdiction of the parties and the matters herein by virtue of Title 28, United States Code Section 1333(1) and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Admiralty has historically recognized a cause of action for wrongful seizure of a vessel, for which damages may be recovered. See, e.g., <u>Techem Chemical Co., Ltd. v. MT Choyo Maru, 1976 AMC 1954, 416 F.Supp. 960 (D. Md. 1976)</u>; <u>TTT Stevedores of Tex., Inc. v. M/V Jagat Vijeta, 1981 AMC 2446, 509 F.Supp. 1072 (E.D. Tex. 1981).</u>

3. "A maritime lien is an essential predicate for the arrest of a vessel in a private *in rem* action."

*Amstar Corp. v. M/S Alexandros T,* 1981 AMC 2697, 664 F.2d 904, 908 (4 Cir. 1981). At the time Ocean Ship caused to have the *Leah* arrested, it had no maritime lien on the vessel cognizable under American maritime law and, therefore, no right to have the vessel arrested. I therefore conclude, as a matter of law, that Ocean Ship's arrest of the *Leah* on November 14, 1980, when it had no lien to support such arrest, was wrongful. By effecting such arrest, notwithstanding its knowledge that the *Leah's* owner was not responsible for the claim being asserted, that a reasonable and good faith offer for security on the claim had been made, and that Ocean Ship had a subsequent opportunity to effect the vessel's arrest at a later date in Mobile after further investigating whether its claim against the vessel was enforceable, Ocean Ship wrongfully arrested the vessel, entitling Leon to damages. n2

n2 In arriving at its conclusion, the court has taken careful note of the developing case law on the issue of the constitutionality of Supplemental Admiralty Rules C and E concerning *in rem* seizure of a vessel without a preliminary or "pre-seizure" hearing. The Fourth Circuit has recently upheld the constitutionality of these Admiralty Rules, distinguishing the historic admiralty process from the ordinary civil claim and delivery case. See, *Amstar Corp. v. M/S Alexandros T,* 1981 AMC 2697, 664 F.2d 204 (4 Cir. 1981). However, with this rather unique and awesome *ex parte* power to cause the arrest of a substantial asset without prior judicial review, there also comes a corresponding responsibility to insure one's right to assert the power. Any misuse or abuse of the power of the court's arrest process cannot be tolerated.

4. Demurage, being defined as loss of profits from loss of the use of a vessel, traditionally has been an item of damage in maritime tort law. Such damages are allowed when the profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty. *Compania Pelineon de Navegacion v. Texas Pet. Co.,* 1976 AMC 1245, 1248, 540 F.2d 53, 55 (2 Cir. 1976).

*Damages*

1. As a result of the wrongful arrest of the *Leah* on November 14, 1980, her scheduled departure that day was delayed and she remained in the custody of the court until her release by the U.S. Marshal on Saturday afternoon, November 15, 1980. As a result of her arrest, she did not sail until 1805 hours on Saturday, November 15, 1980. If find that as a direct and proximate result of this delayed sailing, attributed to the vessel's arrest, Leon incurred additional wharfage of Three Hundred ($300) Dollars and additional vessel operating expenses of One Thousand Three Hundred ($1,300) Dollars. These damages were foreseeable and, therefore, properly recoverable.

2. Because the *Leah* did not sail for Mobile until the evening of November 15, some twenty-seven hours later than planned, she did not arrive in Mobile until the afternoon of November 22, 1980, and as a consequence, she missed her scheduled dry-docking appointment at Bender's on November 20, 1980. Instead, Bender took another ship ahead of the *leah,* and it was not until November 30, 1980, that the *Leah* was able to enter Bender's dry-dock and commence repair work; which work was not completed until December 17, 1980.

As a result of missing her original dry-dock appointment date, the *Leah* sat idle in Mobile from November 22 until November 30, 1980, awaiting her next available dry-dock date. During this time, Leon incurred daily operating expenses of One Thousand Three Hundred ($1,300) Dollars, for a total of Ten Thousand Four Hundred ($10,400) Dollars. These additional expenses would not have been necessary had the *Leah* been able to keep her November 20 dry-dock date, and Leon should, therefore, be compensated for same.

3. Leon had previously entered into a charter with Fertisa, an Ecuadorian national fertilizer concern,

for a voyage from Houston to Guayaquil carrying a full cargo of 5,000 metric tons of urea at $36.00 per metric ton. As a result of the delay in dry-docking and effecting the necessary repairs, the deadline for commencing the charter with Fertisa could not be performed and Fertisa cancelled the charter on December 17, 1980. Although Leon introduced evidence at the trial as to the net loss of profits in charter hire as a result of the cancellation of the charter, I find that the lost profits for charter hire were not reasonably foreseeable to Ocean Ship as a direct and proximate result of their wrongful arrest of the *Leah* and that such lost revenue is, therefore, not a recoverable item of damage.

4. As a result of the *Leah's* arrest, and in order to obtain her release, Leon was required to post security with the court in the form of a cash bond in the amount of Eighteen Thousand Seven Hundred Ninety-Two and 48/100ths ($18,792.48) Dollars. This cash bond remained in the registry of the court from November 17, 1980, until its return to Leon on September 24, 1981, a total of some forty-five weeks, during which time Leon was without the use of its money. The cost to Leon of Borrowing this money during the period in question would have been seventeen (17%) percent per annum, and they are, therefore, entitled, as an item of damage, to recover the expense of the cash security computed at seventeen (17%) percent per annum for forty-five weeks, or Two Thousand Seven Hundred Sixty-Four and 80/100ths ($2,764.80) Dollars. See *TTT Stevedores of Tex., Inc. v. M/V Jagat Vijeta,* 1981 AMC 2446, 509 F.Supp. 1079.

5. I find that Leon is entitled to an award of attorney's fees in this case. See, The *Appollon,* 22 U.S. 159, 166 (1824); *Gore v. Maritime Overseas Co.,* 256 F.Supp. 104, 126, 1967 AMC 1401 (sy.) (ED Pa. 1966). I further find that Leon is entitled to an attorney's fee award of Five Thousand ($5,000.00) Dollars.

Service: **Get by LEXSEE®**
Citation: **1982 amc 2740**
View: Full
Date/Time: Wednesday, April 29, 2009 - 3:32 PM EDT

* Signal Legend:
- 🔴 - Warning: Negative treatment is indicated
- [Q] - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- 🅐 - Citing Refs. With Analysis Available
- 🅘 - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.