

HARRY H. WISE, III
ATTORNEY AND COUNSELOR AT LAW
250 WEST 57TH STREET, SUITE 1316
NEW YORK, NEW YORK 10107
TEL: (212) 810-2430
FAX: (212) 810-2427
E-MAIL: HWISELAW@AOL.COM

**MEMO ENDORSED**

December 21, 2009

*Handwritten annotation:* 12/22/09 (1) This is not a motion to reargue so I will not reargue anything. (2) If there were a motion to reargue I would not reargue anything in this letter.

Via Fax: (212) 805-6326

Hon. Colleen McMahon
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 640
New York, N.Y. 10007

*Stamp: DEC 21 [2009] CHAMBERS OF COLLEEN McMAHON*

Re: Maersk, Inc. et ano. v. Neewra, Inc. et al., 05-Civ-4356 (CM)

Dear Judge McMahon:

As I am sure the Court is aware, I represent the three remaining defendants in this case, Joginder Singh Sahni, Dawood Tajuddin Parkar, and Help Line Collection Company. I write this letter to raise, briefly, some issues with the Court's recent Decision and Order.

On behalf of my clients, I thank the Court for its extraordinary attention to this complex matter, and its thorough and painstaking examination of the proof and the law, but I would submit that there are some issues that should be addressed.

First, I apologize if the Court found improper in some way my reply submission in support of my motion for summary judgment, but I am unable to understand the reason for that sentiment. As I stated in my reply declaration, the submission was made in response to the statements in plaintiffs' answering memorandum of law, unsupported by any evidence, that my clients had "produced [only] a few non-critical documents..." and that they had "refused to meaningfully participate in discovery." (Reply Declaration of Harry H. Wise, III, ¶ 2). Since I knew those statements to be false, I submitted copies of the discovery my clients had produced in compliance with the rule on initial discovery, Rule 26(a)(1)(A) FRCP, in, I believe, full compliance with that rule, and the additional documentation produced later in response to specific demands, and noted that the magistrate had supported me in my objections to several of plaintiffs' overbroad

<u>Hon. Colleen McMahon, December 21, 2009, Page Two</u>

demands for additional documents. (*Id.*, ¶ 8). In thus opposing falsehood with truth, I believe I acted appropriately. The fact that the Court has now adopted plaintiffs' position as a factual finding, I find, obviously, disappointing, and, given the nature of the documents produced, and the objections successfully made, unwarranted.

Secondly, the Court finds as a fact that Joginder Singh Sahni "owned or operated Help Line" despite his denial. (Decision and Order, p. 23). In their Rule 56.1 Statement, plaintiffs referenced, improperly, only the entire declaration of Mr. Ghirardani for that fact. (Plaintiffs' Rule 56.1 Statement, ¶ 8). In its decision, however, the Court relies on other evidence, including the fact that Mohinder and Mandeep Sahni both swore that Joginder was the owner of Help Line. That assertion is uncited, and I confess to having been unaware of that fact, which I suspect occurred before I entered the case. While this is additional evidence of the Court's thorough search of the record, such a search also reveals this testimony, from an excerpt of Mr. Pinto's deposition that I submitted:

> Q. In general, is the ownership of companies in Kuwait a secret thing?
>
> A. No.
>
> Q. Is the ownership of companies in Kuwait available to the public?
>
> A. Well, yes, you can go down to the Government Department and give them the name of the company and pay the fees, and they will give you a computer printout of who the shareholders are.

(Pinto Dep., p. 73, lines 16-26; Wise Declaration in support of defendants' motion for summary judgment, Ex. D). Therefore, whether Mr. Sahni is or is not the, or an, owner of Help Line (or of Sardar Traders, Blue Bird, or any other company) is simply not a fair subject for dispute, and he is not. If plaintiffs believe he has some other relationship to that company that renders him liable for its activities, they have not presented evidence of it on these motions.

Similarly, the Court finds that Mr. Parkar was the "Mr. Parker" who came to the Maersk offices, even though Mr. Pinto was "unable to identify Parkar in a photo shown to him at his deposition." (*Id.*, p. 31 and n.6). There is a bit more to it than that, however, because plaintiffs' employees took a photograph of the "Mr. Parker" who came to their office (Pinto Dep., pp. 83-86 and Ex. F), and that person is not Mr. Parkar. Thus the Court is correct in concluding that there is no genuine issue as to this alleged fact, but that is because it is demonstrably false.

With respect to the liability of Joginder for the Neewra fraud, the Court relies on the fact that a Mr. "Singh" made a bribe attempt at Blue Bird's offices, and on the facts of the fateful meeting at the coffee shop that Joginder states he attended. With respect to the former (assuming, as the Court apparently does, that a criminal offering a bribe would give the offeree his correct name, before knowing whether the person would agree to accept the bribe or would instead go, for example, to the police), it should be noted that the name "Singh," either as a middle or last name, is shared by every male member of the Sikh religion, and is used as well by several other Indian groups. ("Singh is used as a middle name or as a surname ... by approximately 20 million adherents of Sikhism." Wikipedia: "Singh", p. 2 of 4). As for Joginder's attendance at the meeting as evidence that he was a member of a conspiracy, the Court dismisses my argument that his attendance at that meeting is no proof of anything because, on plaintiffs' evidence, the person who came to that meeting had initially said that he knew nothing about the claim and was not interested in meeting with Maersk, but was persuaded to attend the meeting by the Maersk intermediary. (Ghirardani Dec. ¶ 126). Could not a person so approached have boned up on the situation before the meeting? Called his son? Called the lawyers representing Neewra?

With respect to the meeting itself, however, there is nothing in the evidence to show that the person who attended it was a knowing participant in a fraud. Mr. Kanal was questioned about the meeting at his deposition and recalled that Mr. Ghirardani spoke first at the meeting, describing the situation. (Kanal Dep. pp. 95-96). Thus any response could have been based on the facts set out by Mr. Ghirardani, and not on prior knowledge. Mr. Sahni's response, according to Mr. Kanal, was: the case has been won, pay the judgment. (*Id.*, p. 96). Of his relationship to the lawsuit, the man, according to Mr. Kanal, "suggested that he knew them, he knew the parties involved, and he gave us the impression that he represented them." (*Id.*, p. 98). Is it really this Court's view that that testimony would be sufficient to sustain a jury finding of *scienter* as to Mr. Sahni under the "clear and convincing evidence" standard applicable to fraud claims in New York, Prince, Richardson on Evidence, § 3-205 (11th Ed., 1995), a standard not mentioned in the Court's discussion of New York law? (Decision and Order, p. 26).

Finally, with respect to the issue of whether it was Joginder or Mohinder Sahni who attended the meeting, there is simply no reason for controversy: we can ask Mr. Kapoor. Vijay Kapoor, who set up the meeting, is a "senior member" of the "management team" of the Bebehani Group, Maersk's sponsor and partner in its Kuwait operation. (Kanal Dep. p. 87). He knows whom he invited to the meeting (and what he said to convince the man to come to the meeting), and he knows who attended the meeting. Thus, he is a witness easily available to plaintiffs who would be expected to assist them in the case, and who could easily tell us who was at the meeting.

Plaintiffs have not produced this easily available evidence, because they want to foster the idea that there is some mystery about who was there. Astonishingly, to me,

Hon. Colleen McMahon, December 21, 2009, Page Four

when I asked Maersk's lawyers whether they had ever picked up a telephone and called Mr. Kapoor to obtain his recollection of the meeting (It is not hard to call Kuwait, you just have to do it early in the morning), they said they had not. Is that not remarkable, given the dramatic story of deception described by Mr. Ghirardani? Would not their failure to produce Mr. Kapoor subject them to a "missing witness" instruction at any trial? (*See* Richardson, *supra*, § 3-140).

During the litigation of this case, I offered to have Joginder meet, at the offices of Maersk's Kuwait lawyers, with Mr. Ghirardani, Mr. Kanal, or both of them, so that they could determine whether he was, or was not, the man they had met at the coffee shop. This offer was rejected by Maersk's American lawyers. Similarly, I offered to have Joginder meet with Mr. Pinto, so that Mr. Pinto could decide whether Mr. Sahni was the man who attempted to bribe him. This offer was rejected by Maersk's lawyers as well.

Maersk is not interested in the truth, it is interested in contrived mystery and in innuendo, and in winning a case by hamstringing weaker opponents, rather than by fairly litigating the issues. I recall here again the fact that Maersk's lawyers defeated my motion to dismiss for *forum non conveniens* by pretending they would be accommodating to defendants on the place of their depositions, a fact noted by the Court in support of its decision denying the motion (Decision and Order filed March 27, 2008, p. 49), and then, having defeated the motion to dismiss, did an immediate about-face, insisted that defendants be deposed in New York, and thereby achieved the victory they have now won by default.

I do not plan to make a formal motion to reargue what the Court has labored long and hard to produce, unless the Court is interested in addressing further any of the issues I have raised by this letter.

Yours truly,

Harry H. Wise, III

cc: Eric E. Lenck, Esq. (faxed)