UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MAERSK, INC., and A.P. MOLLER-MAERSK, A/S

                Plaintiffs,

    -against-

                                                 05 CIV 4356 (CM)

NEEWRA, INC, REDNIHOM, INC., AREF HASSAN ABUL
INC., ARWEEN SINGH SAHNI a/k/a ARWEEN SAHNI
SINGH, a/k/a ARWEEN SAHNI a/k/a ARWEEN SINGH a/k/a
ABUL SABAH a/k/a AREF HASSAN ABUL, MOHINDER
SINGH SAHNI a/k/a MOHINDER SAHNI SINGH a/k/a
MOHINDER SAHNI a/k/a MOHINDER SINGH a/k/a
MOHINDER SINGH SAHANI a/k/a MOHINDER SAHANI
a/k/a MOHINDER SAHANI SINGH, a/k/a JOGINDER SINGH
SAHNI, JOGINDER SINGH SAHNI, a/k/a JOGINGER SINGH
SAHNI a/k/a JOGINDER SAHNI SINGH a/k/a JOGINGER
SAHNI SINGH a/k/a JOGINDER SINGH a/k/a JOGINDER
SAHNI a/k/a JOGINGER SINGH a/k/a JOGINGER SAHNI,
SABHARWAL CHANDRA KUMAR a/k/a SABHARWAL K.
CHANDRA, MANDEEP SINGH SAHNI a/k/a MOHINDER
SINGH a/k/a MOHINDER SAHNI a/k/a MOHINDER SINGH
SAHANI, HELP LINE COLLECTION CO. W.L.L., PARKER
DAWOOD TAJUDDIN TAJUDIS ISMAIL PARKER,
SARDAR TRADERS EST., SARDAR INTERNATIONAL
TRADING CO., AL TAMASOK AL ARABI EST., JOHN DOE
1-100 (fictitious) and JOHN DOE INC.1-100 (fictitious)

                Defendants.
------------------------------------------------------------------------x

### DEFENDANTS' STATEMENT PURSUANT
### TO LOCAL CIVIL RULE 56.1

     Defendants Joginder Singh Sahni and Dawood Tajuddin Parkar, for their Statement pursuant to Local Civil Rule 56.1, allege that there is no genuine issue to be tried with respect to the following facts:

     1.     Neewra filed its claim for damages against Maerk's local Kuwaiti affiliate, Maersk Kuwait, which is not a party to this lawsuit, by suing Maersk Kuwait's local

1

partner, a company called Mohamed Saleh Behbehani and Co., W.L.L. (hereinafter, collectively, "Maersk/Behbehani"), on February 19, 2002. (Zakaria Dec. ¶ 13, and Ex. A., translation, p. 1).

2.     The Neewra claim was filed by defendant Dawood Tajuddin Parkar ("Mr. Parkar"), as its agent. (Zakaria Dec., ¶ 8).

3.     Mr. Parkar had no involvement in the Neewra lawsuit other than acting as Neewra's formal agent to allow Neewra, a foreign corporation, to sue in Kuwait's courts. He did not conduct the litigation, make any strategic decisions, or submit any evidence. The claim was decided based on documentary evidence none of which had any connection to Mr. Parkar. At all times during the litigation, Neewra's, lawyers dealt with its principal, Arween Sahni, not with Mr. Parkar. (al-Humaidan Dec., ¶ 10).

4.     Nor did Mr. Parkar have any input as to the amount of damages claimed by Neewra. Neewra's lawsuit requested that the court appoint an examiner, a "legal expert," to determine the amount of damages, under a procedure that then allows the plaintiff to amend the claim to correspond to the amount of damages found. (*See* Zakaria Dec., Ex. C, translation, first page).

5.     In the Kuwaiti lawsuit, Behbehani filed a counterclaim, called a "secondary action," against Mr. Parkar personally, seeking damages, accusing him of submitting a fraudulent claim. (Zakaria Dec., Ex. A, translation, p. 1; al-Humaidan Dec. ¶ 4). In that "secondary action," Maersk/Behbehani's lawyers told the court that they wanted also to implead Al Tamasok as an additional defendant, but never did, despite getting stays in order to do so. (Zakaria Dec., Ex. B, translation, p. 3, last full paragraph).

6. The initial decision in the case was issued by the trial court, the Commercial Court of the First Instance--20, on April 20, 2003. That court decided that Neewra's action was barred by a one-year statute of limitations, and found in favor of Mr. Parkar on the "secondary action." (Zakaria Dec., ¶ 5 and Ex. A, translation, p. 6), finding that the allegation of submitting a fraudulent claim was "not proved." (*See* the appellate court decision, Zakaraia Dec. Ex. B, translation, p. 4, lines 3 and 4).

7. Neewra then appealed the adverse decision on its claim, arguing in the appellate court, the Court of Appeal, Commercial, Fourth Circuit, that the one-year statute had been waived by Maersk Kuwait. That argument was accepted by that court in a decision issued on March 14, 2004. (Zakaria Dec., ¶ B). The court held that actions by Maersk after the one-year limitation period had run, including bringing criminal charges and civil actions against certain entities in Kuwait, waived the limitation, and entered judgment for Neewra for the amount it claimed, which had been accepted as accurate by the "legal expert" appointed by the trial court despite claims by Maersk/Behbehani that the claim was fraudulent. (*Id.*, 7).

8. Maersk/Behbehani then appealed that decision to Kuwait's highest court, the Court of Cassation. Although the Kuwait's State Counsel filed a brief arguing for dismissal of the appeal, the Court of Cassation determined it was worthy of being heard. (Zakaria Dec., Ex. C, translation, second page, first paragraph).

9. In the Court of Cassation, Maersk/Behbehani first argued that the appeal to the first appellate court had been invalid because Neewra's corporate charter had lapsed. This argument was rejected by the Court of Cassation, in its decision on the appeal, which was issued on April 9, 2005, on the procedural ground that it had not been

3

made to the court below. (Zakaria Dec., Ex. C, translation, third page, second paragraph). Then Maersk/Behbehani made three additional arguments: (1) that it had not been timely notified of the appeal below—this was rejected as a matter of discretion beyond review (*Id.*, translation, fourth page, first and second paragraphs); (2) that the evidence did not show a waiver of the one-year limitation—this was rejected on the grounds that there was sufficient evidence of waiver to show that the appellate court's finding of waiver had been within its discretion (Zakaria Dec., translation, fourth page (partial), first paragraph); and (3) that the Court of Appeal should not have entered judgment based on the expert's calculation of damages given the objections Maersk/Behbehani had lodged against it---this was rejected on the procedural ground that in their appeal to the Court of Cassation the lawyers for Maersk/Behbehani had not sufficiently specified their objections to the expert's report, choosing just to refer to their brief in the original court, a procedure that the Court of Cassation found to be inadequate to preserve any objections to the report. (*Id.*, translation, fifth page)(*See also,* al-Humaidan Dec., ¶ 8).

10. There is no evidence in any of the three decisions on Neewra's claim that Maersk/Behbehani ever raised as an issue the choice-of-forum clause in the contract of carriage.

11. While it was taking the appeal of Neewra's claim to the Court of Cassation, Maersk/Behbehani also appealed, on January 26, 2005 the trial court's decision dismissing the "secondary action" against Mr. Parkar. (*See* al-Humaidan Dec., ¶ 8).

12. On appeal, in a decision of the Court of Appeal Commercial, Fourth Circuit, issued on May 26, 2006, Mr. Parkar once again defeated the claim of

Maersk/Behbehani that he had been guilty of fraud in connection with the Neewra lawsuit. (al-Humaidan Dec., ¶ 8 and Ex. C).

13. The decision on appeal shows that Maersk/Behbehani made in that court all the arguments of fraud that it is making in this case: (1) that Neewra concealed the fact that its corporate charter had been revoked: (2) that there was evidence that the shipping container had held not valuable computer parts but cheap auto parts; (3) that the alleged source for the computer parts, Microspy, had affirmed that it had not sold the parts and that the alleged Microspy invoice was forged; (4) that Neewra concealed the fact that it had attempted to bring the same claim in United States courts but the claim had been rejected; and (5) that there was evidence that a person connected with Neewra had improperly received blank bills of lading, which were later filled in and used to get the goods released. (al-Humaidan Dec., Ex. C, translation, pp. 3-4).

14. Both sides appear to have put in additional evidence in the appellate court, with Mr. Parkar's attorneys submitting, among other things, evidence that Neewra's corporate status had been revived as of May 26, 2005, with the payment of back taxes. (*Id.* pp. 5-6).

15. In determining that Mr. Parkar had not been guilty of a fraud in connection with Neewra's claim, the appellate court noted that Neewra's corporate status was a matter of public record, and thus not concealed (*Id.* p. 7), and that after the back taxes were paid Neewra regained all its corporate rights. (*Id.* p. 8). It also held that, as to the other allegations of fraud, Mr. Parkar had not concealed anything, but that all the issues of alleged fraud had been exposed and been litigated in the action in chief: "[T]hese

5

documents were subject of give and take between the two parties before the subject court... ." (*Id.,* p. 8; *see also,* Hassan Dec., ¶ 11).

16.  On May 9, 2005, Maersk/Behbehani filed a criminal complaint in Kuwait against Mr. Parkar, Mr. Sahni, and two other defendants, accusing them of fraud in connection with the Neewra action. (Hassan Dec., ¶ 6). The complaint was filed by Elvis Pinto, one of Maersk's managers. (*Id.*). Under Kuwait law, that complaint, if found valid, could have been the basis for a claim of damages by Maersk against Mr. Parkar, Mr. Sahni, and the other defendants. (*Id.* ¶ 8). The complaint was investigated and no criminal charges were brought. (*Id.* ¶ 9).

17.  Mr. Sahni has no criminal record in Kuwait—the proceeding filed by Maersk is the only criminal proceeding that has ever been brought against him. (*Id.* ¶ 10).

18.  The courts of Kuwait, like those of the United States, recognize the judicial decisions of foreign countries under principles of comity. (al-Humaidan Dec., ¶ 13; Hassan Dec. ¶ 11).

19.  In 2002, by action taken on August 20 of that year and effective December 1, Kuwait acceded to the Hague Convention of February 1971 on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters. (Web site of the Hague Convention on Private International Law, http://www.hcch.net).

20.  That Convention provides that the courts of Kuwait will recognize and enforce the decisions of the courts of other signatories:

> (1) if the decision was given by a court considered to have jurisdiction within the meaning of this Convention, and
> (2) if it is no longer subject to ordinary forms of review in the State of origin.
>
> In addition, to be enforceable in the State addressed, a

6

decision must be enforceable in the State of origin.

(Article 4, Convention on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters (concluded 1 February 1971), found at http://www.hcch.net).  Under that Convention, enforcement may be denied for reasons including incompatibility with public policy and procedural fraud. (*Id.*, Article 5).

21.  The lawyer who furnished a declaration for plaintiffs in this case, Ahmed Zakaria, Esq., is not a member of the Kuwait Bar and not permitted to litigate cases in Kuwait. (al-Humaidan Dec., ¶ 13; Hassan Dec., ¶ 11).  The Martindale-Hubble listing for his firm shows that he is an Egyptian national who is a member of the bar of Egypt, admitted in 1986. (Martindale.com, firm profile of Al-Sarraf & Al-Ruwayeh, 2010).

22.  The two lawyers who have furnished declarations for Mr. Parkar and Mr. Sahni are both members of the Kuwait Bar, and Mr. al-Humaidan is a former president of the Kuwait Bar Association. (al-Humaidan Dec. ¶ 1; Hassan Dec., ¶ 1).

Dated: New York, N.Y.
       March 15, 2010

HARRY H. WISE, III (HW6841)
*Attorney for Defendants Joginder Singh Sahni, Dawood Tajuddin Parkar, Help Line Collection Co. Sardar Traders Est., and Sardar International Trading Co., W.L.L.*
250 West 57th Street, Suite 1316
New York, N.Y. 10107
(212) 810-2430, ex. 302
(212) 810-2427 (fax)
hwiselaw@aol.com