503-99/LJK/EEL
FREEHILL HOGAN & MAHAR LLP
Attorney for Plaintiffs
Maersk, Inc. and A.P. Moller-Maersk A/S
80 Pine Street
New York, NY 1900
(212 425-1900/(212) 425-1901 fax
Eric E. Lenck
Lawrence J. Kahn

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MAERSK, INC. and A.P. MOLLER-MAERSK A/S,

                          Plaintiff,

     -against-

NEEWRA, INC., REDNIHOM, INC., AREF HASSAN
ABUL INC., ARWEEN SINGH SAHNI a/k/a ARWEEN
SAHNI SINGH a/k/a ARWEEN SAHNI a/k/a ARWEEN
SINGH a/k/a ABUL SABAH a/k/a AREF HASSAN
ABUL, MOHINDER SINGH SAHNI a/k/a MOHINDER
SAHNI SINGH a/k/a MOHINDER SAHNI a/k/a
MOHINDER SINGH a/k/a MOHINDER SINGH
SAHANI a/k/a MOHINDER SAHANI a/k/a MOHINDER
SAHANI SINGH a/k/a JOGINDER SINGH SAHNI,
JOGINDER SINGH SAHNI a/k/a JOGINGER SINGH
SAHNI a/k/a JOGINDER SAHNI SINGH a/k/a
JOGINGER SAHNI SINGH a/k/a JOGINDER SINGH
a/k/a JOGINDER SAHNI a/k/a JOGINGER SINGH a/k/a
JOGINGER SAHNI, SABHARWAL CHANDRA
KUMAR a/k/a SABHARWAL K. CHANDRA,
MANDEEP SINGH SAHNI a/k/a MOHINDER SINGH
a/k/a MOHINDER SAHNI a/k/a MOHINDER SINGH
SAHNI a/k/a MOHINDER SAHANI a/k/a MOHINDER
SINGH SAHANI, HELP LINE COLLECTION CO.
W.L.L., PARKER DAWOOD TAJUDDIN TAJUDIS
ISMAIL PARKER, SARDAR TRADERS EST.,
SARDAR INTERNATIONAL TRADING CO., AL
TAMASOK AL ARABI EST.,

                         Defendants.
-------------------------------------------------------------------x

05 Civ. 4356 (CM)

SUPPLEMENTAL
DECLARATION OF
AHMED ZAKARIA

2

AHMED ZAKARIA, pursuant to 28 U.S.C. §1746 hereby declares and says the following under penalty of perjury:

1. I submit this Supplemental Declaration in further support of Maersk's Supplemental Motion for Summary Judgment against Defendants Joginder and Parker relating to the Neewra, Inc. fraud and in opposition to the motion of Defendants Joginder and Parker for summary judgment dismissing the actions against them.

2. I hereby adopt and incorporate the statements made by me in my 10 February 2010 Declaration.

3. Attorneys Saleh Ahmed Hassan and Abdul Rehman Al Humaidan suggest that I am not well qualified to comment on Kuwaiti law because I am an Egyptian national and not a member of the Kuwait Bar. These criticisms are not well founded. Kuwait law is very similar to Egyptian law. Lawyers trained in Egypt have a strong presence in Kuwait. The majority of judges in Kuwait have been trained in Egypt and legal experts appointed by Kuwaiti courts are often trained in Egypt. Kuwait law requires a lawyer to be a Kuwaiti national to appear in court, but permits lawyers such as myself, trained in Egypt, to otherwise practice law in Kuwait and advise clients on all aspects of Kuwait law. Through my years of experience practicing law in Kuwait and through my partnering with the lawyers in my firm who are members of the Kuwaiti bar, I am fully familiar with the laws, procedures and decisions of the Kuwait courts.

4. If anything, I believe that my legal education and experience places me in a better position than the attorneys representing Joginder and Parkar to compare the legal procedures and decision making processes in Kuwait with the legal procedures and decision making processes in a common law jurisdiction such as the United States. In addition to receiving an LLB from Cairo University in 1986, I received an LLM degree from the Institute de Droit des Affaires

3

International in Cairo, with an emphasis in comparative law. More importantly, I received an LLM degree in 1994 from Columbia University in New York. As part of my Master's program at Columbia, I had the opportunity to study in detail the civil procedure followed in United States federal courts, including pretrial discovery, rules of evidence, and trials.

5. The legal system in Kuwait does not permit a jury trial on commercial disputes such as the Neewra/Maersk matter in the same sense as an American jury trial. As I understand it, an American jury trial involves citizen jurors who are randomly selected from the general population without any particular legal expertise. This is not the case in Kuwait. When commercial dispute cases in Kuwait involve a "jury," such jurors are usually trained judges. For example, Exhibit C of the Declaration of Abdul Rehman Al Humaidan refers to a "jury" that rendered the judgment. The "jury" in that case consisted of Justices Mohammad Izzat Damanhooria, Ibrahim Al-Baderani and Mohammad Al-Hanafi, all judges of the Court of Appeal of the Commercial Circuit.

6. The legal system in Kuwait does not provide for pretrial discovery in the same sense as the U.S. federal court legal system. For example, Maersk's Kuwait attorney would not be entitled to conduct a pretrial deposition under oath of either Joginder or Parkar. There is no procedure for the mandatory production of documents in Kuwait which corresponds to the Request for Production of Documents contained in the Federal Rules of Civil Procedure in the United States. Maersk would not be entitled to require third-party witnesses in Kuwait to appear for depositions under oath as part of pretrial discovery.

7. Even in the court proceedings in Kuwait, corresponding to what would be a trail in the United States, the attorneys for the parties are not permitted to conduct direct cross-examination of witnesses. Such examination, if it occurs, is done only by the judge. While the

4

appointed legal expert in a commercial case is entitled to call and question witnesses, the witnesses are not under oath.

8. The evidentiary basis for placing documents into evidence in a Kuwait court proceeding is very different from documentary evidence in the United States. The courts in Kuwait do not require the same foundation for such evidence as required by U.S. courts and the courts in Kuwait do not recognize the hearsay rule. Documents are generally accepted as evidence, but given varying degrees of weight, in the court's discretion, and depending on challenges from the opposing party.

9. The decisions of the Kuwait courts in this matter were based solely on documentation. The legal expert did not interview any witnesses with first hand knowledge and did not base his decision on any witness testimony or witness sworn statements. There was no opportunity to evaluate the credibility of any relevant witnesses. The courts in Kuwait dealing with this matter, including the Commercial Circuit Court of First Instance, the Court of Appeal and the Court of Cassation based their decisions on the facts as reported by the legal expert and the documents submitted by the parties. The appeal courts in Kuwait generally review legal issues based upon the facts found in the Court of First Instance.

10. In handling this case on behalf of Maersk in Kuwait, I was aware that the governing contract of carriage issued by Maersk had a choice of forum clause providing that whenever U.S. COGSA applies by virtue of carriage of the goods from the United States that the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes relating to the carriage. I did not raise this point in any of the Kuwait legal proceedings because the Kuwait courts would not recognize such a forum selection clause. The named defendant in the Kuwait action was Maersk Kuwait, a Kuwaiti company

5

acting in partnership with its Kuwait legal representative, Mohamed Saleh Behbehani and Co., W.L.L. Under Kuwait law, Kuwait courts assume jurisdiction over any case filed against a Kuwaiti defendant, even if the governing contract has a foreign forum selection clause. Maersk would not have been successful in asserting the New York jurisdiction clause.

11. A full trial of Neewra's cargo claim and the allegations of fraud asserted by Maersk did not take place in Kuwait in the same manner as a full trial would have proceeded in a federal court in the United States. The fact finding aspect of the Kuwaiti proceedings involved a legal expert. Under Kuwaiti law, such an individual is a technical expert in a specific field in which the judge may not have enough knowledge. The expert's mission is limited to examining a particular technical or accounting element. This was the job assigned to the expert appointed in the Kuwait proceedings – to quantify the loss sustained by Neewra. The fact finding of such a legal expert in Kuwait is an entirely different and less rigorous procedure than the fact finding which would be involved in a trial in a United States federal court where U.S. evidentiary rules apply, the parties have had the benefit of extensive pretrial discovery, and the parties have conducted cross-examination of witnesses under oath.

12. The "secondary action" filed by Behbelani/Maersk Kuwait against Parkar was filed against him in his capacity as representative of Neewra and not against him in his personal capacity. At all times, Mr. Parkar took the position that he was acting as a representative of Neewra.

13. Kuwaiti courts are not required to recognize a foreign court judgment issued in the United States. The concept of collateral estoppel based upon decisions of courts in foreign jurisdictions such as the United States is not well established in Kuwaiti law. For example, the

6

Kuwaiti courts involved in this Neewra/Maersk action disregarded the fact that the claim of Neewra, Inc. against its cargo underwriter had been dismissed in U.S. declaratory judgment court proceedings based upon the cargo underwriter developing evidence that fraudulent documents were involved. Even though this was a default judgment against Neewra, Inc., my understanding is that Arween Singh Sahni, the President of Neewra, Inc., was fully aware of the action, had his deposition taken by attorneys for the cargo underwriter, but declined to proceed to defend the declaratory judgment action, even though presented with the opportunity to do so.

14. The criminal actions in Kuwait against Joginder and Parkar were not determined as the result of a full trial. A criminal action in Kuwait involving fraud requires a higher standard of proof than a civil action based on fraud.

15. The cargo claim filed by Neewra, Inc. against Maersk Kuwait was not commenced in Kuwait until February 19, 2002. The proceeding referred to in Exhibit B of the Declaration of Abdul Rehman Al Humaidan was an action filed by the public prosecution in Kuwait in criminal court against individual defendants Adel Mahmoud Abbas Mohammad Baron and Vincent Fernandez, accusing these individuals of forgery and swindling. This action did not involve Neewra, Inc. or its principals. It did not involve Defendants Joginder or Parkar. The criminal court found that a forgery had taken place but that there was insufficient evidence connecting the named defendants to the forgery.

7

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Kuwait, Kuwait
14 April 2010

By: _____
Amhed Zakaria