UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

MAERSK, INC. and A.P. MOLLER-MAERSK A/S,

        Plaintiffs,

    -against-                                             05 Civ. 4356 (CM)

NEEWRA, INC., REDNIHOM, INC., AREF HASSAN
ABUL INC., ARWEEN SINGH SAHNI a/k/a
ARWEEN SAHNI SINGH a/k/a ARWEEN SAHNI
a/k/a ARWEEN SINGH a/k/a ABUL SABAH a/k/a
AREF HASSAN ABUL, MOHINDER SINGH SAHNI
a/k/a MOHINDER SAHNI SINGH a/k/a MOHINDER
SAHNI a/k/a MOHINDER SINGH a/k/a MOHINDER
SINGH SAHANI a/k/a MOHINDER SAHANI a/k/a
MOHINDER SAHANI SINGH a/k/a JOGINDER
SINGH SAHNI, JOGINDER SINGH SAHNI, a/k/a
JOGINGER SINGH SAHNI a/k/a JOGINDER SAHNI
SINGH a/k/a JOGINGER SAHNI SINGH a/k/a
JOGINDER SINGH a/k/a JOGINDER SAHNI a/k/a
JOGINGER SINGH a/k/a JOGINGER SAHNI,
SABHARWAL CHANDRA KUMAR a/k/a
SABHARWAL K. CHANDRA, MANDEEP SINGH
SAHNI a/k/a MOHINDER SINGH SAHANI, HELP
LINE COLLECTION CO. W.L.L., PARKER
DAWOOD TAJUDDIN TAJUDIS ISMAIL PARKER,
SARDAR TRADERS EST., SARDAR
INTERNATIONAL TRADING CO., and AL
TAMASOK AL ARABI EST.,

        Defendants.

_____x

DECISION AND ORDER GRANTING PLAINTIFFS' RENEWED MOTION
FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND THE COMPLAINT

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/9/10

McMahon, J.:

## INTRODUCTION

On December 17, 2009, the Court issued a decision, familiarity with which is presumed, resolving the parties' cross-motions for summary judgment on the five claims asserted by plaintiffs A.P. Moller-Maersk A/S and Maersk, Inc. (together, "Plaintiffs" or "Maersk") against the three remaining defendants in this action, Joginder Singh Sahni ("Joginder"), Dawood Tajuddin Parkar ("Parkar") and Help Line Collection Co. ("Help Line") (collectively, the "Remaining Defendants"). Maersk, Inc. v. Neewra, Inc., 687 F. Supp. 2d 300 (S.D.N.Y. 2009) (McMahon, J.) (the "First Summary Judgment Opinion"). In that First Summary Judgment Opinion, the Court concluded that the undisputed facts establish that Joginder and Parkar knowingly participated in the "Neewra Fraud"—an international scheme to defraud Maersk in connection with a cargo shipment from New Jersey to Kuwait. However, the Court declined to grant summary judgment for Maersk on its common-law fraud claim arising out of the Neewra shipment because of the potential preclusive effects of a judgment obtained by Neewra, Inc. in Kuwaiti court holding Maersk responsible for the value of the lost Neewra cargo. The parties had not addressed this issue in their moving papers.

The Court invited Maersk to renew its motion for summary judgment on its Neewra Fraud claim against Joginder and Parkar if it could show that the Kuwaiti judgment should not impact this Court's decision. The Court also invited Joginder and Parkar to renew their motion on that claim based on res judicata and/or collateral estoppel grounds.

The parties have renewed their motions. Maersk argues that the proceedings in Kuwaiti court should not be afforded preclusive effect, while Joginder and Parkar (together, the "Moving Defendants") assert that the Kuwaiti proceedings preclude Maersk from pursuing its Neewra

2

Fraud claim in this Court.  Maersk also seeks leave to amend its complaint to name Parkar as a defendant in its claim for conspiracy to defraud.

For the reasons set forth below, Maersk is granted leave to amend the complaint; Maersk's renewed motion for summary judgment is granted; and the Moving Defendants' cross-motion is correspondingly denied.

## BACKGROUND

I.      **Facts**

The relevant facts are taken from the parties' Rule 56.1 statements, affidavits and documents attached thereto.

A.      **Overview of the Neewra Fraud**

The Neewra Fraud involved cargo carried by Maersk from the United States to Kuwait on behalf of shipper Neewra, Inc. ("Neewra"), one of the original defendants in this action against which a default judgment has been entered.  The bill of lading (i.e., contract of carriage) for the shipment described the cargo as "20 crates [of] electrical spare parts." (Decl. of Soren Hansen in Opp. to Mot. to Vacate Attachment, June 6, 2006, Ex. A.)  The named Kuwaiti consignee was Al Tamasok Al Arabi Est. ("Al Tamasok").  The Neewra shipment arrived in Kuwait on or about April 10, 1999.  On May 10, 1999, certain of the fraudsters procured the release of the containers by presenting Maersk with a forged bill of lading.  The cargo promptly disappeared, and Neewra then pursued multiple fraudulent claims against Maersk for "misdelivery," asserting that the lost crates actually contained $1.86 million worth of computer hard drives.  One such claim, filed in Kuwaiti court, was ultimately successful, as Neewra won a judgment in the amount of $1.86 million.[1]

---

[1] For the details of the Neewra Fraud, and the Moving Defendants' involvement therein, see <u>Maersk</u>, 687 F. Supp. 2d at 313-17.

**B.      Fraudulent Claims Filed in the U.S.**

In late summer 1999, a few months after the Neewra cargo disappeared, Neewra took its

first run at Maersk.  Neewra engaged a New York maritime attorney to pursue a claim against

Maersk, alleging a loss of $1.86 million.  (Maersk's Supplemental Rule 56.1 Stmt., Feb. 12,

2010 ("Maersk 56.1 Stmt."), ¶ 1.)[2]  Maersk, which had already investigated the matter and

determined that it was a fraud, advised Neewra's attorney that the claim was fraudulent, and

presented him with documentary evidence in support of its fraud defense.  (Id.; Aff'n of Eric E.

Lenck, Feb. 12, 2010 ("Lenck Aff'n"), ¶ 3.)  The attorney dropped the claim.  (Maersk 56.1

Stmt. ¶ 1.)

Neewra took a second run at Maersk shortly thereafter, in late 1999.  This time, Neewra

engaged a New Jersey firm to pursue its claim for $1.86 million.  (Id. ¶ 2.)  Maersk once again

declined the claim on the basis of fraud, and presented Neewra's attorneys with evidence of the

fraud.  (Id.; Lenck Aff'n ¶ 4.)  The New Jersey firm did not pursue the matter further.  (Maersk

56.1 Stmt. ¶ 2.)

Neewra took a third swing by making a claim against its cargo insurer, Continental

Insurance Co. ("Continental"), alleging the loss of 2,000 disk drives valued at $1.86 million.  (Id.

¶ 4.)  Continental declined the claim on the basis of fraud.  (Id. ¶ 5.)  It had investigated the

matter in New York and Kuwait, and determined that the claim was fraudulent.  (Lenck Aff'n

¶ 7.)  In the course of its investigation, Continental determined that the invoice for Neewra's

purported purchase of 2,000 Seagate hard drives for $1.6 million from Micro-Spy, Inc., dated

February 25, 1999, was a false document.  (Maersk 56.1 Stmt. ¶ 11; Lenck Aff'n ¶ 8 & Ex. C.)

---

[2] When the Court cites to a single Rule 56.1 statement, that means the cited paragraph is expressly undisputed in the
corresponding Rule 56.1 counterstatement.

Continental did not merely decline the claim; it filed suit against Neewra in the Eastern District of New York, seeking a declaratory judgment that it was not liable to Neewra for the alleged loss of the hard drives.  (Maersk 56.1 Stmt. ¶ 8.)  Continental properly served Neewra, but Neewra failed to appear.  (Id. ¶ 9.)  On December 28, 2000, Judge Dearie entered a default against Neewra and an order stating that Continental was not liable to Neewra in any way for the supposed loss of $1.86 million worth of hard drives.  (Id. ¶ 10.)

### C.    Proceedings in Kuwait

Having been rebuffed in the U.S., Neewra took its fraudulent claim to the Kuwaiti courts, where it ultimately prevailed.

### 1.    The Court of First Instance

On February 19, 2002, Neewra filed a claim for damages in Kuwait's Commercial Circuit Court of First Instance (the "Court of First Instance").  (Defs.' Rule 56.1 Stmt., Mar. 15, 2010 ("Defs.' 56.1 Stmt."), ¶ 1.)  The plaintiff in the Kuwaiti action was Neewra, Inc., suing through its agent, Moving Defendant Parkar.  (Id. ¶ 2; Maersk 56.1 Stmt. ¶ 23.)  The defendant in the Kuwaiti proceedings was Maersk Kuwait Co./Mohamed Saleh Behbehani & Partners WLL[3] ("Maersk/Behbehani").  (Maersk 56.1 Stmt. ¶ 23.)  Maersk Kuwait Co., in partnership with Mohamed Saleh Behbehani & Partners WLL ("Behbehani"), was the local Maersk company in Kuwait affiliated with A.P. Moller-Maersk, the carrier under the Neewra bill of lading and a Plaintiff here.  (Id. ¶ 26.)[4]  Moving Defendant Joginder was not a party to these Kuwaiti proceedings.  (Id. ¶ 25.)

---

[3] A limited liability company is known as a "WLL" in Kuwait.
[4] Articles 23 and 24 of the Kuwaiti Commercial Code provide that non-Kuwaiti citizens may not pursue commercial activities in Kuwait without a Kuwaiti partner, and that a foreign company may not establish a branch in Kuwait and conduct business in Kuwait unless it has a Kuwaiti agent.  Behbehani was Maersk's Kuwaiti partner/agent.

Maersk/Behbehani defended in the Court of First Instance by asserting that Neewra's claim was barred by the applicable one-year statute of limitations, which runs from the date the shipped goods are delivered.  (Decl. of Ahmed Zakaria, Feb. 10, 2010 ("Zakaria Decl."), Ex. A (English translation of decision of Court of First Instance, dated April 20, 2003), at 5.)[5]  In this case, the Neewra cargo was delivered on May 10, 1999, but Neewra did not file its claim in Kuwaiti court until February 19, 2002, almost three years later.

It is not easy to decipher precisely what transpired in the Court of First Instance from reviewing the translated decision.  However, the following facts regarding those proceedings are undisputed: there was no pretrial discovery; there was no testimony under oath by any witness on behalf of either side; Maersk/Behbehani never had the opportunity to cross-examine any witnesses for Neewra; and the matter was not tried before a jury.  (Maersk 56.1 Stmt. ¶¶ 29, 31-32, 34.)

Instead, factual findings were made by an appointed "legal expert," not by a judge or jury.  (See Zakaria Decl. Ex. A at 4.)  Neewra's claim was decided on the basis of a limited amount of documentary evidence and the arguments of the attorneys.  (See Defs.' 56.1 Stmt. ¶ 3; Zakaria Decl. Ex. A.)  In support of its claim, Neewra submitted a "document folder" containing about a dozen documents.  (Zakaria Decl. Ex. A at 3.)  The Moving Defendants do not dispute Maersk's assertion that one of the documents submitted by Neewra was the Micro-Spy invoice, which the Moving Defendants now admit was a fabrication (Maersk 56.1 Stmt. ¶ 11).

The legal expert issued a report to the Kuwaiti court, concluding, inter alia, that the value of the Neewra cargo was $1.86 million (as Neewra claimed), and that Neewra was entitled to that amount because Maersk had violated the contract of carriage by releasing the goods despite not

---

[5] The parties have provided the Court with Arabic copies and English translations of the relevant Kuwaiti decisions. The parties do not dispute that the translations are complete and accurate, and so the Court relies upon them.

having been presented with the original shipping documents.  (Zakaria Decl. Ex. A at 4.)
Maersk/Behbehani submitted a brief including its "objections" to the expert's report.  (Id.)

In addition to objecting to the expert's report, Maersk/Behbehani filed a counterclaim, or
"secondary Action," seeking "temporary compensation" of about $16,000, as well as fees and
expenses, on the ground that "[Neewra] has provided incorrect data regarding the type of shipped
goods."  (Id.)  Maersk/Behbehani asserted that the crates contained worthless spare auto parts,
not valuable computer hard drives.  (Id.)  In support of its position, Maersk/Behbehani submitted
"two document folders," which the decision states "were reviewed by the Court."  (Id.)

The parties dispute whether the secondary action was filed against Neewra, as Maersk
contends, or against Parkar personally, as the Moving Defendants claim.  (Defs.' 56.1 Stmt. ¶ 5
(relying on the declaration of Abdul Rehman Al Humaidan, an attorney who, like Zakaria, was
personally involved in the Kuwaiti proceedings); Maersk's Opposing Rule 56.1 Stmt., Apr. 14,
2010 ("Maersk 56.1 Cntrstmt."), ¶ 5 (citing Zakaria Decl. ¶ 8).)  The decisions of the Kuwaiti
courts appear to support the Moving Defendants, but they are not dispositive.  For example, the
first page of the translated version of the opinion of the Court of First Instance states that the
secondary action was "Against: Parker Dawood Taj Aldeen Ismail."  (Zakaria Decl. Ex. A at 1.)
On the other hand, the decision in the subsequent appeal of the Court of First Instance's ruling
refers on several occasions to the "appellee *Company*"—i.e., Neewra.  (Decl. of Abdul Rehman
Al Humaidan, Mar. 11, 2010 ("Al Humaidan Decl."), Ex. C (English translation of decision of
Court of Appeal, Commercial, Fourth Circuit, dated May 21, 2006), at 5 (emphasis added).)  As
explained below, infra at Discussion IV.B, it is not necessary to resolve this dispute to decide the
motions before the Court.

Ultimately, on April 20, 2003, the Court of First Instance ruled that the "original action"—Neewra's claim against Maersk/Behbehani—was time-barred. (Zakaria Decl. Ex. A at 5-6.) However, the court ruled against Maersk/Behbehani on the secondary action.  It adopted the legal expert's finding that the shipped goods were computer hard drives, not auto parts, stating simply that it "trusts [the expert's report] due to the validity of its grounds and sufficiency of its researches." (Id. at 6.)  The Kuwaiti court concluded that it

> believes that [Maersk/Behbehani's] claims in the secondary Action
> are incorrect, and the accusation of giving wrong information
> about the shipped goods was not proved true.  Therefore, the
> secondary Action has no legal grounds neither as a matter of law
> nor as a matter of facts; which makes it fair to reject the secondary
> Action as a matter of subject.

(Id.)

### 2.    Neewra's Appeal in the Original Action

Neewra appealed the Court of First Instance's ruling that its claim was time-barred to the Kuwaiti intermediate appellate court, the Court of Appeal, Commercial, Fourth Circuit (the "Court of Appeal"). (Defs.' 56.1 Stmt. ¶ 7; Maersk 56.1 Cntrstmt. ¶ 7.)  Neewra argued that its claim was not time-barred because certain actions by Maersk constituted an "implicit waiver" of its prescription defense; Maersk/Behbehani's principal argument was that the appeal was barred because Neewra had failed to timely serve the notice of appeal. (See Zakaria Decl. Ex. B (English translation of decision of Court of Appeal, Commercial, Fourth Circuit, dated Mar. 14, 2004), at 4-5.)

In its decision of March 14, 2004, the Court of Appeal rejected Maersk/Behbehani's procedural argument and considered the prescription question.  It reversed the lower court's decision, holding that Maersk somehow had "impliedly" waived its right to assert the statute-of-limitations defense because it had, among other things, instituted an action in Kuwaiti penal

8

court against Al Tamasok's owner in 1999, and because certain exchanges between the parties constituted "settlement negotiations," which "abates" prescription.  (See id. at 4-6.)[6]

Having decided that Neewra's claim was not time-barred, the Court of Appeal went on to hold that Maersk/Behbehani was liable to Neewra for $1.86 million (plus interest).  (Zakaria Decl. Ex. B at 6-7.)  With little discussion, the appellate court held that Maersk had violated the contract of carriage by "deliver[ing] the goods to the non legal bearer of the bill of lading," and summarily adopted the legal expert's report that had been submitted to the Court of First Instance: "[S]ince the court is satisfied with such report due to the validity and soundness of the bases upon which such report was prepared, . . . the Court confirms such report and admits it on the basis of the reasons therein . . . ."  (Id. at 7.)  There is no indication in the Court of Appeal's decision that it considered—or that Maersk/Behbehani even argued—the possibility that the misdelivery was the result of fraud.

### 3.    The Court of Cassation

Maersk/Behbehani appealed the Court of Appeal's decision to Kuwait's highest court, the Court of Cassation.  (Defs.' 56.1 Stmt. ¶ 8.)  In a decision dated April 9, 2005, the Court of Cassation affirmed the Court of Appeal's ruling against Maersk/Behbehani.  (Zakaria Decl. Ex. C (English translation of decision of Court of Cassation, dated Apr. 9, 2005).)

Before the Court of Cassation, Maersk/Behbehani argued that the Court of Appeal's judgment should be set aside because Neewra's corporate registration had expired before Neewra brought the appeal.  (Id. at 2.)  The Kuwaiti high court rejected that argument on the ground that

---

[6] An English translation of the Kuwaiti criminal court's decision in the action against Al Tamasok's owner and a second defendant is attached as Exhibit B to the Al Humaidan Declaration.  The Moving Defendants do not, for good reason, assert that the Al Tamasok action has preclusive effect in the case at bar.  (See Mem. of Defs. Joginder and Parkar in Opp. to Pls.' Mot. for Summ. J. and in Support of Cross-Mot. for Summ. J., Mar. 15, 2010 ("Defs.' Mem."), at 12-15.)  Maersk was not a party in the Al Tamasok action and, moreover, although the court found that the two named defendants were not "criminally responsible for the forgery" of the Neewra bill of lading, it did *not* decide whether the forgery (and the rest of the fraud) had in fact occurred (or whether the Moving Defendants had participated therein).  (See Al Humaidan Decl. Ex. B.)

Maersk had not raised it below.  (See id.)  Maersk/Behbehani also argued that the Court of

Appeal had erred in finding that Neewra had timely served the notice of its appeal, and in finding

that Maersk had waived its prescription defense.  (Id. at 3-4.)  The Court of Cassation affirmed

the Court of Appeal on both points.  (Id.)

The only argument raised by Maersk/Behbehani in the Court of Cassation that touched

upon the merits of Neewra's claim was its contention that the Court of Appeal should not have

relied on the expert's report because it was full of "shortcomings."  (See id. at 4.)  The Court of

Cassation rejected this challenge on the ground that Maersk/Behbehani had failed to adequately

explain its objections to the report (and, in particular, that it was not sufficient to refer, as

Maersk/Behbehani apparently did, to the objections it had lodged in the Court of First Instance).

(Id. at 5.)

### 4.    Maersk/Behbehani's Appeal in the Secondary Action

On January 26, 2005, while its appeal to the Court of Cassation was pending,

Maersk/Behbehani appealed the Court of First Instance's decision in the secondary action—

Maersk/Behbehani's counterclaim alleging that Neewra had misrepresented the nature and value

of the shipped goods—to the intermediate appellate court, the Court of Appeal.  (Defs.' 56.1

Stmt. ¶ 11.)  In a decision dated May 21, 2006, the Court of Appeal affirmed the Court of First

Instance's ruling against Maersk/Behbehani.  (Al Humaidan Decl. Ex. C.)

On appeal, Maersk/Behbehani argued, inter alia, that (1) Neewra had "committed a

cheating" by concealing the fact that its corporate registration had expired during proceedings in

the Court of First Instance, and (2) Maersk/Behbehani had obtained "determinative documents

vis-à-vis the appellee," which had not been submitted below, showing that (a) Kuwaiti Customs

had checked the containers when they arrived in Kuwait and found that they contained spare auto

parts, not computer hardware, thereby "confirm[ing] that this transaction is nothing but a

cheating operation"; (b) the owner of Micro-Spy had "affirmed that the invoice attributed to it is

forged and it did not sell any comp[u]ter equipment to [Neewra]"; and (c) Maersk/Behbehani's

investigations had revealed that Neewra and/or people acting on its behalf had obtained blank

Maersk bills of lading, forged the details of the Neewra bill of lading, and used the forgery to

fraudulently procure the release of the cargo. (Id. at 3-4.)

        Both sides submitted some additional documentary evidence to the Court of Appeal.

(Defs.' 56.1 Stmt. ¶ 14.)  Maersk/Behbehani's documents included, for example, certain

documents relating to the issue of Neewra's corporate existence, a Kuwaiti Customs document

dated May 8, 1999, and unspecified "[c]opies of papers written in English." (Al Humaidan Decl.

Ex. C at 4-5.)  The additional documents submitted by Neewra appear to have been directed

almost entirely to the issue of its corporate existence. (See id. at 5-6.)

        The nine-page translated version of the Court of Appeal's decision is somewhat

bewildering and, at times, almost indecipherable.  As best this Court can determine, the Court of

Appeal made two rulings: first, it found the "non-occurrence of cheating" with respect to

Neewra's corporate registration; second, it rejected Maersk/Behbehani's argument premised on

its having obtained documents showing fraud. (See id. at 8-9.)

        In making this second ruling, the Court of Appeal explained that Maersk/Behbehani's

argument based on the submission of additional documentary evidence was not viable unless it

met four "conditions." (Id. at 8.)  First, the documents must be "determinative" such that if the

court considered them, the "judgment may change in favor of the appellant." (Id.)  Second,

Neewra (and/or Parkar) must have prevented Maersk/Behbehani from submitting the documents

by retaining them in their possession. (Id.)  Third, Maersk/Behbehani must have been

"ignorant—during the litigation, about existence of these papers." (Id.)  Fourth,

Maersk/Behbehani must have obtained the documents after the judgment below was rendered.

(Id.)

The Court of Appeal held that Maersk/Behbehani had failed to demonstrate that

Neewra/Parkar had "prevented submission of these documents." (Id.)  "[R]ather[,] these

documents were subject of give and take between the two parties before the [lower] court . . . ."

(Id.)  Thus, the appellate court concluded, "it becomes clear that this merit is non-acceptable and

consequen[tl]y . . . the court adjudicates for non-acceptance of the appeal." (Id.)  In other words,

the Court of Appeal rejected Maersk's appeal on technical/procedural grounds; it did not

consider the merits of the additional documentary evidence or of Maersk/Behbehani's contention

that Neewra had engaged in fraud.

### 5.    The Criminal Complaint Against Joginder and Parkar

On May 9, 2005, while the above-described proceedings were ongoing,

Maersk/Behbehani filed a criminal complaint in Kuwait against Joginder, Parkar and two of the

defendants who have defaulted in the case at bar, Arween Singh Sahni and Sabharwal Chandra

Kumar, accusing them of fraud in connection with the Neewra action.  (Defs.' 56.1 Stmt. ¶ 16;

Maersk 56.1 Cntrstmt. ¶ 16.)  The complaint was lodged by Elvis Pinto ("Pinto"), one of Maersk

Kuwait's managers.  (Defs.' 56.1 Stmt. ¶ 16; Maersk 56.1 Cntrstmt. ¶ 16.)  Under Kuwaiti law,

the complaint, if found valid, could have served as the basis for a claim for damages by

Maersk/Behbehani against Joginder and Parkar (and the other two defendants).  (Defs.' 56.1

Stmt. ¶ 16; Maersk 56.1 Cntrstmt. ¶ 16.)

It is undisputed that the complaint did not result in charges being brought.  (Defs.' 56.1 Stmt. ¶ 16; Maersk 56.1 Cntrstmt. ¶ 16.)  However, Maersk questions "if, and to what extent, the complaint was investigated."  (Maersk 56.1 Cntrstmt. ¶ 16.)

The declaration of Saleh Ahmed Hassan submitted by the Moving Defendants states that "[t]hat complaint, Misdemeanor File No. 176-2005 . . . [is] annexed hereto as Exhibit B."  (Decl. of Saleh Ahmed Hassan, Mar. 14, 2010 ("Hassan Decl."), ¶ 6.)  Exhibit B to the Hassan Declaration consists of two single-page documents; one is in Arabic, and the other is an English translation not of the criminal complaint itself, but of what appears to be a memo to file by the office of the Director General of the Kuwaiti General Department of Investigations.  (See Hassan Decl. Ex. B.)  The Court is not sure if the document in Arabic is the actual complaint, but that is of no moment—the parties do not dispute that the complaint was made (or what it alleged).

The memo reports that the complaint lodged by Pinto accused the defendants of "cheating and fraud against Maersk Company, through using of a forged document (Bill of Lading) and got, in the return, hold of Delivery Order of the Goods shipped from United States of America through his Company to Kuwait."  (Id.)  The one-paragraph memo is dated "7/3/2007" (about two years after the complaint was lodged), and states that, "The said misdemeanor case is under investigation, and the final action is not issued yet."  (Id.)  Neither Maersk nor the Moving Defendants have provided the Court with any evidence indicating that the investigation has terminated, much less that there has been some kind of final disposition.

## II.    The Pending Motions

In the First Summary Judgment Opinion, this Court found that the record before it established the absence of any genuine issue of material fact about whether Joginder and Parkar knowingly participated in the Neewra Fraud.  Maersk, 687 F. Supp. 2d at 326 ("In sum, the

undisputed facts support granting summary judgment to Maersk on its claims against Joginder and Parkar for the alleged Neewra Fraud.").  However, the Court declined to grant summary judgment for Maersk on its common-law fraud claim against Joginder and Parkar because of the possible preclusive effect of the proceedings in Kuwait—which neither side had addressed in their moving papers, and about which the Court knew next to nothing.  See id. at 325-27.  The Court invited the parties to renew their motions after considering the res judicata and/or collateral estoppel effects of the Kuwaiti proceedings.  Id. at 327.

Now, Maersk renews its motion for summary judgment on its Neewra Fraud claim, arguing that the Kuwaiti decisions are not entitled to preclusive effect.  Joginder and Parkar cross-move for summary judgment, arguing that this Court should recognize the Kuwaiti decisions as a matter of comity, and that (1) Joginder is entitled to summary judgment on res judicata grounds based on the criminal complaint lodged by Pinto; (2) Joginder is entitled to summary judgment on collateral estoppel grounds based on the judgments in the original and secondary actions; and (3) Parkar is entitled to summary judgment on res judicata grounds based on the decision in the secondary action.  (Defs.' Mem. at 11-15.)

In addition, Maersk requests leave to amend its complaint, the Amended Verified Complaint ("AVC"), to add Parkar as a defendant in the claim for civil conspiracy to defraud.  (Maersk's Mem. in Supp. of Supplemental Mot. for Summ. J., Feb. 12, 2010 ("Maersk Mem."), at 13-14.)  In the First Summary Judgment Opinion, the Court granted summary judgment to Maersk on its civil conspiracy claim against Joginder and the third Remaining Defendant, Help Line, based on a separate but similar fraud, the "Rednihom Fraud."  See Maersk, 687 F. Supp. 2d at 319-22.  The Court noted that Maersk had not actually named Parkar in its claim for civil

14

conspiracy—an omission that the Court presumed was inadvertent given the nature of Maersk's

factual allegations against Parkar.  Id. at 326 n.7.

## DISCUSSION

### I.    Standard of Review

A party is entitled to summary judgment when there is "no genuine issue as to any

material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.

Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  On a

motion for summary judgment, the court must view the record in the light most favorable to the

nonmoving party and draw all reasonable inferences in its favor.  Matsushita Elec. Indus. Co.

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue

of material fact.  Celotex v. Catrett, 477 U.S. 317, 323 (1986).  Once such a showing has been

made, the nonmoving party must present "specific facts showing a genuine issue for trial."  Fed.

R. Civ. P. 56(e).  The party opposing summary judgment "may not rely on conclusory

allegations or unsubstantiated speculation."  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.

1998).  Moreover, not every disputed factual issue is material in light of the substantive law that

governs the case.  "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude summary judgment."  Anderson, 477 U.S. at 248.

To withstand a motion for summary judgment, the nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475

U.S. at 586.  Instead, sufficient evidence must exist upon which a reasonable jury could return a

verdict for the nonmoving party.  Summary judgment is designed to flush out those cases that are

predestined to result in directed verdict. <u>Lightfoot v. Union Carbide Corp.</u>, 110 F. 3d 898, 907

(2d Cir. 1997).

**II.      Maersk Is Granted Leave to Amend Its Complaint**

     In its brief in support of its renewed summary judgment motion, Maersk "asks leave of

the Court to amend its Complaint to name Parkar as a Defendant in the civil conspiracy claim."

(Maersk Mem. at 13-14.)  The Court construes Maersk's request as a motion for leave to amend.

The motion is granted.

     Federal Rule of Civil Procedure 15(a) provides that a court "should freely give leave

when justice so requires." Fed. R. Civ. P. 15(a). "[I]t is within the sound discretion of the

district court to grant or deny leave to amend." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d

184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including

futility, bad faith, undue delay, or undue prejudice to the opposing party." <u>Id.</u>

     Maersk's failure to name Parkar as a defendant in its claim for conspiracy to defraud was

plainly a mere oversight.  The AVC alleges that Parkar played a significant role in both the

Neewra and Rednihom Frauds and, in the RICO count, that he "conspired to defraud Maersk."

(AVC ¶ 128.)  Parkar is already a defendant in this action in the RICO and Neewra Fraud claims,

and he has been on notice of Maersk's allegation that he conspired to defraud Maersk from the

very beginning.  In fact, he has already *responded* to that claim—in their original summary

judgment motion papers, the Remaining Defendants' argued that, "There is no competent

relevant evidence in this case tending to prove that defendant Dawood Tajuddin Parkar

participated in any conspiracy to defraud plaintiffs."  (Mem. of Defs. Joginder, Parkar and Help

Line in Supp. of Mot. for Summ. J., Apr. 1, 2009, at 6.)  And, in their brief in support of their

16

renewed summary judgment motion, the Moving Defendants do not oppose Maersk's request for leave to amend the AVC.

For the reasons set forth above, the Court grants Maersk's motion for leave to amend. The AVC is hereby deemed amended to name Parkar as a defendant in the claim for common-law conspiracy to defraud (Count VII).

Of course, this is merely a formality. As stated in the First Summary Judgment Opinion, "Under New York law, there is no independent cause of action for civil conspiracy." Maersk, 687 F. Supp. 2d at 319 (quoting Alexander & Alexander v. Fritzen, 68 N.Y.2d 968, 969 (1986)). Civil conspiracy "may be alleged for the purpose of showing that an otherwise actionable tort was committed jointly by the conspirators and that, because of the conspirators' common purpose and interest, the acts of one may be imputed to the others," but "[t]he injury for which plaintiff may be entitled to recovery is not the conspiracy itself but the damage caused by specific overt acts." Id. (citations omitted). In today's decision, the Court is granting summary judgment to Maersk on its *fraud* claim against Parkar, and it is that claim, *not* the conspiracy claim, which actually entitles Maersk to recover from Parkar.

## III.    International Comity

### A.    Choice of Law

It is well established that American courts are not obligated to recognize judgments rendered by foreign states, but may choose to give preclusive effect to foreign judgments based on principles of comity. Diorinou v. Mezitis, 237 F.3d 133, 139-40 (2d Cir. 2001); Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 905 F. Supp. 169, 178-79 (S.D.N.Y. 1995) (Sand, J.). Below, in setting forth the principles of international comity, the Court cites federal case law. However, there is some uncertainty as to whether federal or state comity law applies

17

here. See generally Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4473 (2d ed. 2002). In diversity cases, courts generally consider comity to be a matter of state law. See, e.g., Ecoban Fin. Ltd. v. Grupo Acerero del Norte, S.A. de C.V., 108 F. Supp. 2d 349, 352 (S.D.N.Y. 2000). On the other hand, "In cases involving federal questions, federal courts generally apply federal law to determine whether to recognize a foreign country judgment." Alfadda v. Fenn, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997).

In this case, the Court's subject-matter jurisdiction is federal question, but the Moving Defendants seek to invoke comity with respect to Maersk's state-law Neewra Fraud claim, which is within the Court's supplemental jurisdiction—although affording preclusive effect to a Kuwaiti court's determination regarding the occurrence or non-occurrence of the Neewra Fraud would necessarily also impact Maersk's *federal* RICO claim. In any event, as the Moving Defendants acknowledge (see Defs.' Mem. at 11 n.1), New York and federal comity law share many of the same fundamental principles for recognizing foreign judgments, see Johnston v. Compagnie Generale Transatlantique, 242 N.Y. 381 (N.Y. 1926). Whether analyzed against the backdrop of basic federal or state comity principles, the Kuwaiti proceedings at issue are not entitled to preclusive effect.

Further, while some New York courts have held that the law of the *rendering* country should determine the preclusive effect of a foreign judgment in New York, see Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 275 (1970), neither side suggests that Kuwaiti law should apply, or addresses what (if any) preclusive effect the Kuwaiti courts' decisions would have under Kuwaiti law. Accordingly, the Court applies U.S. law. See In re Parmalat Sec. Litig., 493 F. Supp. 2d 723, 733 n.54 (S.D.N.Y. 2007) (Kaplan, J.).

**B.      Principles of International Comity**

"The decision to grant comity is a matter within a court's discretion and the burden of proof to establish its appropriateness is on the moving party." In re Perry H. Koplik & Sons, Inc., 377 B.R. 69, 75 (S.D.N.Y. 2007) (citing Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 999 (2d Cir. 1993)).  Here, Moving Defendants Joginder and Parkar bear the burden of demonstrating that comity should be extended to the Kuwaiti proceedings.

In Hilton v. Guyot, 159 U.S. 113 (1895), the seminal case in this area, the Supreme Court defined comity as "the recognition which one nation allows within its Territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Id. at 164.  The Hilton Court held that it is appropriate to recognize and enforce a foreign judgment when

> there has been opportunity for a full and fair trial abroad before a
> court of competent jurisdiction, conducting the trial upon regular
> proceedings, after due citation or voluntary appearance of the
> defendant, and under a system of jurisprudence likely to secure an
> impartial administration of justice between the citizens of its own
> country and those of other countries, and there is nothing to show
> either prejudice in the court, or in the system of laws under which
> it was sitting, or fraud in procuring the judgment, or any other
> special reason why the comity of this nation should not allow it full
> effect.

Id. at 202; see Apostolou v. Merrill Lynch & Co., No. 06 Civ. 4944, 2007 U.S. Dist. LEXIS 74682, at *12 (E.D.N.Y. Sept. 28, 2007); Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658, 663 (S.D.N.Y. 1996).

Thus, in accordance with the principles set forth in Hilton, deciding whether deference as a matter of comity is appropriate "often entails consideration of the fairness of a foreign adjudicating system," although "a case-specific inquiry is sometimes appropriate." Diorinou v.

Mezitis, 237 F.3d 133, 143 (2d Cir. 2001) (citing Hilton, 159 U.S. at 202)).  "[A] particular case

may disclose such defects as to make the particular judgment not entitled to recognition."  Id.

(quoting Restatement (Third) of Foreign Relations § 482 cmt. b (1987)).  Comity should only be

extended if "the foreign court abide[d] 'fundamental standards of procedural fairness.'"  See

In re Parmalat Sec. Litig., 493 F. Supp. 2d 723, 737 n.74 (S.D.N.Y. 2007) (Kaplan, J.) (quoting

Cunard S.S. Co. v. Salen Reefer Serv. AB, 773 F.2d 452, 457 (2d Cir. 1985)); accord 30 Am.

Jur. 2d Executions § 671 ("In order for comity to be extended to a foreign judgment, the foreign

court must have abided by fundamental standards of procedural fairness.").

      The Second Circuit has stated that the "internationalization of commerce requires 'that

American courts recognize and respect the judgments entered by foreign courts to the greatest

extent consistent with our own ideals of justice and fair play.'"  Ackermann v. Levine, 788 F.2d

830, 845 (2d Cir. 1986) (quoting Tahan v. Hodgson, 662 F.2d 862, 868 (D.C. Cir. 1981)).

Accordingly, "American courts will normally accord considerable deference to foreign

adjudications as a matter of comity."  Diorinou, 237 F.3d at 142.  "In some cases, this deference

leads a domestic court to adopt a foreign tribunal's previous resolution of a particular legal or

factual issue, thus precluding parties to a foreign litigation from rearguing, in United States

courts, matters previously resolved in the foreign forum."  Films by Jove, Inc. v. Berov, 250 F.

Supp. 2d 156, 191 (E.D.N.Y. 2003).

      However, "deference to a foreign adjudication as a matter of comity is by no means

automatic."  Id.  "Although more than mere courtesy and accommodation, comity does not

achieve the force of an imperative or obligation."  Cunard, 773 F.2d at 457 (quoting Somportex

Ltd. v. Phila. Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971), cert. denied, 405 U.S. 1017

(1972)).  Ultimately, "it is primarily principles of fairness and reasonableness that should guide

domestic courts in their preclusion determinations." <u>Gordon & Breach Sci. Publishers S.A. v.</u>
<u>Am. Inst. of Physics</u>, 905 F. Supp. 169, 179 (S.D.N.Y. 1995) (Sand, J.); <u>accord</u> <u>Films by Jove</u>,
250 F. Supp. 2d at 176-77; <u>Alesayi Beverage Corp.</u>, 947 F. Supp. at 663.

**IV.     The Kuwaiti Proceedings Are Not Entitled to Preclusive Effect**

        **A.     The Criminal Action**

        The Moving Defendants contend that the Court should grant summary judgment to
Joginder based on the preclusive effect of the criminal action initiated by Pinto. It is unclear why
they do not also argue that the criminal action has preclusive effect with respect to Parkar, as he
was also named as a defendant. But that is of no moment—the criminal proceeding (if it can
even be called a "proceeding") in no way precludes Maersk from litigating its Neewra Fraud
claim against Joginder and Parkar in this Court.

        The Moving Defendants have not submitted any evidence of a final judgment or decision
in the criminal action that might warrant deference. Nor have they submitted any evidence
suggesting that the issue of the Neewra Fraud was actually litigated in the criminal action—by
Maersk or by anyone else. Instead, the Moving Defendants seek to preclude Maersk from
pursuing its Neewra Fraud claim based on nothing more than the fact that a criminal complaint
was lodged, together with a one-paragraph Kuwaiti Ministry of Interior memo stating that, as of
2007, the investigation into that complaint was ongoing. The Moving Defendants do not submit
any evidence indicating that the investigation has concluded, much less that the criminal
complaint has resulted in some sort of final disposition.

        But even if the Court were to give the Moving Defendants the benefit of every doubt (a
benefit to which they are not entitled as the moving parties), and credit their moving papers'
conclusory assertions regarding the Kuwaiti criminal action, the most that could be inferred is

this: a criminal complaint accusing Joginder and Parkar of fraud in connection with the Neewra shipment was lodged by Pinto on behalf of Maersk Kuwait; in accordance with Kuwaiti criminal procedure, the complaint was investigated by the Investigation Department at the Ministry of Interior; and the investigation ended with no charges being brought because the investigators did not find sufficient evidence supporting the allegations.

Such a determination, if it were in fact made, is not a judgment at all, much less one that should be afforded preclusive effect based on principles of comity. The Investigation Department's conclusion that evidence of fraud was lacking is not the judgment or decision of a foreign court; it was not reached after any kind of a trial; and it is not set forth in a formal record. Moreover, it occurred in the context of a criminal proceeding conducted by Kuwaiti government officials, not a civil action litigated by Maersk or by a party in privity with Maersk. The Court understands that Maersk's Pinto lodged the complaint and that, pursuant to Kuwaiti law, a verdict in the criminal case could have provided the basis for a damages claim by Maersk, but the fact remains that Maersk was not a party to the criminal action itself—which, as discussed above, was not a trial on the merits of Maersk's claim.

In sum, the Kuwaiti criminal proceeding did not yield a foreign judgment, and no aspect of the proceeding is entitled to preclusive effect. Accordingly, the Moving Defendants' motion for summary judgment based on the criminal action is denied.

### B.    The Civil Proceedings

The Moving Defendants assert that the Court should extend comity to the Kuwaiti civil proceedings and grant summary judgment on preclusion grounds. For the reasons discussed below, neither the original nor the secondary Kuwaiti action is entitled to preclusive effect.

However, before analyzing those proceedings, the Court notes (as does Maersk in its moving papers) that the parties in the Kuwaiti litigation are not identical to the parties now before this Court. The Moving Defendants seek to invoke comity against Plaintiffs Maersk, Inc. and AP Moller-Maersk A/S, while the Kuwaiti proceedings involved Maersk/Behbehani— although the Court has little doubt that it would consider Maersk/Behbehani to be in privity with the Plaintiffs here, see supra Background I.C.1. In addition, the parties dispute whether the secondary action was filed against Neewra or Parkar personally—which might, depending on whether Parkar was in privity with Neewra, affect whether Parkar can invoke res judicata or only collateral estoppel. However, the parties do not address questions of privity, and the Court need not reach them. The procedures used in the Kuwaiti actions, and a review of the decisions themselves, make clear that the Kuwaiti proceedings should not be afforded preclusive effect in the case at bar.[7]

### 1.    The Original Action

The undisputed facts demonstrate that the original action did not afford Maersk the opportunity for a full and fair trial on the merits of whether it was defrauded by Joginder and Parkar in connection with the Neewra shipment. The Moving Defendants admit that there was no discovery; that there was no testimony under oath by any witness; and that the matter was not tried before a jury. Instead, factual findings were made by a court-appointed "legal expert." Although mere divergence from American procedures does not mean that a foreign decision should not be recognized, the evidentiary procedures in the Kuwaiti action, which can only be

---

[7] Maersk argues that comity also should not be extended because the Kuwaiti courts lacked jurisdiction as a result of the forum selection clause in the Neewra bill of lading, which identifies the Southern District of New York as the exclusive jurisdiction for claims arising under the contract of carriage. (Maersk Mem. at 7-10.) However, Maersk did not raise the forum selection clause in the Kuwaiti proceedings, and even filed an affirmative counterclaim in Kuwaiti court. The Moving Defendants contend that Maersk has therefore waived its right to rely on the forum selection clause. (Defs.' Mem. at 14-15.) The Court need not resolve this dispute; even if Maersk did waive the forum selection clause defense, the Kuwaiti proceedings are not entitled to preclusive effect for the reasons set forth below.

described as minimalist, do not accord with "fundamental standards of procedural fairness," making deference unwarranted.  See Cunard S.S. Co. v. Salen Reefer Serv. AB, 773 F.2d 452, 457 (2d Cir. 1985); see also In re Parmalat Sec. Litig., 493 F. Supp. 2d 723, 737 n.74 (S.D.N.Y. 2007) (suggesting that a foreign court's decision should not be granted comity if it "involved no discovery or formal presentation of evidence").  The Moving Defendants have not demonstrated that Neewra's claim was adjudicated in a manner consistent with the requirements of Hilton; granting comity would therefore be inappropriate.

In affidavits submitted by their attorneys in Kuwait, the parties dispute the fairness of Kuwaiti procedures *generally*.  (See, e.g., Zakaria Decl. ¶ 15; Al Humaidan Decl. ¶ 15(g).)  As noted above, determining whether comity should be extended often entails consideration of the fairness of the foreign adjudicating system.  Diorinou v. Mezitis, 237 F.3d 133, 143 (2d Cir. 2001).  But in this case, the Court need not make any broad pronouncements regarding the Kuwaiti system; after inquiring into *these* particular Kuwaiti proceedings, and finding a lack of any discovery or witness testimony, and minimal presentation of evidence, the Court is unwilling to defer to the judgments reached.  Cf. Diorinou, 237 F.3d at 143 (declining to "question the fairness of the Greek system of jurisprudence" but, because of "the complicated sequence of litigation," "careful[ly] consider[ing] . . . the determinations in Greece to which [the plaintiff] asks us to defer").

Another factor that weighs heavily against recognizing the Kuwaiti judgment is that there appears to have been "fraud in procuring the judgment," Hilton v. Guyot, 159 U.S. 113, 202 (1895).  One of the key documents submitted by Neewra was an outright lie: the Micro-Spy invoice, representing that Neewra had purchased 2,000 hard drives from Seagate worth $1.6 million.  The Court will not accord comity to proceedings marred by fraud.

24

Even beyond the above-discussed defects, a review of the decisions themselves shows that the Kuwaiti proceedings are not entitled to preclusive effect. The three decisions in the original action demonstrate that the issue of whether Maersk was defrauded in connection with the Neewra shipment was neither fully litigated by Maersk/Behbehani nor squarely considered by any Kuwaiti court. In the Court of First Instance, findings of fact were made by a legal expert in "the Legal Experts Department in Ministry of Justice" (Zakaria Decl. Ex. A at 1)—not by a jury or even a judge. It appears that the expert's role was purportedly akin to that of a quasi-independent investigator, but that the expert's conclusions were based largely on the small collection of documents submitted by Neewra. Moreover, although the expert's conclusion that the cargo was worth $1.86 million is plainly adverse to Maersk on the issue of whether the Neewra Fraud occurred, that conclusion addresses only one aspect of the elaborate scheme alleged (and, in this Court, proved) by Maersk. There is no indication, for example, that the expert considered evidence of the attempted bribery of Maersk's Pinto or the forged Neewra bill of lading, see Maersk, 687 F. Supp. 2d at 314. The expert's report also was rendered before critical additional events relating to the fraud occurred, including the April 2004 meeting at the Kuwaiti Marriott. See id. at 315-17.

Most important, however, is the fact that in the original action, the Court of First Instance did not *reach* the question of whether the fraud occurred because it ruled for Maersk/Behbehani on prescription grounds. Simply put, the Court of First Instance's ruling in the original action does not constitute a decision on the merits of Maersk's claim that it was defrauded by Joginder and Parkar (among many others) in connection with the Neewra shipment.

Likewise, on appeal, although both the intermediate appellate court and the Court of Cassation found against Maersk/Behbehani, neither considered whether Maersk had been the

victim of an elaborate fraud. The Court of Appeal's decision strains—over the course of several pages—to find that Neewra's claim was not, in fact, time-barred; then, in little more than a paragraph, it summarily adopts the legal expert's report without analysis. The court held Maersk/Behbehani liable for $1.86 million, "Since it is mentioned in the legal expert's report that the value of the shipped goods amounts to USD 1860000" and "the court is satisfied with such report." (Zakaria Decl. Ex. B at 7.) There is no indication that Maersk/Behbehani defended in the appellate court on the basis of fraud, or that the Court of Appeal considered any of Maersk/Behbehani's evidence of fraud before abruptly ruling against it. The decision does not preclude Maersk from pursuing its Neewra Fraud claim in this Court.

In its appeal to the Kuwaiti high court, Maersk/Behbehani made two arguments unrelated to the fraud, and objected to the legal expert's report. The Court of Cassation refused to consider Maersk/Behbehani's objections on the ground that they were not set forth with sufficient specificity (and, in particular, because it was not acceptable for Maersk/Behbehani to refer back to the brief it had submitted in the Court of First Instance). There is no indication that the Court of Cassation examined the substance of Maersk/Behbehani's objections or the contents of the report. Thus, in the high court, as in the two courts below, Maersk never had the opportunity to fully and fairly litigate the merits of whether it was the victim of fraud.

Each of the factors discussed above counsels against recognizing the original Kuwaiti action as having preclusive effect in the case at bar. Cf. Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 905 F. Supp. 169, 179 (S.D.N.Y. 1995). The Court thus declines to afford it preclusive effect. The Moving Defendants' motion for summary judgment based on that action is denied.

26

## 2.    The Secondary Action

The Court was surprised to learn of the secondary action, Maersk/Behbehani's affirmative counterclaim alleging fraud against Neewra (or, according to the Moving Defendants, Parkar personally), but that action is no more entitled to deference than the original action, for many of the same reasons discussed above.  Most significantly, the secondary action suffered from the same procedural deficiencies: no discovery, no testimony by any witness and no jury.  Maersk/Behbehani's claim, like Neewra's claim, was decided based only on documentary evidence.

The Court of First Instance, in ruling against Maersk/Behbehani on the counterclaim, relied principally on the legal expert's report—a report that the Court discounts for the many reasons discussed in the preceding section.  In its decision, the Kuwaiti court's rejection of Maersk/Behbehani's claim is purely conclusory; it spans all of a single paragraph, and does not allow this Court to conclude that the claim was adjudicated in a manner consistent with the principles espoused in Hilton.

Then, when Maersk/Behbehani submitted additional documents—which it claimed evidenced the fraud—to the Court of Appeal after losing in the Court of First Instance, the appellate court declined to consider the documents on procedural grounds.  It affirmed the Court of First Instance without wrestling with the merits of Maersk's claim.

Thus, the secondary action (like the original action) did not afford Maersk the opportunity to fully and fairly litigate the Neewra Fraud claim that it asserts here.  Maersk cannot be said to have had its "day in court" in the Kuwaiti proceedings; it is entitled to that day now.

For the reasons set forth in this and the preceding section, the Court declines to extend comity to the judgment in the secondary action.  It would be a miscarriage of justice to preclude

27

Maersk from litigating in this forum as a result of what transpired in Kuwait. Accordingly, the Moving Defendants' motion for summary judgment based on the secondary action is denied.

**V.      Maersk Is Entitled to Summary Judgment on the Neewra Fraud Claim**

Having determined that the Kuwaiti proceedings are not entitled to preclusive effect, the Court grants Maersk's renewed motion for summary judgment. In the First Summary Judgment Opinion, the Court would have granted summary judgment to Maersk on its Neewra Fraud claim against Joginder and Parkar but for the possible preclusive effect of the proceedings in Kuwait. As it is now clear that those proceedings are not a valid defense to Maersk's Neewra Fraud claim, the Court awards summary judgment to Maersk on that claim.

Thus, the remaining claims in this action are (1) breach of contract against Joginder, and (2) civil RICO against all three Remaining Defendants (Joginder, Parkar and Help Line). As explained in the First Summary Judgment Opinion, those claims raise genuine issues of material fact that necessitate a trial.

The issues for trial have been defined and considerably narrowed since the parties submitted their pretrial papers in March of last year. Accordingly, the parties will submit revised pretrial papers, in accordance with the Court's Individual Practices, within 60 days from the date of this opinion.

**CONCLUSION**

For the reasons set forth above, the Moving Defendants' motion for summary judgment on preclusion grounds is denied. Accordingly, the Court grants Maersk's renewed motion for summary judgment on its common-law fraud claim against Joginder and Parkar arising out of the Neewra shipment. Maersk's complaint is deemed amended to name Parkar as a defendant in the

28

claim for conspiracy to defraud.  The Docket Clerk is directed to remove Docket Nos. 221 and 228 from the Court's list of pending motions.

Dated: July 9, 2010

_____
U.S.D.J.

BY ECF TO ALL COUNSEL